1  CHUCK P. EBERTIN (SBN 161374)
    cebertin@velaw.com
2  VINSON & ELKINS LLP
   525 University Avenue, Suite 410
3  Palo Alto, CA  94301-1918
   Tel:  (650) 687-8200
4  Fax: (650) 618-1970

5  Attorney for Plaintiff
   SANDISK CORPORATION
6

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO

11

12 | SANDISK CORPORATION, | Case No.  11-cv-05243-RS
13 |            Plaintiff, | **PLAINTIFF SANDISK CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
14 |      vs. |
15 | ROUND ROCK RESEARCH LLC, | Date:  Jan. 12, 2011
16 |            Defendant. | Time:  1:30 p.m.
                           | Judge: Hon. Richard Seeborg
17

# REDACTED VERSION

## I.   INTRODUCTION

Round Rock Research LLC ("Round Rock") makes only one argument to support its motion to dismiss for lack of personal jurisdiction: it allegedly lacks the "minimum contacts" in California to support either general or specific jurisdiction because "[t]he *only* purposeful activity of Round Rock directed to residents of California identified by Plaintiff was the August 3, 2011, letter sent to SanDisk." [Mot. To Dismiss at 7 (Dkt. No. 8) (emphasis added).] However, Round Rock fails to mention a critical and undisputed fact. By hiring a California-based company, IPValue Management, Inc. ("IPValue"), as its agent to enforce the patents-in-suit[1] against SanDisk Corporation ("SanDisk") in California, Round Rock has availed itself of the laws of California. In short, Round Rock hired a California-based agent which used California-based employees to direct activities at California-based companies. Round Rock should not be heard to complain about being called into court in California. For the reasons set forth below, Round Rock's motion to dismiss should be denied.[2]

## II.   LEGAL STANDARD

Federal Circuit law controls whether there is personal jurisdiction over an out-of-state corporation in patent matters. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). The question of personal jurisdiction involves two inquiries: "whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Id.* at 1329. Because California's long-arm statute permits service of process to the limits of due process, *see* Cal. Code Civ. Prov. § 410.10, the jurisdictional analysis "collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." *Avocent*, 552 F.3d at 1329. In turn, due process requires that the defendant have sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend

---

[1] The patents-in-suit are U.S. Patent Nos. 5,682,345 ("the '345 patent"); 6,272,586 ("the '586 patent"); 6,570,791 ("the '791 patent"); 7,483,334; 6,383,839; 6,900,528; 7,021,520; 6,255,209; 5,783,282; 5,286,344 ("the '344 patent"), and 6,015,760 ("the '760 patent"). [*See* First Amended Compl. at ¶ 1 (Dkt. No. 26).]

[2] SanDisk amended its complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) to plead additional facts relating to jurisdiction and entitlement to declaratory relief. [*See* Amended Compl. (Dkt. No. 26).] Round Rock has withdrawn its motion to dismiss based upon Rule 12(b)(6) in view of the allegations set forth in SanDisk's Amended Complaint. [*See* Notice of Partial Withdrawal of Mot. (Dkt. No. 34).]

traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). "It is essential . . . there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Purposeful availment" through minimum contacts ensures that the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted).

To comport with due process, personal jurisdiction may be either "general" or "specific." *Avocent*, 552 F.3d at 1330. "General jurisdiction . . . 'requires that the defendant have 'continuous and systematic' contacts with the forum state. . . .'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Id.* "To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Avocent*, 552 F.3d at 1330 (citation omitted). Where a district court's disposition of the personal jurisdiction question is based on affidavits and other written materials, a plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. *Trinitec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005). The district court must construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve any factual conflicts in the affidavits in the plaintiff's favor. *Id.* at 1282–83.

## III. ARGUMENT

### A. Round Rock's Agency Relationship with IPValue Supports Personal Jurisdiction.

Round Rock's agent, IPValue, has engaged in significant and extensive activities within California, beyond merely providing SanDisk with notice of the patents. As demonstrated below, the actions of Round Rock's agent can support personal jurisdiction as to the principal, Round Rock.

### 1. Round Rock Appointed IPValue as its Agent, and IPValue Retains an Interest in the Patents-in-suit.

On August 3, 2011, Mr. Gerard A. deBlasi, Vice President of Licensing of Round Rock, sent a letter to SanDisk in California accusing SanDisk of infringing the patents-in-suit. [*See* deBlasi Decl. (Dkt. No. 9) at ¶ 8 & Ex. A.] In that letter, Mr. deBlasi requested a meeting to discuss the patents and informed SanDisk that Round Rock had appointed IPValue as its agent to enforce the patents:

> We would like to arrange a meeting with representatives of SanDisk to discuss these patents and licensing terms. Round Rock has appointed IPVALUE Management, Inc. *as its agent* to commercialize Round Rock's patents and other intellectual property rights worldwide. This matter will be handled by Mr. Paul Riley at IPVALUE. Mr. Riley will be contacting you in order to discuss this matter.

[*Id.* (emphasis added).] Further, in its Certification of Interested Entities, Round Rock states that IPValue is Round Rock's "limited agent for purposes of negotiating a license to the patents-in-suit with Plaintiff SanDisk Corporation." [Dkt. No. 12.]

IPValue is a patent counseling and licensing company with its headquarters in Mountain View, California. [*See* Decl. of Chuck Ebertin in Supp. of Pl. SanDisk Corp.'s Opp. To Def.'s Mot. to Dismiss ("Ebertin Decl."), Ex. B (Dun & Bradstreet Report for IPValue).] Further, as IPValue's website states, "Most of IPVALUE's transactions involve the sale or licensing . . . of [its] Partners' patents, *including litigation when necessary*." [*See* Ebertin Decl., Ex. D at 1, IPValue website, *available at* http://www.ipvalue.com/company (emphasis added).]

The agency relationship between Round Rock and IPValue extends much deeper than the SanDisk litigation. On information and belief, IPValue has been working with Round Rock since 2009 to commercialize its patent portfolio. Further, it is no accident that Round Rock appointed IPValue as its agent. Mr. deBlasi discusses a "contractual arrangement" between Round Rock and IPValue [deBlasi Decl. (Dkt. No. 9) at ¶ 9], but he fails to mention that he has been serving as an executive for both companies. In addition to his position as Vice President of Round Rock [*id.* at ¶ 2], Mr. deBlasi was Executive Vice President at IPValue from 2005 to 2011 and currently serves on its Board of Directors. [*See* Ebertin Decl., Ex. D at 3, IPValue website, *available at* http://www.ipvalue.com/team/board-of-directors.php.] Indeed, IPValue is more than just an

1   "independent Delaware corporation hired by Defendant Round Rock to assist with the patent
2   licensing negotiations," as Round Rock now alleges. [*See* Riley Decl. (Dkt. No. 11) at ¶¶ 3–6;
3   deBlasi Decl. (Dkt. No. 9) at ¶¶ 9–11.]

4   As promised by Mr. deBlasi in his August 3 letter, Mr. Riley of IPValue sent a follow-up
5   letter to SanDisk on August 12, 2011, attaching the deBlasi letter and again confirming the agency
6   relationship between IPValue and Round Rock: "As Mr. deBlasi's letter indicates, my company,
7   [IPValue], has been ***appointed by*** [Round Rock] ***as its agent to license the [Round Rock] patents.***"
8   [Riley Decl. (Dkt. No. 11) at ¶ 7 & Ex. A.]  Mr. Riley offered "to meet with the SanDisk team in
9   Milpitas [California] or any other location that is convenient for them." [*Id.*]

10   The parties subsequently met at SanDisk's headquarters in Milpitas, California, at 1:00 p.m.
11   on October 27, 2011. [*See* Mot. to Dismiss at 1.]  Prior to the meeting, Mr. Andrew Wu and/or
12   Mr. Jiu Min Lim of IPValue's California office prepared claim charts and presentation materials
13   asserting Round Rock's patent rights against SanDisk. [First Amended Compl. (Dkt. No. 26) at
14   ¶¶ 17–19.]  Messrs. Wu and Lim brought these materials to SanDisk's office in Milpitas.  Further,
15   Mr. Riley of IPValue's New Jersey Office travelled to California for the meeting on October 27,
16   2011, for purposes of discussing the enforcement of the patents-in-suit with SanDisk in California.
17   [*Id.* at ¶ 21.]  After Messrs. Wu and Lim had prepared their claim charts in California, and after
18   Mr. Riley traveled to California, but about one hour before the meeting on October 27, 2011,
19   SanDisk filed the declaratory judgment complaint in order to personally serve notice of the
20   complaint at the meeting.  At the meeting, Round Rock was represented by Messrs. Wu and Lim,
21   each employed by IPValue's California office, and Mr. Riley, a Vice President at IPValue who had
22   flown to California for the meeting. [First Amended Compl. (Dkt. No. 26) at ¶¶ 17, 21.]  Copies of
23   the business cards of the IPValue attendees / Round Rock agents were distributed at the meeting and
24   are attached as Ex. A. [Ebertin Decl., Ex. A.]  During the meeting, Mr. Wu and Mr. Lim presented
25   several claim charts containing their infringement analyses of several of the patents-in-suit. [*See*
26   Ebertin Decl. at ¶¶ 3-4.]

27
28

### a. The actions of Round Rock and its agent, IPValue, give rise to personal jurisdiction in the State of California.

The cases cited by Round Rock in its motion support the position that the actions of an agent can subject the principal to personal jurisdiction. [*See* Mot. to Dismiss at 5.] In the *Radio Systems* case, the Federal Circuit discussed subjecting a principal to personal jurisdiction when the "principal retained agents in the forum state to assist in the enforcement of its patent rights." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 791 (Fed. Cir. 2011) (reviewing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003)). In the *Electronics for Imaging* case, the patent holder "hired a California attorney . . . who contacted [the declaratory judgment plaintiff] at various times" and visited the plaintiff's "facility in California for the purpose of demonstrating the technology." 340 F.3d at 1351. The court found that "the totality of these contacts sufficiently make out [plaintiff's] *prima facie* case that defendants . . . purposely directed their activities to California." *Id.* Here too, the patent holder (Round Rock) hired a California agent (IPValue) to enforce the patents against the plaintiff (SanDisk). Like the *Electronics for Imaging* case, one of Round Rock's California-based agents, Mr. Wu, is a licensed attorney and an active member of the California state bar. [*See* Ebertin Decl., Ex. J.]

Similarly, in the *Juniper Networks* case, the declaratory judgment defendant (SRH) contracted with ESR, a California-based company, to enforce patents. *Juniper Networks*, *Inc. v. Altitude Capital Partners, L.P.*, No. C 09-03449 JSW, slip op. at 2, 7–8 (N.D. Cal. Dec. 13, 2010). In holding that it had specific jurisdiction over the defendant, the court found, "Due to the extensive interactions between SRH and ESR (and SRH's substantial control of ESR), it follows that SRH's contacts with California were not random, fortuitous, or attenuated." *Id.* at 7. "SRH entered a contract with a California entity that granted them the rights to play an active and continuing role in that California entity's decision-making processes, and in doing so created contacts with California that satisfy the minimum contacts test." *Id.* at 8. Accordingly, the court held that the non-practicing entity was subject to personal jurisdiction in California.

Like the non-practicing-entity defendants in *Electronics for Imaging* and *Juniper Networks*, defendant Round Rock also hired a California-based company (IPValue) as its agent to enforce

patents against SanDisk.  There can be no dispute that Round Rock's agent has engaged in systematic and continuous activities in California relating to the enforcement (through license or otherwise)[3] of patents (including the patents-in-suit), such as:

- Maintaining an office in Mountain View, California which employs the majority of IPValue's employees. [Ebertin Decl. at Ex. B (Dun & Bradstreet Report for IPValue).]

- Employing at least four licensing executives in its California office, including George S. Park, Jonathan Takei, Andrew Wu, and Rowena Young. [Ebertin Decl., Ex. D at 5–9, IPValue website, *available at* http://www.ipvalue.com/team/licensing-executives.php.]

Similarly, there can be no reasonable dispute that Round Rock has purposefully directed its activities at residents of California, and that this litigation arises out of those activities.  These activities include:

- Mr. deBlasi currently serves as both the Vice President of Round Rock and as a member of IPValue's Board of Directors.  He recently served as Executive Vice President of IPValue from 2005 to 2011.  [*See* Ebertin Decl., Ex. D at 3, IPValue website, *available at* http://www.ipvalue.com/team/board-of-directors.php.]

- On August 3, 2011, sending a letter from Round Rock to SanDisk in California accusing SanDisk of infringing the patents-in-suit and notifying SanDisk that it had appointed IPValue as its agent. [deBlasi Decl. (Dkt. No. 9) at ¶ 9 & Ex. A.]

- On August 12, 2011, sending a letter from IPValue, as agents of Round Rock, to SanDisk in California, confirming the agency relationship and asking to meet with SanDisk in California regarding the patents-in-suit. [Riley Decl. (Dkt. No. 11) at ¶ 7 & Ex. A.]

- Prior to October 27, 2011, having Andrew Wu and/or Jui Min Lim, each employees of the IPValue California office, prepare claim charts regarding infringement of the patents-in-suit. [First Amended Compl. (Dkt. No. 26) at ¶¶ 18–19.]

- Before the complaint was filed on October 27, 2011, flying Paul Riley to California for purposes of meeting with SanDisk to discuss alleged infringement of the patents-in-suit. [*Id.* at ¶ 21.]

- On October 27, 2011, meeting with SanDisk and presenting claim charts as to why SanDisk allegedly infringes the patents-in-suit.  Messrs. Wu, Lim, and Riley attended this meeting on behalf of IPValue / Round Rock.[4] [Ebertin Decl. at ¶¶ 3-4.]

---

[3]  As stated on its website, "Most of IPVALUE's transactions involve the sale or licensing . . . of [its] Partners' patents, including litigation when necessary." [*See* Ebertin Decl., Ex. D at 1, IPValue website, *available at* http://www.ipvalue.com/company.]

[4]  Round Rock argues that the "meeting at SanDisk is irrelevant to the personal jurisdiction question" because the meeting occurred approximately ***one hour*** after the complaint was filed. [*See* Mot. to Dismiss at p. 1, 7 n.4.]  However, Round Rock ignores the activities of its California agents that occurred ***before*** the complaint was filed.

In creating the agency relationship with IPValue, Round Rock has also "created a substantial connection to the forum state—where [Round Rock] ha[s] deliberately engaged in significant activities with [the State of California] or [has] created continuing obligations between themselves and residents of the forum [IPValue]." [Mot. to Dismiss at 5 (internal quotations removed).] Such extensive interactions between Round Rock/IPValue and SanDisk, cannot be characterized as "random, fortuitous, or attenuated." *See Burger King*, 471 U.S. at 475.

Relying on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), Round Rock contends that these "efforts to notify SanDisk of its patent rights" did not subject Round Rock to personal jurisdiction as a matter of law. [Mot. to Dismiss at 2.] However, Round Rock's own citations to *Red Wing Shoe* exemplify how the case does not apply. As shown above, unlike *Red Wing Shoe*, Round Rock's August 3, 2011, letter communicating "notice of its patents" to SanDisk was not the "***only*** contact" with the forum. [*See* Mot. to Dismiss at 8 (emphasis added).] Round Rock cannot avail itself of the benefits and protections of California law by hiring a California company as its agent to enforce its patents against SanDisk (also a California company), have the California-based employees of its California-based agent prepare infringement claim charts and meet with SanDisk in California, fly an additional employee of its agent to California to discuss enforcement of the patents with SanDisk, and then complain about being subjected to personal jurisdiction in California.

**B.** █████████████████████████████████████████

Round Rock acquired the patents-in-suit (along with "thousands" of others) from Micron Technology, Inc. ("Micron"). [Mot. to Dismiss at 1.] In particular, Micron and Round Rock executed a "Patent Sale and Transfer Agreement" on December 30, 2009 (which has not been produced to SanDisk), in which Micron retained a security interest in the "proceeds derived from licensing of the Round Rock Patents or from sale of the Round Rock Patents."[5] [*See* Certification of

---

[5] Of note, Micron has offices in Folsom, Carlsbad, and San Jose, each in California. [Ebertin Decl., Ex. F, Micron website, *available at* http://www.micron.com/about/communities/locations.html.] Further, at least five of the patents-in-suit list Micron inventors with residences in California, including the '334, '760, '586, '791, and '345 patents. [Ebertin Decl., Ex. G]

1  Interested Entities (Dkt. No. 12) at 2; *see also* Ebertin Decl., Ex. D, UCC Financing Statement.]

5  [Ebertin

6  Decl., Ex. C (submitted under seal).]



1184230

**SanDisk's Opposition To Motion To Dismiss**   -8-   **Case No. 11-cv-05243-RS**

1  *Burger King*, 471 US at 473 n.14 (1985) (internal citations and quotations omitted).

2
3
4  **A. Other Licensing Activities by Round Rock and Its Agent, IPValue, Give Rise to Personal Jurisdiction in California.**
5

As described more fully in SanDisk's Motion for Jurisdictional Discovery, [Dkt. No. 27], Round Rock's public admissions of licensing in the district give SanDisk a more than colorable basis for its belief that Round Rock has engaged in licensing negotiations, entered into licensing agreements, and is presently seeking licensing fees from entities that are headquartered in or have principal places of business in California. Although licensing activity unrelated to enforcement or defense of the patents-in-suit cannot by itself create a basis for *specific* jurisdiction, these activities may nonetheless "in the aggregate justify the exercise of *general* jurisdiction." *See Avocent*, 552 F.3d at 1335–36 & n.5; *see also Smugmug, Inc. v. Virtual Photo Store LLC*, No. C 09-2255 CW, 2009 WL 2488003, at *3–4 (N.D. Cal. Aug. 13, 2009) (granting request to conduct jurisdictional discovery to probe patent-holder's licenses with California companies, revenues from its California licenses, and enforcement activities in California).

Round Rock appears to have contacts with California-based companies. For example, Round Rock states that its "licensees include . . . Apple, Sony, Micron, Samsung, Nokia, HTC, IBM, and LG." [Mot. to Dismiss at p. 2] In addition, Round Rock has filed claims for patent infringement against Oracle Corporation in Texas (Case No. 4:11-cv-00332-MHS-ALM). Apple Inc. and Oracle Corporation have headquarters located in California. [*See* Ebertin Decl., Ex. H & Ex. I.]

Round Rock's entire business is licensing its patent portfolio. Therefore, the existence of substantial licensing contacts with companies in California would tend to show "continuous and systematic" contacts in California—contacts that "approximate [a] physical presence" in the state. *See Autogenomics*, 566 F.3d at 1017; *Smugmug*, 2009 WL 2488003, at *3–4. As this Court has observed, "[P]arties who … create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State." *Juniper Networks,* slip op. at 7

(quoting *Burger King*, 471 U.S. at 473 and finding that a non-practicing entity was subject to personal jurisdiction in California).

## IV. CONCLUSION

SanDisk has established that Round Rock has sufficient minimum contacts with the state of California. As such, Round Rock's motion to dismiss for lack of personal jurisdiction should be denied.[6]

Dated: December 13, 2011

Respectfully Submitted,

VINSON & ELKINS LLP

By: */s/ Chuck P. Ebertin*
Chuck P. Ebertin

Attorney for Plaintiff
SANDISK CORPORATION

---

[6] At a minimum, SanDisk has set forth sufficient facts that entitle SanDisk to take jurisdictional discovery if the Court believes that the record needs further development. [*See* Amended Complaint (Dkt. No. 26) and SanDisk's Motion for Jurisdictional Discovery (Dkt. No. 27).]