BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com
333 Bush Street, Suite 2250
San Francisco, California 94104
Telephone:  415-813-6210
Facsimile:  415-813-6222

DESMARAIS LLP
Jon T. Hohenthaner (admitted *pro hac vice*)
jhohenthaner@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com
230 Park Avenue
New York, NY 10169
Telephone:  212-351-3400
Facsimile:  212-351-3401

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SANDISK CORPORATION, | Case No. 3:11-cv-05243-RS |
| Plaintiff, | **DEFENDANT'S REPY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | Date:  January 12, 2012 |
| ROUND ROCK RESEARCH LLC, | Time:  1:30 p.m.<br>Place:  Courtroom #3, 17th Floor<br>Judge:  Hon. Richard Seeborg |
| Defendant. | |

REDACTED VERSION

1

## **TABLE OF CONTENTS**

2      INTRODUCTION .................................................................................................1

3      ARGUMENT .....................................................................................................2

4      I.      Round Rock Is Not Subject To General Personal Jurisdiction In California, Which
              Requires "Continuous and Systematic" Contacts Approximating A "Physical
5              Presence" In The State. .........................................................................2

6              A.      Third Party IPValue's Contacts With California Do Not Subject Round Rock
                      To General Personal Jurisdiction In California. ..............................3
7
8                      1.      IPValue's California Contacts Cannot Be Imputed To Round Rock
                              Because It Is Not Round Rock's "General" Agent And Does Not
                              Perform Important California-Based Services For Round Rock. ...............4
9
10                     2.      IPValue's California Contacts Cannot Be Imputed To Round Rock
                              Because They Are Independent Entities And Round Rock Does Not
11                             Exercise Control Over IPValue's Internal Affairs......................6

12             B.      Round Rock's "Other Licensing Activities" Are Insufficient To Confer
                      General Personal Jurisdiction In California...........................................8

13     II.     The Alleged Activities By Round Rock And/Or IPValue Do Not Give Rise To
              Specific Personal Jurisdiction In This Action.................................................10
14
15     III.    SanDisk's Assertion ████████████████████████████████
              ████████████████████████████████████
16                              Is Factually Unsupported And Contrary To Law..........................13

17     CONCLUSION..................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
4            566 F.3d 1012 (Fed. Cir. 2009)................................................................ 2, 11

5   *Avocent Huntsville Corp. v. Aten Int'l Co.*,
             552 F.3d 1324 (Fed. Cir. 2008)................................................................ 3, 9
6
    *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
7            223 F.3d 1082 (9th Cir. 2000) ................................................................ 9

8   *Bauman v. DaimlerChrysler Corp.*,
             644 F.3d 909 (9th Cir. 2011) ................................................................ 5, 7
9
    *Benasra v. Marciano*,
10           92 Cal. App. 4th 987 (2001) ................................................................ 14

11  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
12           444 F.3d 1356 (Fed. Cir. 2006)................................................................ 8

13  *Chan v. Society Expeditions, Inc.*,
             39 F.3d 1398 (9th Cir. 1994) ................................................................ 4, 5
14
    *Doe ex rel. Doe v. Abercrombie & Kent, Inc.*,
15           No. 09 Civ. 7052(VM), 2010 WL 286640 (S.D.N.Y. Jan. 19, 2010)................................. 8

16  *Doe, I v. Unocal Corp.*,
17           248 F.3d 915 (9th Cir. 2001) ................................................................ 5, 6, 7

18  *Elecs. for Imaging, Inc. v. Coyle*,
             340 F.3d 1344 (Fed. Cir. 2003)................................................................ 4, 11
19
    *English & Smith v. Metzger*,
20           901 F.2d 36 (4th Cir. 1990) ................................................................ 11

21  *Global Recycling Solutions, LLC v. Greenstar New Jersey, LLC*,
22           C.A. No. 09-976-LPS, 2011 WL 4501165 (D. Del. Sept. 28, 2011)................................. 6

23  *Goodyear Dunlop Tires Operations, S.A. v. Brown*,
             131 S. Ct. 2846 (2011)................................................................ 2
24
    *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
25           328 F.3d 1122 (9th Cir. 2003) ................................................................ 4

26  *Harrison v. Procter & Gamble Co.*,
27           Civil Action No. 7:06-cv-121-R, 2007 WL 431085 (N.D. Tex. Feb. 8, 2007) ............... 13, 15

28

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984)............................................................................................. 6, 12

*Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC,*
No. 5:09-cv-2613, 2011 WL 711568 (N.D. Ohio Feb. 22, 2011) ......................... 14

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
485 F.3d 450 (9th Cir. 2007) ............................................................................ 13

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
No. 09-md-2087-BTM, 2011 WL 3812663 (S.D. Cal. Aug. 29, 2011) .................. 6

*In re W. States Wholesale Natural Gas Antitrust Litig.,*
605 F. Supp. 2d 1118 (D. Nev. 2009)................................................................... 5

*Juniper Networks, Inc. v. Altitude Capital Partners, L.P.,*
No. C 09-03449 JSW, 2010 WL 5141839 (N.D. Cal. Dec. 13, 2010) ................... 4, 9, 11, 12

*Juniper Networks, Inc. v. SSL Servs., LLC,*
No. C 08-5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009).................... 9

*Madara v. Hall,*
916 F.2d 1510 (11th Cir. 1990) ........................................................................... 2

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
858 F.2d 509 (9th Cir. 1988) .............................................................................. 13

*Martinez v. Manheim Central Cal.,*
No. 1:10-cv-01511-SKO, 2011 WL 1466684 (E.D. Cal. Apr. 18, 2011).............. 6

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
647 F.3d 1218 (9th Cir. 2011) ............................................................................ 2

*Metcalfe v. Renaissance Marine, Inc.,*
566 F.3d 324 (3d Cir. 2009)............................................................................... 2

*Nanoexa Corp. v. Univ. of Chicago,*
No. 10-CV-2631-LHK, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010).................. 3

*Pinnacle Fitness & Recreation Mgmt. LLC v. Jerry & Vickie Moyes Family Trust,*
No. 08-CV-1368 H(BGS), 2010 WL 5141686 (S.D. Cal. Dec. 13, 2010) ............ 13

*Radio Sys. Corp. v. Accession, Inc.,*
638 F.3d 785 (Fed. Cir. 2011)........................................................................... 4

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998)......................................................................... 6, 10

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ............................................................................ 3

*Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*,
   572 F.3d 771 (9th Cir. 2009) ................................................................... 14

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F.2d 406 (9th Cir. 1977) .................................................................. 4, 5

*Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*,
   Civil Action No. 07-cv-02324-WYD-MEH, 2008 WL 2185882 (D. Colo. May 23, 2008) .. 13

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
   No. C 10-01290 SBA, 2011 WL 2844397 (N.D. Cal. July 18, 2011) ............................... 7, 10

*Zibiz Corp. v. FCN Tech. Solutions*,
   777 F. Supp. 2d 408 (E.D.N.Y. 2011) ................................................................... 8

**<u>Other Authorities</u>**

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2002) ..................... 7

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(2)........................................................................................ 2, 15

**INTRODUCTION**

There is no dispute that Round Rock Research LLC ("Round Rock") has never maintained any offices, employees, bank accounts, or other physical presence in California.   Nevertheless, conflating the separate requirements of general and specific personal jurisdiction, SanDisk insists that Round Rock should be subject to personal jurisdiction in this action based largely on the contacts of myriad independent third parties, including IPValue Management, Inc. ("IPValue"), Apple, Inc. ("Apple"), Oracle Corporation ("Oracle"), and Micron Technology, Inc. ("Micron").

But Round Rock's contacts with these third parties fall far short of satisfying the exacting standard for establishing *general* personal jurisdiction, which—as the Supreme Court recently confirmed—requires a showing that the defendant's activities in the state are so direct and substantial so as to render it essentially at home in the forum state.   For example, third-party IPValue's contacts with California cannot be imputed to Round Rock for several reasons: (i) IPValue is not Round Rock's general agent; (ii) IPValue does not perform services for Round Rock in California such that in its absence, Round Rock would perform those same services in California; and (iii) Round Rock does not exercise control over IPValue's internal affairs such that they are not truly independent entities.   Similarly, Round Rock's "other licensing activities" with California companies do not approximate a physical presence in the state—such activities may constitute doing business *with* California, but do not constitute doing business *in* California.

Round Rock is also not subject to *specific* personal jurisdiction.   While the *actions* of IPValue in enforcing the patents-in-suit may be attributable to Round Rock, those actions— preparing claim charts and informing SanDisk of its infringement—are precisely the things that the Federal Circuit has held do not subject a patentee to personal jurisdiction.   And SanDisk cites no authority for the proposition that hiring a limited agent to assist with such actions is sufficient to confer personal jurisdiction over the patentee simply because the limited agent happens to have an office in California—particularly where, as here, the California presence has nothing to do with the limited agency.   In these circumstances, the limited agent's California presence is fortuitous and does not create specific personal jurisdiction over the patentee.

1    Finally, SanDisk's assertion that ████████████████████████████████

2    ████████████████████████████████████████████████████████████████

3    ████████████ is factually unsupported and contrary to law.  Accordingly, because Round Rock is not

4    subject to personal jurisdiction in this Court, this action should be dismissed pursuant to

5    Fed. R. Civ. P. 12(b)(2).

6                                              **ARGUMENT**

7           SanDisk exaggerates the scope of Round Rock's contacts with California by combining the

8    general and specific jurisdictional inquiries into a single comprehensive argument.  But courts have

9    uniformly held that such an approach is improper—the tests for general and specific jurisdiction are

10   distinct and must be analyzed separately.  *See, e.g., Goodyear Dunlop Tires Operations, S.A. v.*

11   *Brown*, 131 S. Ct. 2846, 2851 (2011) (criticizing the lower court for "[c]onfusing or blending

12   general and specific jurisdictional inquiries" because "[o]pinions in the wake of the pathmarking

13   *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and

14   specific or case-linked jurisdiction."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227

15   (9th Cir. 2011) (finding that relying upon evidence relevant to specific jurisdiction to answer the

16   "distinct question" of general jurisdiction is "misplaced."); *Metcalfe v. Renaissance Marine, Inc.*,

17   566 F.3d 324, 334 (3d Cir. 2009) ("Because general and specific jurisdiction are 'analytically

18   distinct categories,' we consider the facts relevant to each category separately."); *Madara v. Hall*,

19   916 F.2d 1510, 1516 n.7 (11th Cir. 1990) (criticizing plaintiff for "mix[ing] a discussion of general

20   jurisdiction and specific jurisdiction.").   As discussed below, applying the correct standards for

21   evaluating general and specific personal jurisdiction demonstrates that Round Rock's contacts with

22   California fall far short of meeting either jurisdictional requirement.

23   **I.    Round Rock Is Not Subject To General Personal Jurisdiction In**
        **California, Which Requires "Continuous and Systematic" Contacts**
24      **Approximating A "Physical Presence" In The State.**

25          General personal jurisdiction requires that a corporate defendant have "continuous and

26   systematic" contacts with the forum state, such that the corporation is "fairly regarded as at home" in

27   the forum.  *Goodyear*, 131 S. Ct. at 2853-54; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,

28   566 F.3d 1012, 1017 (Fed. Cir. 2009).  Such continuous and systematic contacts must "approximate

1  physical presence" in the forum state.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

2  801 (9th Cir. 2004) (citation omitted).  "This is an exacting standard, as it should be, because a

3  finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer

4  for any of its activities anywhere in the world."  *Id.*  As such, "Courts are understandably reluctant to

5  exercise general jurisdiction."  *Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010

6  WL 4236855, at *3 (N.D. Cal. Oct. 21, 2010).

7      Here, SanDisk identifies two categories of "contacts" that allegedly subject Round Rock to

8  general personal jurisdiction in California:  (i) Round Rock's limited agency relationship with third-

9  party IPValue; and (ii) Round's Rock "other licensing activities" with California companies.

10  (SanDisk Br. at 5-7, 9.)  But none of these alleged contacts are continuous and systematic such that

11  they approximate a physical presence of Round Rock in California.  Round Rock is thus not subject

12  to general personal jurisdiction in California.

13  **A.  Third Party IPValue's Contacts With California Do Not Subject**
14  **Round Rock To General Personal Jurisdiction In California.**

15      SanDisk contends that Round Rock "created a substantial connection" to California by virtue

16  of its relationship with IPValue, an independent Delaware corporation retained by Round Rock to

17  assist in licensing and commercialization of its patent portfolio.  (SanDisk Br. at 7.)  But contrary to

18  SanDisk's suggestion, a third-party's contacts with the forum state are not automatically imputed to

19  a defendant simply because the third-party could be characterized as the defendant's "agent."

20  Rather, a special relationship between the two must exist:  (i) the third-party must be a "general"

21  rather than "limited" agent, and perform services for the principal in the forum state such that in the

22  agent's absence, the principal would necessarily undertake to perform those same services in the

23  forum state; and (ii) the defendant must exercise sufficient control over the third-party's internal

24  affairs such that they are not truly independent entities.[1]  These requirements are not met here.

25

26  [1] Federal Circuit law generally applies to questions of personal jurisdiction in a declaratory judgment action for patent non-infringement and invalidity.  *See Avocent Huntsville Corp. v. Aten Int'l Co.*,
27  552 F.3d 1324, 1328 (Fed. Cir. 2008).  But the Federal Circuit does not appear to have considered the extent to which an agent's contacts in the forum state can be attributed to the principal to
28  (Continued…)

1.   **IPValue's California Contacts Cannot Be Imputed To Round Rock Because It Is Not Round Rock's "General" Agent And Does Not Perform Important California-Based Services For Round Rock.**

There is no dispute that Round Rock appointed third-party IPValue as its agent to assist with commercializing Round Rock's intellectual property rights.  (deBlasi Decl. Ex. A.)[2]  But the scope of IPValue's authority is strictly limited—IPValue has no ownership interest in Round Rock or any of Round Rock's patents, and has no authority to enter into any agreements on behalf of Round Rock or to bring any legal action for infringement of any Round Rock patents.  (deBlasi Decl. ¶ 11; Riley Decl. ¶ 6.)  Accordingly, because IPValue is only a limited rather than "general" agent, its contacts with California are not imputed to Round Rock for purposes of evaluating general personal jurisdiction.  *See, e.g., Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422 (9th Cir. 1977) (finding that a third party must be a "general agent" rather than a special agent to impute its contacts to the principal for purposes of demonstrating general jurisdiction); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994) (finding that general jurisdiction may be based upon the contacts of a "general agent"); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (finding that a third-party's contacts may be imputed to the defendant only if it is the defendant's alter ego or "general agent.").

_____

establish *general* personal jurisdiction.  Indeed, the cases cited by SanDisk either did not address general jurisdiction or found the evidence insufficient to support general jurisdiction.  *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) ("[Plaintiff] does not allege that the district court has general jurisdiction over [defendant].'"); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) ("[Plaintiff] does not assert general jurisdiction in this case."); *Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*, No. C 09-03449 JSW, 2010 WL 5141839, at *3-4 (N.D. Cal. Dec. 13, 2010) (rejecting plaintiff's argument that defendants' relationship with California-based third party constituted "ongoing, collaborative activities" and ruling that the Court did not have general personal jurisdiction over defendants).

[2] "deBlasi Decl." and "Riley Decl." refer to the declarations of Gerard A. deBlasi and Paul J. Riley, respectively, filed in Support of Defendant's Motion to Dismiss on November 17, 2011. (Dkt. Nos. 9 & 11.)

1    Moreover, to impute the contacts of an alleged general agent to a foreign company, the agent

2    must provide services that "are sufficiently important to the foreign corporation that if it did not have

3    a representative to perform them, the corporation's own officials would undertake to perform

4    substantially similar services." *Chan*, 39 F.3d at 1405 (citation omitted); *see also Doe, I v. Unocal*

5    *Corp.*, 248 F.3d 915, 928 (9th Cir. 2001); *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 921

6    (9th Cir. 2011). "The purpose of examining sufficient importance is to determine whether the

7    actions of the subsidiary can be understood as a manifestation of the parent's presence."[3]  *Id*.

8    Accordingly, the exercise of general personal jurisdiction is not justified where the agent's acts,

9    while important to the foreign principal, have little meaningful connection to the forum state.  *See,*

10   *e.g., Unocal*, 248 F.3d at 930 ("Moreover, as a multinational energy company, Total could establish

11   other subsidiary holding companies located in some other state or country to hold the stock of the

12   operating companies located in California.  Under these circumstances, it simply can not be said that

13   CSAI or HSC are Total's general agents for jurisdictional purposes.").

14   Here, IPValue's decision to maintain an office in California (among other places) has nothing

15   whatsoever to do with the limited work it performs for Round Rock.  Importantly, Round Rock did

16   not direct IPValue to create and maintain a California presence "for the special purpose of

17   transacting [Round Rock's] business" in California.  *Wells Fargo*, 556 F.2d at 422.  Nor does

18   IPValue's work for Round Rock—patent analysis and licensing support—have any meaningful

19   geographic nexus to California (or any other jurisdiction).  Rather, such work could be performed

20   anywhere IPValue chooses.  The fact that IPValue may have chosen to perform some of that work in

21   California is of no special importance to Round Rock—in IPValue's absence, Round Rock could

22   undertake such work (or contract with another third party to undertake such work) in any forum

23   without any significant consequence.  *See, e.g., Unocal*, 248 F.3d at 930 ("Total could establish

24

25   [3] "[W]hether the alleged general agent was a subsidiary of the principal or independently owned is

26   irrelevant."  *Wells Fargo*, 556 F.2d at 419, 423 (noting that "establishment of the requisite 'agency'
     control may be even easier when a parent-subsidiary relationship is involved.")

27

28

other subsidiary holding companies located in some other state or country.…"); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 605 F. Supp. 2d 1118, 1136 (D. Nev. 2009) ("Plaintiffs have presented no evidence that RES's natural gas sales in Wisconsin in particular were sufficiently important to REI's business the REI would have performed the sales in Wisconsin itself absent its subsidiary's representation in the forum."); *Global Recycling Solutions, LLC v. Greenstar New Jersey, LLC*, C.A. No. 09-976-LPS, 2011 WL 4501165, *11 (D. Del. Sept. 28, 2011) ("Further, NTR's alleged participation in the negotiations with Global and the representations NTR executives made during those negotiations are wholly unrelated to Delaware.  The Complaint fails to allege that NTR directed Greenstar to act as its agent **to transact business in Delaware** or otherwise directed Greenstar to take action that would subject NTR to personal jurisdiction in Delaware." (emphasis added)).

Accordingly, IPValue's fortuitous presence in California does not substitute for Round Rock's physical presence in the state.  *See, e.g., Unocal*, 248 F.3d at 925; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant.").

### 2.    IPValue's California Contacts Cannot Be Imputed To Round Rock Because They Are Independent Entities And Round Rock Does Not Exercise Control Over IPValue's Internal Affairs.

Additionally, "[a]n alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations."  *Unocal*, 248 F.3d at 926.  "The control must go beyond the general executive control that a parent normally exercises over a subsidiary; the control must be on the level of day-to-day operational control."  *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087-BTM, 2011 WL 3812663, at *10 (S.D. Cal. Aug. 29, 2011); *see also, e.g.,*

1   *Martinez v. Manheim Central Cal.*, No. 1:10-cv-01511-SKO, 2011 WL 1466684, at *4 (E.D. Cal.

2   Apr. 18, 2011) ("Only where it can be shown that the subsidiary corporation is not functioning as a

3   separate entity from the parent corporation will the contacts of a subsidiary be imputed to the

4   parent."); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069 (3d ed.

5   2002) ("When a subsidiary of a foreign corporation is carrying on business in a particular

6   jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of

7   the presumption of corporate separateness. Thus, if the subsidiary's presence in the state is primarily

8   for the purpose of carrying on its own business and the subsidiary has preserved some semblance of

9   independence from the parent and is not acting as merely one of its departments, personal

10  jurisdiction over the parent corporation may not be acquired simply on the basis of the local

11  activities of the subsidiary company.").

12      SanDisk fails to even allege that Round Rock has the right to control the daily operations of

13  IPValue such that it could be considered a general agent of Round Rock for purposes of establishing

14  general personal jurisdiction.[4]   As described above, IPValue's decision to maintain an office and

15  employees in California (among other places) has nothing whatsoever to do with the limited work it

16  performs for Round Rock.   And there is no reasonable dispute that Round Rock and IPValue are

17  separate and independent entities and that Round Rock does not control the day-to-day operations of

18  IPValue.   IPValue's California contacts thus cannot be imputed to Round Rock.   *See Unocal*,

19  248 F.3d at 930; *compare Bauman*, 644 F.3d at 924 (finding sufficient control where the principal

20  "has the right to control nearly all aspects of MBUSA's operations including:   the number of

21  vehicles that MBUSA must sell; the approval of MBUSA's Authorized Resellers, as well as the

22  location of each retail sales outlet, showroom and service facility; the dealership standards that

23

24  _____

25  [4] Nor does SanDisk's repeated assertion concerning Mr. deBlasi's role with both IPValue and Round
    Rock support a finding of general personal jurisdiction over Round Rock.   *See, e.g., Zero*

26  *Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, No. C 10-01290 SBA, 2011 WL 2844397, at *10 (N.D. Cal.
    July 18, 2011) ("[T]he mere fact that a parent and subsidiary share board members, standing alone,

27  is not enough to meet … the agency test.") (quotations and citations omitted).

28

1   MBUSA must comply with; the business systems that MBUSA uses;" among many other things).

2   Indeed, IPValue performs licensing support services for a number of unrelated third parties—

3   including Xerox Corporation, British Telecom, and NXP Semiconductors (Riley Decl. ¶ 4)—

4   demonstrating IPValue's status as a separate, independently controlled entity.  *See, e.g., Zibiz Corp.*

5   *v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 418 (E.D.N.Y. 2011) ("[A]lthough personal

6   jurisdiction may be asserted over a foreign corporation when it affiliates itself with a [forum state

7   entity] and that [foreign state entity] renders services … sufficiently important to the foreign entity,

8   … in order to come within that rule, the agent must be primarily employed by the defendant and not

9   engaged in similar services for other clients." (quotations and citations omitted)); *Doe ex rel. Doe v.*

10  *Abercrombie & Kent, Inc.*, No. 09 Civ. 7052(VM), 2010 WL 286640, at *3 (S.D.N.Y. Jan. 19, 2010)

11  ("For jurisdictional agency to exist, "[t]he agent must be primarily employed by the defendant and

12  not engaged in similar services for other clients.").

13          Accordingly, for this additional reason, IPValue's independent decision to undertake certain

14  work in California cannot be attributed to Round Rock to establish general personal jurisdiction.

15
        **B.      Round Rock's "Other Licensing Activities" Are Insufficient To
16              Confer General Personal Jurisdiction In California.**

17          SanDisk also argues that Round Rock's "other licensing activities"—including a non-

18  exclusive patent license agreement with Apple and litigation concerning unrelated patents against

19  Oracle in Texas—justify the exercise of general personal jurisdiction over Round Rock in

20  California.[5]  (SanDisk Br. at 9.)  But contrary to SanDisk's assertions, these limited activities do not

21  establish the "continuous and systematic" contacts required to exercise general personal jurisdiction.

22          SanDisk's assertion that "the existence of [Round Rock's] substantial licensing contacts with

23  companies in California" tend to "approximate [a] physical presence" in the state is contrary to law.

24  (SanDisk Br. at 9.)  The Federal Circuit has held that non-exclusive patent license agreements with

25

26  ────────────────
    [5] SanDisk concedes that licensing activity unrelated to enforcement of the patents-in-suit cannot

27  justify the exercise of specific personal jurisdiction.  (SanDisk Br. at 9.)

28

1   residents of a state—such as those here—do not subject the patentee to personal jurisdiction.  *See*

2   *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[A]

3   defendant may not be subjected to personal jurisdiction … where the defendant has successfully

4   licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for

5   example, exercise control over the licensees' sales activities and, instead, has no dealings with those

6   licensees beyond the receipt of royalty income.").   Indeed, such "agreements constitute doing

7   business **with** California, but do not constitute doing business **in** California."  *Bancroft & Masters,*

8   *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("[E]ngaging in commerce with

9   residents of the forum state is not in and of itself the kind of activity that approximates physical

10  presence within the state's borders." (emphasis added)).[6]

11          Nor does Round Rock's claim of patent infringement against Oracle create a basis for

12  establishing general personal jurisdiction over Round Rock in California.  While Oracle may have its

13  headquarters in California, Round Rock filed its action in the ***Eastern District of Texas***.  Tellingly,

14  SanDisk cites no authority for its proposition that enforcement activity in a different forum can

15  create a basis for the exercise of general personal jurisdiction in California.  *See, e.g., Juniper*

16  *Networks, Inc. v. SSL Servs., LLC*, No. C 08-5758 SBA, 2009 WL 3837266, at *4 (N.D. Cal. Nov.

17  16, 2009) (rejecting such an argument because it does not "make any logical sense"); *c.f. Avocent*,

18  552 F.3d at 1334 (holding that enforcement activities relevant to the jurisdictional inquiry "include

19  initiating judicial or extra-judicial patent enforcement ***within the forum***" (emphasis added)).

20  Accordingly, SanDisk's assertion that "other licensing activities" form a basis for the exercise of

21  general personal jurisdiction over Round Rock should be rejected.

22

23

24

---

25  [6] Indeed, *Juniper Networks*—cited by SanDisk—supports Round Rock's position.  *See Juniper*
   *Networks*, 2010 WL 5141839, at *5 (finding that defendant's weekly meetings with California-based
26  entity arising out of its purchase of intellectual property "are not the sort of continuous and
27  systematic contacts that give rise to general jurisdiction.").

28

## II.    The Alleged Activities By Round Rock And/Or IPValue Do Not Give Rise To Specific Personal Jurisdiction In This Action.

To establish specific personal jurisdiction, SanDisk must demonstrate that Round Rock "purposefully directed" its activities at residents of the forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities.  *Avocent*, 552 F.3d at 1330 (citation omitted).   But the Federal Circuit has repeatedly held that contacts directed towards the forum related to informing others of a patentee's patent rights—such as those here—cannot subject the patentee to personal jurisdiction for a declaratory judgment action in that forum.  *See, e.g., Red Wing Shoe*, 148 F.3d at 1361 ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.").

Here, SanDisk points to several contacts that allegedly support specific jurisdiction:[7]

- On August 3, 2011, sending a letter from Round Rock to SanDisk in California accusing SanDisk of infringing the patents-in-suit and notifying SanDisk that it had appointed IPValue as its agent. [deBlasi Decl. (Dkt. No. 9) at ¶ 9 & Ex. A.]

- On August 12, 2011, sending a letter from IPValue, as agents of Round Rock, to SanDisk in California, confirming the agency relationship and asking to meet with SanDisk in California regarding the patents-in-suit. [Riley Decl. (Dkt. No. 11) at ¶ 7 & Ex. A.]

- Prior to October 27, 2011, having Andrew Wu and/or Jui Min Lim, each employees of the IPValue California office, prepare claim charts regarding infringement of the patents-in-suit. [First Amended Compl. (Dkt. No. 26) at ¶¶ 18–19.]

- Before the complaint was filed on October 27, 2011, flying Paul Riley to California for purposes of meeting with SanDisk to discuss alleged infringement of the patents-in-suit. [*Id.* at ¶ 21.]

---

[7] SanDisk also argues that Round Rock purposefully directed activities at residents of California by virtue of the fact that its Vice President, Gerald deBlasi, also serves as a member of IPValue's Board of Directors. (SanDisk Br. at 6.)  But SanDisk fails to articulate how that fact constitutes purposeful direction by Round Rock to the California forum.  Indeed, the mere fact that a Round Rock executive also serves on the board of directors of IPValue does not remotely support the imputation of contacts for purposes of establishing personal jurisdiction.  *Zero Motorcycles*, 2011 WL 2844397, at *10 ("[T]he mere fact that a parent and subsidiary share board members, standing alone, is not enough to meet … the agency test.").

1

2

- On October 27, 2011, meeting with SanDisk and presenting claim charts as to why SanDisk allegedly infringes the patents-in-suit. Messrs. Wu, Lim, and Riley attended this meeting on behalf of IPValue / Round Rock.4 [Ebertin Decl. at ¶¶ 3-4.][8]

3

4

5

6

7

8

9

10

(SanDisk Br. at 6.)  But all of the "contacts" SanDisk identifies—letters notifying SanDisk of Round Rock's patent rights, preparation of claim charts (a necessary component of any pre-suit analysis for patent infringement), and the October 27, 2011, in-person meeting with SanDisk at its facilities in California—are intimately connected with Round Rock's right to notify SanDisk of infringement without being subjected to personal jurisdiction.  *See, e.g., Autogenomics*, 566 F.3d at 1015, 1021 (finding no personal jurisdiction where patentee sent assertion letters to the alleged infringer in California followed by a personal meeting in California regarding the assertion).  Settled Federal Circuit authority therefore rejects SanDisk's principal argument for specific jurisdiction.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

        SanDisk alternatively argues that Round Rock is subject to specific jurisdiction in this action by virtue of its limited agency relationship with IPValue.  (SanDisk Br. at 5-6 (citing *Elecs. for Imaging*, 340 F.3d 1344 and *Juniper Networks*, 2010 WL 5141839).)  But both cases cited by SanDisk are readily distinguishable.  For example, in *Elecs. for Imaging*, the patentee specifically retained a California attorney who repeatedly contacted the declaratory judgment plaintiff concerning the patentee's pending patent application.  *Elecs. for Imaging*, 340 F.3d at 1347, 1351 (also noting that the patentee "hired two different California firms to prosecute the '212 application" and entered an NDA with the plaintiff that was "governed by and construed under the laws of the State of California").  By doing so, the patentee purposefully availed himself of the privilege of doing business within California.  *See id.* at 1350-51.  Indeed, retention of a forum state attorney may be relevant to the personal jurisdiction inquiry, as the attorney is licensed by the state to provide legal services under the forum state's laws.  *See, e.g., English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990) (considering the retention of a forum state attorney in the personal jurisdiction

25

26

27

[8] SanDisk does not—and cannot—dispute that personal jurisdiction must have existed at the time the complaint was filed, and accordingly that the meeting at SanDisk's facilities is irrelevant to the personal jurisdiction inquiry.  *See* Round Rock Op. Br., Dkt. No. 8 at n.4; SanDisk Br. at 6 n.4.

28

1   inquiry because "Metzger initiated the relationship with Smith, knowing that Smith was a Virginia

2   lawyer who likely would do the requested work in Virginia."). Here, to the contrary, Round Rock

3   did not retain a California-licensed attorney.  Rather, Round Rock hired *IPValue*—a Delaware

4   company that has offices and employees in a number of states, including California, to assist with

5   some of its patent licensing efforts.  (deBlasi Decl. ¶ 9; Riley Decl. ¶ 5.)  While SanDisk makes

6   much of the fact that one such IPValue employee—Andrew Wu—is a California-licensed attorney

7   (SanDisk Br. at 5), Round Rock did not retain either IPValue (which is not a law firm) or Mr. Wu to

8   act as *attorneys* for Round Rock.  IPValue's decision to staff Mr. Wu in connection with providing

9   contractual services to Round Rock thus does not demonstrate *Round Rock's* purposeful availment

10  of California's laws.  *See Helicopteros*, 466 U.S. at 417 ("[U]nilateral activity of another party or a

11  third person is not an appropriate consideration when determining whether a defendant has sufficient

12  contacts with a forum State to justify an assertion of jurisdiction.").

13          In *Juniper Networks*, the patentee entered into an ongoing contract—and retained substantial

14  control over—a California-based entity.  *Juniper Networks*, 2010 WL 5141839, at *5.  Indeed, the

15  Court found particularly persuasive the fact that the defendant "entered [into] a contract with a

16  California entity that granted them the rights to play an active and continuing role in that California

17  entity's decision-making process…."  *Id*.  Significantly, the California-based entity in *Juniper*

18  *Networks* also retained title to the patents-in-suit.  *Id*. at *1.  In that context, the court found the

19  exercise of specific jurisdiction over the foreign defendants reasonable.  *Id*. at *5.  By contrast,

20  Round Rock does not control IPValue's decision-making processes—IPValue is an independent

21  Delaware company that performs specific services to Round Rock pursuant to a contractual

22  arrangement.  (deBlasi Decl. ¶ 9; Riley Decl. ¶ 5.)  The fact that IPValue may have chosen to

23  perform some of its work in California does not demonstrate purposeful availment of the California

24  forum by Round Rock.  *See Helicopteros*, 466 U.S. at 417.  Nor does IPValue possess any interest in

25  the patents-in-suit, unlike the California-based entity in *Juniper Networks*.[9]

26

27  [9] SanDisk's assertion that "IPValue Retains an Interest in the Patents-in-suit" (SanDisk Br. at 3) is a
    fiction fabricated by SanDisk and unsupported by any evidence—there is no dispute that "IPValue
28                                                                                    (Continued…)

1   Accordingly, Round Rock's activities in this case—including its relationship with IPValue—

2   comprise routine efforts by a patentee to review and enforce its intellectual property rights.  And

3   Round Rock did not engage in any other activities purposefully directed towards California that

4   would warrant the exercise of specific personal jurisdiction under Federal Circuit law.

5   **III.   SanDisk's Assertion** ████████████████████████████████████████

6   ████████████████████████ **Is Factually Unsupported And Contrary To**

7   **Law.**

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████   But SanDisk's argument has no legal support and misapplies basic contract law, and should

12  therefore be rejected.

13   "Under general contract principles, a forum selection clause may give rise to waiver of

14  objections to personal jurisdiction, ***provided that the defendant agrees to be so bound***."  *Holland*

15  *Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (emphasis added and

16  internal citations omitted); *see also Pinnacle Fitness & Recreation Mgmt. LLC v. Jerry & Vickie*

17  *Moyes Family Trust*, No. 08-CV-1368 H(BGS), 2010 WL 5141686, at *2 (S.D. Cal. Dec. 13, 2010)

18  ("In the context of personal jurisdiction challenges, non-signatories could be bound by a forum

19  selection clause if the defendant 'agree[d] to be so bound.'" (citation omitted)).  Otherwise, a forum

20  selection clause may be enforced against nonparties to an agreement only "where the alleged

21  conduct of the nonparties is ***closely related*** to the contractual relationship."  *Holland Am.*, 485 F.3d

22  at 456 (emphasis added); *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5

23  (9th Cir. 1988).

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  

27  has no ownership interest in Round Rock or any of Round Rock's patents."  (deBlasi Decl. ¶ 11; *see*

28  *also* Riley Decl. ¶ 6.)

1  ███████████████████████████████████████████████████████████

2  ████████████████████████         *See Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, Civil

3  Action No. 07-cv-02324-WYD-MEH, 2008 WL 2185882, at *8 (D. Colo. May 23, 2008) (noting

4  that a forum selection clause may apply to a nonparty only if it had "a close relationship to the

5  contractual relationship" and finding that "no such relationship exists here because at the time of the

6  signing of the contract [the third party] had absolutely no connection to the contractual

7  relationship."); *Harrison v. Procter & Gamble Co.*, Civil Action No. 7:06-cv-121-R, 2007 WL

8  431085, at *2-3 (N.D. Tex. Feb. 8, 2007) (finding that the "closely related" test does not apply to a

9  third party that "had no rights or interest" in the agreement at the time it was entered—"[b]ecause

10  Procter & Gamble did not purchase Gillette until four months after Gillette entered the Agreement

11  with Plaintiffs, neither party could foresee that Procter & Gamble was 'closely related' to the

12  transaction such that Plaintiffs could foresee Procter & Gamble binding them to the forum selection

13  clause in the Agreement.").

14  ██████████████████████████████████████████████████████████

15  ████████████████████████████████████████████         "Under California law, a

16  purported third-party beneficiary must show that the contract was 'made expressly for the benefit of

17  a third person.'" *Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*,

18  572 F.3d 771, 779 (9th Cir. 2009) (citation omitted).  ████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████████

22  ████████████████████████████████████████         *See, e.g., Hitachi Med. Sys. Am., Inc.*

23  *v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 WL 711568, at *8 (N.D. Ohio

24  Feb. 22, 2011) (refusing to apply forum selection clause of a contract to a third party purchaser of

25  equipment at issue in the contract because the purchaser was not a third-party beneficiary, and

26  "under the basic principles of contract law, a contractual agreement is unenforceable against a

27  person or entity who was not a party to the contract." (citation omitted)); *c.f. Benasra v. Marciano*,

28

92 Cal. App. 4th 987, 991 (2001) (refusing to apply arbitration provision of a contract to a third

party who was not a third-party beneficiary).

*Harrison*,

2007 WL 431085, at *1-2 (finding that because the Agreement referenced successors and assigns as

distinct from the parties, "[t]he plain meaning of the term parties in this Agreement could only apply

to Gillette and Plaintiffs, the signatories to the Agreement.  Therefore, the forum selection clause—

clearly limited to 'any Action between the parties'—does not apply to a case in which Plaintiffs, a

party to the Agreement, have sued Procter & Gamble, a non-party to the Agreement.").

## **CONCLUSION**

     For the foregoing reasons, Defendant respectfully requests that this Court dismiss this action

pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Dated:  December 20, 2011              Respectfully submitted,

                                  BLACK CHANG & HAMILL LLP
                                  Bradford J. Black (SBN 252031)
                                  bblack@bchllp.com
                                  Andrew G. Hamill (SBN 251156)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ahamill@bchllp.com

DESMARAIS LLP
Jon T. Hohenthaner (admitted *pro hac vice*)
jhohenthaner@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com


By:    /s/ Bradford J. Black

*Attorneys for Defendant*
*Round Rock Research LLC*