CHUCK P. EBERTIN (SBN 161374)
  cebertin@velaw.com
VINSON & ELKINS LLP
525 University Avenue, Suite 410
Palo Alto, CA  94301-1918
Tel:  (650) 687-8200
Fax: (650) 618-1970

Attorney for Plaintiff
SANDISK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SANDISK CORPORATION,<br><br>           Plaintiff,<br><br>    vs.<br><br>ROUND ROCK RESEARCH LLC,<br><br>           Defendant. | Case No. 11-cv-05243-RS<br><br>**SANDISK'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JURISDICTIONAL DISCOVERY**<br><br>Date:   January 12, 2012<br>Time:   1:30 p.m.<br>Judge:  Honorable Richard Seeborg |

## I.   INTRODUCTION

Round Rock's Opposition to Plaintiff's Motion for Jurisdictional Discovery (Dkt. No. 41, "Opp. Br.") conflates the two types of personal jurisdiction: specific and general.  In the process, Round Rock admits to certain determinative facts supporting specific personal jurisdiction while underscoring the appropriateness for jurisdictional discovery regarding general personal jurisdiction.

To comport with due process, personal jurisdiction may be either "general" or "specific." General jurisdiction requires that the "defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  "Specific jurisdiction," on the other hand looks to "minimum contacts" with the forum state and must be based on activities that arise out of or relate to

the cause of action.  Specific jurisdiction can exist even if the defendant's contacts are not continuous and systematic.  *See id.* at 1350.

Round Rock makes numerous admissions that support the minimum contacts necessary for ***specific*** personal jurisdiction in California as to the patents-in-suit.[1]  As a non-practicing entity whose sole business is the monetization of patents, Round Rock does not dispute that it appointed a California-based agent (IPValue) in 2009 to commercialize the patents-in-suit (and other patents), hired California-based attorneys at IPValue to prepare infringement claim charts regarding the patents-in-suit, and visited SanDisk (in California) to present those infringement claim charts.  These undisputed facts satisfy the minimum contacts necessary to establish ***specific*** personal jurisdiction regarding the patents-in-suit.  *Elecs. for Imaging,* 340 F.3d at 1351 (finding specific personal jurisdiction under California's long-arm statute when the declaratory judgment defendant "hired a California attorney . . . who contacted [the declaratory judgment plaintiff] at various times" and visited the plaintiff's "facility in California for the purpose of demonstrating the technology"); *see also Juniper Networks*, *Inc. v. Altitude Capital Partners, L.P.*, No. C 09-03449 JSW, slip op. at 2, 7–8 (N.D. Cal. Dec. 13, 2010) (finding specific personal jurisdiction based on contact with California-based company).  Round Rock did not address these cases in its opposition brief.

In addition, these uncontroverted facts establish that SanDisk has more than a "colorable basis" for seeking jurisdictional discovery in order to establish ***general*** personal jurisdiction in California.  *See Panterra Networks, Inc. v. Convergence Works*, *LLC*, No. C-09-1759 RMW, 2009 WL 4049956, at *4 (N.D. Cal. Nov. 20, 2009).

## II.  ROUND ROCK'S RELATIONSHIP WITH IPVALUE

### A.  Round Rock is subject to <u>specific</u> jurisdiction regarding the patents-in-suit via the actions of its agent, IPValue.

Round Rock does not dispute that it is a non-practicing entity whose "bread and butter" is the monetization of its patents, and Round Rock admits that it hired IPValue as its agent to commercialize the patents-in-suit.  [Opp. Br. at 1−3.]  However, Round Rock understates that IPValue "happens to

---

[1] "Patents-in-suit" refers to the eleven patents for which SanDisk seeks a declaratory judgment of non-infringement and/or invalidity.  [*See* First Am. Compl. at ¶ 1 (Dkt. No. 26).]  The factual allegations of the First Amended Complaint are incorporated herein by reference.  [*See id.* ¶¶ 8–31.]

have an office in California (among other places)" and that "IPValue's contacts with California are fortuitous." [*Id.*]  To the contrary, IPValue has its **headquarters** in Mountain View, California, and IPValue employs the ***majority*** of its employees at that location, including at least four patent licensing attorneys.  [*See* Ebertin Decl., Ex. B, Ex. D at 5–9.][2] Nor is Round Rock's relationship with IPValue merely "fortuitous."  As stated on IPValue's website, Round Rock has been an IPValue "Partner" since 2009—the year that Round Rock was created.  Such "[p]artners typically engage with IPVALUE through exclusive multi-year relationships and rely upon IPVALUE to complement internal IP activities, offset risks and expenses, and leverage our best practices, resources, and networks to maximize returns."  [*See* Ebertin Decl., Ex. D at 1.]  Thus, through its affiliation with IPValue, Round Rock has done much more than send a licensing letter to SanDisk.  *Cf. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (finding infringement letters "without more" insufficient to establish personal jurisdiction); *Breckenridge* Pharm*., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there.").[3]

Round Rock also does not dispute that ***before*** SanDisk filed the declaratory judgment action, Round Rock's agents/attorneys in California: (a) sent a letter to SanDisk (in California) seeking to monetize the patents-in-suit;[4] (b) asked employees in California (Mr. Wu, an attorney licensed to practice in California, and Mr. Lim) to prepare claim charts regarding the patents-in-suit; (c) asked Messrs. Wu and Lim to meet with SanDisk in Milpitas, California to present their infringement

---

[2] "Ebertin Decl." refers to the Declaration of Chuck Ebertin in Support of Plaintiff SanDisk Corp.'s Opposition to Defendant's Motion to Dismiss on December 13, 2011 (Dkt. No. 39).

[3] The significant activities by Round Rock and its agent within the state of California far surpass mere licensing letters.  Thus, the cases cited by Round Rock on page seven of its Opposition Brief are inapplicable.  *See, e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed Cir. 2008) (holding that "letters threatening suit for patent infringement sent to the alleged infringer ***by themselves*** do not suffice to create personal jurisdiction") (emphasis added and citations omitted); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) ("the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction [and] Plaintiff here has not alleged ***other*** sufficient activities related to the claim of patent non-infringement and invalidity") (emphasis added); *Red Wing Shoe*, 148 F.3d at 1360 (finding that sending letters alleging infringement does "not suffice to create personal jurisdiction").

[4] Round Rock itself sent such a letter to SanDisk in California.  *See* Decl. of Gerard A. deBlasi filed in Supp. of Def.'s Mot. to Dismiss on Nov. 17, 2011 (Dkt. No. 9, "deBlasi Decl.") at Ex. A.

---

**SanDisk's Reply Brief Re Motion For Jurisdictional Discovery**            3            **Case No. 11-cv-05243-RS**

assertions; and (d) and flew one of the IPValue executives, Paul Riley, to California to meet with SanDisk regarding monetization of the patents-in-suit. [Dkt. No. 27, SanDisk's Motion for Jurisdictional Discovery ("SanDisk Mot.") at 4.] Together, Round Rock's actions and the actions of its California-based agents satisfy the "minimum contacts" test and demonstrate that Round Rock is subject to *specific* jurisdiction in California regarding the patents-in-suit. *See Elecs. for Imaging*, 340 F.3d at 1351; *Juniper Networks*, slip op. at 2, 7–8.

### B. Jurisdictional discovery is appropriate to prove <u>general</u> personal jurisdiction vis-à-vis the relationship between Round Rock and IPValue.

Round Rock's motion to dismiss should be denied because there can be no reasonable dispute that it is subject to *specific* personal jurisdiction in the state of California regarding the patents-in-suit. Regarding *general* personal jurisdiction, Round Rock's Opposition Brief serves only to highlight the appropriateness of SanDisk's request for jurisdictional discovery. [*See* SanDisk Mot. at Appx. A–C (propounding a targeted set of requests for production, interrogatories, and deposition topics).] In its opposition brief, Round Rock argues that jurisdictional discovery is unnecessary because certain facts were "not controverted," but that is not the correct standard for determining whether jurisdictional discovery is appropriate. Under the correct standard, SanDisk needs only to establish a "colorable basis for personal jurisdiction, i.e., 'some evidence' tending to establish personal jurisdiction over the defendant." *Panterra Networks*, 2009 WL 4049956, at *4. To that end, SanDisk has more than established a colorable basis for discovery into general personal jurisdiction regarding (1) the extent of Round Rock's agency relationship with IPValue in California; and (2) the extent of Round Rock's and IPValue's licensing activities in California.

Round Rock states in conclusory fashion that "IPValue's authority is strictly limited" and that IPValue "has no ownership interest in Round Rock or any of Round Rock's patents, and has no authority to enter into any agreements on behalf of Round Rock or to bring any legal action for infringement of any Round Rock patents." [Opp. Brief. at 3.] But that is beside the point. Whether Round Rock may (or may not) have limited IPValue's authority does not alter the simple fact that Round Rock retained IPValue as its agent to conduct business on Round Rock's behalf in California—specifically to monetize its patent portfolio, which is the entirety of Round Rock's

business.  Further, Round Rock's protestations do not comport with the actions of both Round Rock and IPValue.  Round Rock told SanDisk that it appointed IPValue as its agent for purpose of commercializing the patents-in-suit [deBlasi Decl. ¶ 8 & Ex. A.], suggesting to any reasonable observer that IPValue does have authority to negotiate agreements on Round Rock's behalf.  Indeed, the *Panterra* case, quoted in Round Rock's Opposition Brief, suggests that an agency relationship is an important factor to consider in allowing jurisdictional discovery:

> A parent-subsidiary relationship alone is not sufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. Two exceptions to this rule are when the parent is the alter ego of the subsidiary or where the subsidiary acts as the general agent of the parent.  When the facts have not been sufficiently developed to enable the court to make a determination on the alter ego or ***agency issue***, however, it ***may be appropriate to permit the plaintiff to engage in jurisdictional discovery***.

*Panterra Networks*, 2009 WL 4049956, at *4.[5]  The full extent of the relationship between Round Rock and IPValue lies within the purview of Round Rock's knowledge, and SanDisk expects to uncover additional evidence of continuous and systematic interaction with California through jurisdictional discovery.[6]

Contrary to Round Rock's naked assertions, there is a "genuine dispute" regarding whether "Round Rock and IPValue are separate, independent entities."  [*But see* Opp. Br. at 4.]  Indeed, there can be no dispute that the two companies are ***not*** working "independently."  Round Rock admits that Mr. deBlasi "is currently Vice President of Licensing at Round Rock (deBlasi Decl. ¶ 2) and a member of the Board of Directors of IPValue."  [Opp. Br. at 4.]  Further, on information and belief, Round Rock and IPValue have been working together since at least 2009 to commercialize Round Rock's patent portfolio.  Contrary to Round Rock's conclusory assertions, the nature of Mr. deBlasi's

---

[5] Of note, the *Panterra* court found specific personal jurisdiction to exist based on a forum selection clause in a contract.  *Panterra*, 2009 WL 4049956 at *3; *see also* SanDisk's Opposition to Motion to Dismiss at 7–9 (Dkt. No. 38).

[6] Relying on the Supreme Court's decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984), Round Rock appears to argue that neither specific nor general jurisdiction exist.  However, that case did not address the issue of specific jurisdiction.  There, the Supreme Court held that "mere" purchases of items unrelated to the alleged wrong were not enough to support general jurisdiction.  *Id.* at 411, 417-18 and n.12.  *Helicopteros* is also distinguishable from the present case because there, the Columbian defendant's contacts with the Texas forum were important but not central to the defendant's business.  Here, the work of IPValue, Round Rock's California-based agent, is central to Round Rock's sole business, the negotiation and licensing of Round Rock's patent portfolio.

roles and responsibilities is "relevan[t] to the personal jurisdiction inquiry" [Opp. Br. at 4], and SanDisk has demonstrated a colorable basis for its request for jurisdictional discovery regarding the relationship of the two intertwined entities. *See Panterra Networks*, 2009 WL 4049956, at *4 (allowing jurisdictional discovery "to enable the court to make a determination on the alter ego or agency issue"); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (cited at Opp. Br. pp. 2, 3, 5) ("Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

The *Martinez* case cited by Round Rock demonstrates the necessary "colorable basis" for seeking discovery regarding the relationship between Round Rock and IPValue, including their common director Mr. deBlasi:

> [I]t is also well established that if the parent and the subsidiary are not really separate entities, or one acts as an ***agent*** of the other, the local subsidiary's contacts with the forum state may be imputed to the foreign parent corporation. In other words, a subsidiary's contacts with the forum may be imputed to the parent where the subsidiary is the parent's ***alter ego or*** the ***general agent*** of the parent.

*Martinez v. Manheim Central Calif.*, No. 1:10-cv-01511-SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (citations omitted, emphasis added) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422–24 (9th Cir. 1977)). The law does not require that IPValue be Round Rock's alter ego in order to establish general jurisdiction; a general agency relationship is sufficient. *See Martinez*, 2011 WL 1466684, at *5. Unlike the defendants in *Martinez*, Round Rock freely admits that IPValue is its agent. Moreover, IPValue's work for Round Rock involves the negotiation and licensing of its patents. These activities relate directly to the "bread and butter" of Round Rock's daily business—licensing and negotiating licenses for its patent portfolio. It is, therefore, fair to say that IPValue is conducting Round Rock's day-to-day business in California. Because Round Rock's sole business is the monetization of its patents (including the patents-in-suit), discovery is necessary to understand the extent to which IPValue functions "as the parent corporation's representative in that it performs services that are sufficiently important to the foreign

corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* at *5.[7]

### III.  ROUND ROCK'S LICENSING ACTIVITIES WITH CALIFORNIA-BASED COMPANIES

SanDisk has demonstrated through its threshold showing that SanDisk should be allowed jurisdictional discovery regarding Round Rock's licensing activities with California-based entities. Unlike the defendant in the *Bancroft* case, Round Rock hired a California-based agent to commercialize its patents. Round Rock is also differently situated than the defendant in *Bancroft*, because Round Rock's sole business is patent licensing. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1084–85 (9th Cir. 2000). Of note, the *Bancroft* court found specific jurisdiction to exist because the declaratory judgment defendant targeted a California-based company with its letters, similar to what Round Rock has done to SanDisk:

> We conclude that B & M has demonstrated purposeful availment by ANI under the Calder effects test. ANI acted intentionally when it sent its letter to NSI. The letter was expressly aimed at California because it individually targeted B & M, a California corporation doing business almost exclusively in California. Finally, the effects of the letter were primarily felt, as ANI knew they would be, in California.

*Id.* at 1088.

In addition to using a California-based agent (IPValue) to target a California-based company (SanDisk), Round Rock admits that it has entered into a patent license with Apple, another California-based entity. [Opp. Br. at 5.] Round Rock further admits litigating its patents against Oracle, a California company. [*Id.* at 7.] Similar to its dealings with SanDisk, Round Rock has likely engaged with Oracle and Apple in licensing activities (either through itself or its agent IPValue) within the state of California. Through jurisdictional discovery, SanDisk should be allowed to ascertain the nature of the relationship between Round Rock and Apple, Oracle, and other

---

[7] The *Scholl* case cited by Round Rock is inapplicable because neither the principal nor the agent resided in California. *See Scholl v. F.D.I.C.*, No. 08-3977 SC, 2009 WL 1625947, at *5 (N.D. Cal. June 5, 2009). In contrast, Round Rock's agent (IPValue) is headquartered in California and used California employees to monetize the patents in suit. Moreover, the cases cited by Round Rock finding no general jurisdiction made that determination *after* jurisdictional discovery. *See, e.g.*, *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 792 (S.D. Cal. 1990); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360 (Fed. Cir. 2006). SanDisk has not yet been afforded the opportunity to pursue the limited set of jurisdictional discovery it seeks. [*See* SanDisk Mot. at Appx. A–C.]

California-based licensing targets to determine, for example, whether Round Rock subjected itself to a forum selection clause that would subject it to personal jurisdiction in California, whether Round Rock and/or its California-based agent pursued licensing negotiations in California, and whether Round Rock and/or its California-based agent prepared infringement claim charts in California.

Round Rock's licensing activities and ties to California extend even further.  Round Rock admits that it acquired the patents-in-suit from Micron Technology, Inc. ("Micron"). [Round Rock's Mot. to Dismiss for Lack of Personal Jurisdiction (Dkt No. 8).]  In particular, Micron and Round Rock executed a "Patent Sale and Transfer Agreement" on December 30, 2009 (a copy of which SanDisk expects to receive during discovery), in which Micron retained a security interest in the "proceeds derived from licensing of the Round Rock Patents or from sale of the Round Rock Patents." [*See* Cert. of Interested Entities (Dkt. No. 12) at 2; *see also* Ebertin Decl., Ex. E.]  Round Rock acquired the patents-in-suit with the assistance of Gemas Capital, Inc. ("Gemas").  Gemas is a company incorporated in California that was established by Zahid Rahimtoola, who is also the Chief Financial Officer of IPValue.[8]  Gemas still retains an interest in the patents-in-suit. [*See* Cert. of Interested Entities (Dkt. No. 12) at 2; *see also* Ebertin Decl., Ex. E.]  Thus, Round Rock's contacts with the State of California have been systematic from its inception.  Round Rock acquired the patents-in-suit from a company (Micron) with significant ties to California[9]; received financing from a California corporation (Gemas); used a California-based agent (IPValue) for its only business— patent monetization; and engaged in licensing discussions with California companies (SanDisk, Apple, Oracle, and likely others).  There is more than a "colorable basis" to seek jurisdictional discovery to confirm additional activities in California that, in combination, would subject Round Rock to general personal jurisdiction in California.

---

[8] *See* First Am. Compl. at ¶ 12 (Dkt. No. 26).  For purposes of this motion, uncontroverted facts recited in SanDisk's First Amended Complaint must be taken as true.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

[9] Of note, Micron has offices in Folsom, Carlsbad, and San Jose, each in California. [Ebertin Decl., Ex. F.]  Further, at least five of the patents-in-suit list Micron inventors with residences in California, including the '334, '760, '586, '791, and '345 patents. [Ebertin Decl., Ex. G.].

## IV. CONCLUSION

Round Rock's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt No. 8) should be denied because the undisputed facts demonstrate that through its actions and the actions of its California-based agent, Round Rock is subject to *specific* personal jurisdiction in California. In addition, SanDisk's Motion for Jurisdictional Discovery (Dkt. No. 27) should be granted because SanDisk has more than a "colorable basis" for alleging *general* personal jurisdiction in California.

Dated: December 20, 2011

Respectfully Submitted,

VINSON & ELKINS LLP

By: */s/ Chuck P. Ebertin*
Chuck P. Ebertin

Attorney for Plaintiff
SANDISK CORPORATION