CHUCK P. EBERTIN (SBN 161374)
   cebertin@velaw.com
VINSON & ELKINS LLP
1841 Page Mill Road, Suite 200-B
Palo Alto, CA  94304
Tel:  (650) 687-8200
Fax: (650) 618-1970

CHRISTOPHER V. RYAN (*pro hac vice*)
   cryan@velaw.com
JANICE L. TA (*pro hac vice*)
   jta@velaw.com
VINSON & ELKINS LLP
The Terrace 7
2801 Via Fortuna, Suite 100
Austin, TX  78746
Tel: (512) 542-8400 / Fax: (512) 542-8612

DAVID J. TOBIN (*pro hac vice*)
   dtobin@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, TX  75201
Tel:  (214) 220-7949 / Fax (214) 999-7949

Attorneys for Plaintiff and
Counterclaim Defendant
SANDISK CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br><br>       Plaintiff and Counterclaim Defendant,<br><br>  vs.<br><br>ROUND ROCK RESEARCH LLC,<br><br>       Defendant and Counterclaim Plaintiff. | Case No.  3:11-cv-05243-RS<br><br>**SANDISK'S OPPOSITION TO ROUND ROCK'S MOTION FOR SUMMARY JUDGMENT ON SANDISK'S PATENT EXHAUSTION / FIRST SALE, EQUITABLE ESTOPPEL, AND ACTUAL OR IMPLIED LICENSE DEFENSES**<br><br>Date: April 18, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 3<br>Judge: Hon. Richard Seeborg |

# REDACTED

**SanDisk Opp. to RR's MSJ on SanDisk**
**Affirmative Defense Nos. 12, 14-16**
**Highly Confidential – Attorneys Eyes Only**

**Case No. 11-cv-05243 RS**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  ROUND ROCK OFFERED NO EVIDENCE TO SUPPORT ITS MOTION ON
     SANDISK'S DECLARATORY JUDGMENT CAUSE OF ACTION NOS. 4-7 AND
     9-12 REQUESTING A DECLARATION OF "NON-INFRINGEMENT". ........................... 2

III. SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S FIRST SALE/PATENT
     EXHAUSTION DEFENSE ............................................................................ 3

     A.  Factual Background for SanDisk's Patent Exhaustion Defense .................................. 4

         1.  The Micron-Toshiba License Agreement ████████████████
             ████████████████████ ........................ 4

         2.  SanDisk Purchases Flash Memory Products from ████████
             ████████████████████, Thereby
             Exhausting Round Rock's Patent Rights. ........................................................ 5

     B.  Legal Standard for Summary Judgment ................................................................ 6

     C.  Unrestricted Foreign Sales ████████████████████████
         ████████████ Exhaust Round Rock's Patent Rights When They
         Substantially Embody Round Rock's Patents .................................................... 7

     D.  Summary Judgment of No Exhaustion Should Be Rejected as to the '334,
         '791, '345, '586, and '053 Patents Because There Is Ample Evidence that the
         Claimed Inventions Are Substantially Embodied in the Memory Chips
         ████████████████████. ........................ 11

         1.  Sales of Memory Chips ████████████████
             Exhaust the Asserted '334 Patent Claim. ........................................................ 13

         2.  Sales of Memory Chips ████████████████
             Exhaust the Asserted '791 Patent Claims. ...................................................... 14

         3.  Sales of Memory Chips ████████████████
             Exhaust the Asserted '345 Patent Claims. ...................................................... 16

         4.  Sales of Memory Chips ████████████████
             Exhaust the Asserted '586 Patent Claim. ........................................................ 19

         5.  Sales of Memory Chips ████████████████
             Exhaust the Asserted '053 Patent Claim. ........................................................ 21

     E.  Under Federal Circuit and Northern District of California Precedent, the
         License ████████████████ Is an Instance of an "Authorized Initial Sale"
         for Purposes of Patent Exhaustion. .................................................................. 22

IV.  SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S ACTUAL OR IMPLIED
     LICENSE DEFENSE .................................................................................. 22

SanDisk Opp. to RR's MSJ on SanDisk
Affirmative Defense Nos. 12, 14-16                    i                    Case No. 11-cv-05243 RS
Highly Confidential – Attorneys Eyes Only

V.      SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S EQUITABLE ESTOPPEL
        DEFENSE AS TO THE '344 AND '760 PATENTS.............................................................. 24

VI.     CONCLUSION.................................................................................................................... 26

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                        <u>**Page(s)**</u>

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992)...................................................................................... 24, 25

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   692 F.3d 1301 (Fed. Cir. 2012)...................................................................................... 21, 22

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961)....................................................................................................... 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ....................................................................................................... 7

*Cyrix Corp. v. Intel Corp.*,
   77 F.3d 1381 (Fed. Cir. 1996).......................................................................................... 22

*Excelstor Tech., Inc. v. Papst Licensing GmbH & Co. KG*,
   541 F.3d 1373 (Fed. Cir. 2008)........................................................................................ 7

*Fuji Photo Film Co., Ltd. v. Benun*,
   463 F.3d 1252 (Fed. Cir. 2006)........................................................................................ 8

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*,
   394 F.3d 1368 (Fed. Cir. 2005)........................................................................................ 10

*Fujifilm Corp. v. Benun*,
   605 F.3d 1366 (Fed. Cir. 2010)........................................................................................ 8

*Intel Corp. v. Broadcom Corp.*,
   173 F. Supp. 2d 201 (D. Del. 2001).................................................................................. 23

*Jazz Photo Corp. v. ITC*,
   264 F.3d 1094 (Fed. Cir. 2001)................................................................................ 8, 9, 10, 11

*Jazz Photo Corp. v. United States*,
   353 F. Supp. 2d 1327 (Ct. Int'l Trade 2004) .................................................................... 8

*Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*,
   690 F. Supp. 1339 (S.D.N.Y. 1988)................................................................................. 10

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. ___, No. 11-697 (March 19, 2013) .................................................................... 7, 10

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
   453 F.3d 1364 (Fed. Cir. 2006)........................................................................................ 21

*LG Elecs., Inc. v. Hitachi Ltd.*,
   655 F. Supp. 2d 1036 (N.D. Cal. 2009) ..................................................................... *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ....................................................................................................... 7

*Medtronic Inc. v. Boston Scientific Corp.*,
   695 F.3d 1266 (Fed. Cir. 2012)................................................................................ 3

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   2010 U.S. Dist. LEXIS 13016 (N.D. Cal. Feb. 16, 2010) ........................................ 3

*Multimedia Patent Trust v. Apple, Inc.*
   No. 10-CV-2618-H (KSC), 2012 WL 6863471 (S.D. Cal. Nov. 9, 2012) ................... 9, 10

*Ninestar Tech. Co., Ltd. V. Int'l Trade Comm'n*,
   667 F.3d 1373 (Fed. Cir. 2012), *petition for cert. filed*,
   81 U.S.L.W. 3277 (U.S. Nov. 2, 1012) (No. 120552) ........................................ 3, 8, 9, 10

*Princo Corp. v. ITC*,
   616 F.3d 1318 (Fed. Cir. 2010)................................................................................ 7

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008)................................................................................ 7, 13, 15, 21

*Sanofi, S.A. v. Med-Tech Veterinarian Prods., Inc.*,
   565 F. Supp. 931 (D.N.J. 1983) ................................................................................ 10

*STMicroelectronics, Inc. v. SanDisk Corporation*,
   No. 4:05CV45, 2007 WL 951655 (E.D. Tex. Mar. 27, 2007)................................ 6, 10

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008)................................................................................ 2

*Tessera, Inc. v. ITC*,
   646 F.3d 1357 (Fed. Cir. 2011)................................................................................ 9

*Thorn EMI N. Am. Inc. v. Hyundai Elec. Indus. Co., Ltd.*,
   No. 94-332-RRM, 1996 U.S. Dist. LEXIS 21170 (D. Del. July 12, 1996) ................... 22

*United States v. Masonite Corp.*,
   316 U.S. 265 (1942)................................................................................ 7, 21

*United States v. Univis Lens Co.*,
   316 U.S. 241 (1942)................................................................................ 13, 16, 21

**Rules**

Fed. R. Civ. P. 56 ................................................................................ 6

# TABLE OF CONVENTIONS

| | |
|---|---|
| **"Bell Decl."** | Declaration of Kenneth Bell in Support of SanDisk's Opposition to Round Rock's Summary Judgment Motion Regarding SanDisk's Affirmative Defenses, executed March 20, 2013 |
| **"Ebertin Decl."** | Declaration of Chuck Ebertin in Support of SanDisk's Opposition to Round Rock's Motion for Summary Judgment on Certain SanDisk Affirmative Defenses, executed March 22, 2013 |
| **"Micron"** | Micron Technology, Inc., prior owner of the patents-in-suit |
| **"Micron-Toshiba License"** | ███████████████████████████████████████ ███████████████████████ (Ebertin Decl., Ex. 24) |
| **"Mofidi Decl."** | Declaration of Mehrdad Mofidi in Support of Sandisk Corporation's Opposition to Round Rock's Motion for Summary Judgment on Sandisk's Patent Exhaustion/First Sale, Equitable Estoppel, And Actual Or Implied License Claims and Affirmative Defenses, executed March 22, 2013 |
| **"SanDisk"** | Plaintiff SanDisk Corporation |
| **"Round Rock"** | Defendant Round Rock Research, LLC |
| **"Toshiba Subsidiaries"** | Entities majority-owned by Toshiba Corporation, including Toshiba/SanDisk joint ventures such as Flash Partners, Ltd., Flash Alliance, Ltd., and Flash Forward, Ltd. |
| **"RR-SJ Mot."** | Round Rock's Motion for Summary Judgment on SanDisk's Patent Exhaustion/First Sale, Equitable Estoppel, and Actual or Implied License Claims and Affirmative Defenses (Dkt. No. 123) |
| **"Waltze Decl."** | Declaration of Todd Waltze in Support of SanDisk's Opposition to Round Rock's Motion for Summary Judgment on Certain SanDisk Affirmative Defenses, executed March 20, 2013 |

## I.      INTRODUCTION

Round Rock seeks summary judgment on two different aspects of this case:  certain SanDisk causes of action and certain SanDisk affirmative defenses.  First, Round Rock misguidedly argues that certain of SanDisk's declaratory judgment causes of action for non-infringement (cause of action nos. 4-7 and 9-12) should be decided in Round Rock's favor because SanDisk has allegedly failed to come forward with evidence of non-infringement.  Round Rock bears the burden of establishing infringement and came forward with absolutely no evidence to support its motion. Thus, Round Rock's motion as to those causes of action should be rejected outright.

Next, Round Rock asks the Court to find that there is no evidence supporting SanDisk's patent exhaustion defense with regard to certain patents-in-suit,[1] SanDisk's license/implied license defense as to those patents-in-suit, and SanDisk's equitable estoppel defense as applied to two of the patents-in-suit.  Round Rock's assertion is without merit as SanDisk's defenses are well supported legally and factually.

With respect to SanDisk's first sale/patent exhaustion defense (affirmative defenses 15 & 16), Round Rock is well aware that the patents asserted in this action are ████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████ Substantial evidence exists that flash memory chips used in the accused products (1) substantially embody the asserted claims of the relevant patents-in-suit, and (2) were sold to SanDisk ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████. SanDisk's purchases ███████████████████████ exhaust Round Rock's patent rights.

Similarly, ample evidence exists that SanDisk sells a substantial portion of the accused products outside of the United States to existing licensees of Round Rock, such as Apple, HTC, Samsung, Nokia and others.  Those SanDisk customers ████████████████████████████

---

[1]   The relevant patents-in-suit include U.S. Patent Nos. 5,682,345 ("the '345 patent"), 6,272,586 ("the '586 patent"), 6,570,791 ("the '791 patent"), 7,483,334 ("the '334 patent"), 5,783,282 ("the '282 patent"), 5,286,344 ("the '344 patent"), 6,015,760 ("the '760 patent"), and 6,845,053 ("the '053 patent").  [*See* Second Amended Complaint at ¶ 1 (Dkt. No. 76).]  Round Rock has dismissed its claims regarding three other patents with prejudice.  [*See* Dkt. Nos. 103 and 115.]

1  ███████████████████████████  Importation and sale by those SanDisk customers

2  ████████████████████  (affirmative defense 14).

3       Finally, with regard to equitable estoppel (affirmative defense 12), substantial evidence exists

4  that Round Rock and Micron unreasonably and prejudicially delayed for over nine years in bringing

5  suit against SanDisk for alleged infringement of the '344 and '760 patents after Micron dismissed a

6  previous suit against SanDisk for alleged infringement regarding the same patents in December

7  2002.  [*See* Ebertin Decl., Ex. 25 (2002 Complaint for Declaratory Relief); *see also* Dkt. No. 39-3

8  (SanDisk/Micron Settlement Agreement).]  In view of the evidence submitted herein, a fact finder

9  could readily find in SanDisk's favor regarding its exhaustion, license and estoppel defenses.

10  Accordingly, Round Rock's motion for summary judgment must be denied.

11  **II.  ROUND ROCK OFFERED NO EVIDENCE TO SUPPORT ITS MOTION ON**
    **SANDISK'S DECLARATORY JUDGMENT CAUSE OF ACTION NOS. 4-7 AND**
12  **9-12 REQUESTING A DECLARATION OF "NON-INFRINGEMENT".**

13       Round Rock has requested summary judgment as to SanDisk's declaratory judgment cause of

14  action nos. 4-7 and 9-12 on the ground that the exhaustion/first sale doctrine does not apply.  [RR-SJ

15  Mot. at 2 & 6.]  However, SanDisk did not seek a declaratory judgment of exhaustion or license.  To the

16  contrary, SanDisk's declaratory judgment cause of action nos. 4-7 and 9-12 seek a declaratory judgment

17  of "non-infringement."  [Dkt. No. 76 (Second Amended Complaint at ¶¶ 53-80, 88-116).]  Indeed, the

18  relief that SanDisk specifically asked the Court to issue was a declaration of non-infringement.  [*Id.*

19  (Second Amended Complaint at Prayer for Relief ¶ A) ("SanDisk prays that this Court:  A.  Issue a

20  declaration that SanDisk's flash memory products have not infringed and do not infringe, either

21  directly or indirectly, any valid claim of the '345 patent . . .").]  SanDisk merely pled exhaustion as

22  an exemplary ground upon which a declaration of non-infringement could be entered.  [*See, e.g., id.*

23  (Second Amended Complaint at ¶¶ 57, 59) ("SanDisk contends that it is not required to license the '345

24  patent from Round Rock because, ***among other reasons***, the claims of the '345 patent are

25  exhausted . . ."; "An actual and justiciable ***controversy exists*** . . . as to ***whether the claims of the '345***

26  ***patent are infringed***") (emphasis supplied).]

27       It is undeniable that Round Rock bears the burden of production to establish infringement.  *See*

28  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-29 (Fed. Cir. 2008) (holding that the patent

1   holder bears the initial burden of production to present evidence of infringement).  As explained by the

2   Federal Circuit, it is "well settled that a patentee who files a complaint or **counterclaim** alleging patent

3   infringement bears the burden of proving that infringement."  *Medtronic Inc. v. Boston Scientific Corp.*,

4   695 F.3d 1266, 1272 (Fed. Cir. 2012) (emphasis supplied).  This only changes in the rare circumstance

5   where a patentee is contractually precluded from filing infringement counterclaims against the

6   declaratory judgment plaintiff.  *Id.* at 1274.  There is no contractual preclusion here, as Round Rock

7   actually filed twelve counterclaims for infringement against SanDisk.  [*See* Dkt. No. 90 (Round Rock's

8   Answer and Counterclaims at ¶¶ 139-274).]  Thus, unlike the patentee in Medtronic, Round Rock is

9   clearly seeking the aid of this Court in pursuing its allegations of infringement and therefore bears the

10  burden of production on infringement.

11       Accordingly, as Round Rock bears the burden of proof on the issue of infringement at trial, it

12  must make a prima facie showing in support of its position in its moving papers.  *Monolithic Power Sys.,*

13  *Inc. v. O2 Micro Int'l Ltd.*, 2010 U.S. Dist. LEXIS 13016 at *17-18 (N.D. Cal. Feb. 16, 2010).  Round

14  Rock submitted no evidence of infringement though.  Thus, SanDisk, as the non-moving party, "is under

15  no obligation to offer any evidence in support of its opposition."  *Id.*

16       Notwithstanding Round Rock's failure to meet its burden of production on infringement, as set

17  forth below, SanDisk has come forward with more than sufficient evidence to support its declaratory

18  relief causes of action for non-infringement based upon its affirmative defenses of patent exhaustion and

19  license.  Accordingly, Round Rock's motion for summary judgment on SanDisk's cause of action nos.

20  4-7 and 9-12 for declaratory judgment of non-infringement must be denied.

21  **III.   SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S FIRST SALE/PATENT**
       **EXHAUSTION DEFENSE**
22

23       SanDisk's patent first sale/patent exhaustion defense is both legally and factually supported

24  for the following reasons: (1) this Court has held that a foreign sale by a licensee ███████████

25  ███████████ exhausts patent rights in the United States—the *Jazz Photo* and *Ninestar* line of cases

26  cited by Round Rock are not applicable where there is ██████████████████; (2) substantial

27  evidence exists that the accused products use memory chips purchased by SanDisk ██████████

28  ████████████████ that substantially embody the asserted claims of the '334, '791, '345, '586, and

1    '053 patents[2]; and (3) the license from ██████████ is an "initial authorized sale" for purposes

2    of patent exhaustion.

3         **A.    Factual Background for SanDisk's Patent Exhaustion Defense**

4              ***1.    The Micron-Toshiba License Agreement*** ████████████████

5

6         Micron was the original owner of all the patents-in-suit.   In 2009, Micron played an

7    instrumental role in creating Round Rock, a non-practicing entity to which Micron eventually sold

8    and transferred over 4,200 patents.  [*See* Ebertin Decl., Ex. 26 (Patent Sale and Transfer Agreement

9    (████████).]  Rather than using these patents to manufacture or market products, Round Rock

10   seeks licensing agreements or pursues litigation against parties like SanDisk who do develop and sell

11   such products.

12        Prior to Micron transferring the patents-in-suit to Round Rock, ████████████

13   ████████████████████████████████████████████████████:

14   ███████████████████████████████████

15   ███████████████████████████████████

16   ███████████████████████████████.

17

18   [*See* Ebertin Decl., Ex. 24 (████████████████)  (emphases added).]   The term

19   ████████████████████████████████  [*Id.* (████████████████

20   ██████]  The license encompasses products and methods ████████████████

21   ████████

22   ███████████████████████████████████

23   ███████████████████████████████████

24   ███████████████████████████████. . .

25

26   <hr>
     [2]  Round Rock has not asserted in its infringement contentions that memory chips ██████████

27   ████████████ infringe the '282, '344, or '760 patents.  However, SanDisk's
     first sale/exhaustion defense also applies to those patents because the process steps recited in the

28   asserted claims of those patents would be performed (if performed at all) ████████████.

1    [*Id.* ████████████████████████.] ████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    [*Id.* ████████████████████████.] ████████████████████

5    ████████████████████████████ [*Id.* ████████████████] Thus,

6    pursuant to ████████████████████████████████████████

7    ████████████████████████████████ [*Id.*] Round Rock admits

8    that all of the patents-in-suit have "effective filing dates" ████████████████

9    ████████████████████████████ [Ebertin Decl., Ex. 27 (Round Rock's

10   Amended Infringement Contentions).] Therefore, any products manufactured by, or methods used

11   by, ████████████████████████████ under the patents-in-suit ████████████

12   ████████████

            **2.      *SanDisk Purchases Flash Memory Products from* ████████████████
13
            ████████████████ *Thereby Exhausting Round*
14          *Rock's Patent Rights.*

15          As noted above, ████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   [Ebertin Decl., Ex. 24 ████████████████] From 2004 to 2011, Toshiba and

19   SanDisk entered into three joint ventures—Flash Partners Ltd. ("Flash Partners"), Flash Alliance,

20   Ltd. ("Flash Alliance"), and Flash Forward, Ltd. ("Flash Forward")—to import, export, sell and

21   manufacture or cause to be manufactured electronic components at various foundries in Japan.[3]

22   Toshiba Corporation owns 50.1% and SanDisk owns 49.9% of each joint venture.[4] Because Toshiba

23   _____

24   [3]   *See* Waltze Decl., Exs. A-F [Flash Partners Master Agreement (Sept. 10, 2004); Operating
     Agreement of Flash Partners Ltd.; Flash Alliance Master Agreement (July 7, 2006); Operating
25   Agreement of Flash Alliance, Ltd. (July 7, 2006); Flash Forward Master Agreement (July 13, 2010);
     Operating Agreement of Flash Forward, Ltd. (Mar. 1, 2011)].

26   [4]   *See* Waltze Decl., Ex. B (Flash Partners Operating Agreement at 1) ("SanDisk has acquired . . .
     49.9% of all issued and outstanding Units; Whereas, Toshiba holds the remaining . . . 50.1% of all
27   issued and outstanding Units"), Ex. D (Flash Alliance Operating Agreement at 1) ("SanDisk has
     acquired . . . 49.9% of all issued and outstanding Shares; Whereas, Toshiba holds the remaining . . .
28   50.1% of all issued and outstanding Shares"), and Ex. F (Flash Forward Operating Agreement at 1)

---

1    owns a majority share in Flash Partners, Flash Alliance, and Flash Forward, each of these joint

2    ventures ████████████████████████████████████████████████████.⁵

3    Thus, there is no dispute here that the ████████████████

4    ████████████ Flash Partners, Flash Alliance, and Flash Forward ████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████████ [*Id.* ████████████████████████.]

8         The three Toshiba Subsidiaries (Flash Partners, Flash Alliance, Flash Forward) sell flash

9    memory chips to SanDisk, including flash memory chips that are used in the accused products.  [Bell

10   Decl. at ¶¶ 3-8.]  These Toshiba Subsidiaries ████████████████████████████████

11   ████████████████████████████████  Nonetheless, Round Rock's infringement

12   contentions implicate these ████████████████ in the accused SanDisk's products.  [Ebertin

13   Decl., Exs. 28-32 (Round Rock's Infringement Contentions).]  However, since these memory chips

14   are acquired ████████████████████ their ████████████████ operate to exhaust

15   Round Rock's patent rights.

16   **B.    Legal Standard for Summary Judgment**

17        Summary judgment is properly denied when, viewing the evidence most favorably to the non-

18   moving party, the movant is not clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56;

19

---

20   ("SanDisk has acquired . . . 49.9% of all outstanding membership interests . . . Toshiba holds the
     remaining 50.1% of outstanding Interests."); *see also* Ebertin Decl., Ex. 33 (SanDisk 2012 10-K at

21   p. F-46) ("Flash Ventures, the Company's business ventures with Toshiba, consists of three separate
     legal entities: Flash Partners Ltd., Flash Alliance Ltd. and Flash Forward Ltd. The Company has a

22   49.9% ownership interest in each of these entities and Toshiba owns 50.1% of each of these entities.
     Through these ventures, the Company and Toshiba have collaborated in the development and

23   manufacture of NAND flash memory products which are manufactured by Toshiba at its wafer
     fabrication facility located in Yokkaichi, Japan").

24
     ⁵  In fact, in *STMicroelectronics, Inc. v. SanDisk Corporation*, No. 4:05CV45, 2007 WL 951655 at

25   *3 (E.D. Tex. Mar. 27, 2007), the court specifically analyzed the Flash Partners Operating
     Agreement between Toshiba and SanDisk and found that Toshiba was the majority owner of the

26   joint venture.  The joint venture was thus a licensed Toshiba Subsidiary under the terms of the
     license agreement at issue—████████████████████████████████████████

27   ████████████████.  The court went on to grant summary judgment on SanDisk's patent exhaustion
     defense ████████████████████████████ because it found that the license grant

28   was "an unconditional ████████████████ with a few exceptions.  *Id.* at *2-3 (emphasis added).

---

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must regard as true SanDisk's evidence, as it is supported by affidavits and other evidentiary material.  *Celotex*, 477 U.S. at 324.  Moreover, the Court must draw all reasonable inferences in favor of SanDisk—the party against whom summary judgment is sought.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

### C.   Unrestricted Foreign Sales ██████████████████ ████████████████ Exhaust Round Rock's Patent Rights When They Substantially Embody Round Rock's Patents.

As explained a few days ago by the Supreme Court, the exhaustion/first sale "doctrine is a common-law doctrine with an impeccable historic pedigree" that "makes no geographical distinctions."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. ___, No. 11-697, slip op. at 17-18 (March 19, 2013) (holding that a licensee's authorized foreign manufacture and authorized foreign sale of a book covered by a United States copyright exhausts the United States copyright as the foreign sale was "lawfully made under" the United States Copyright Act).  "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patents rights to that item."  *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008).  "The exhaustion doctrine prohibits patent holders from selling a patented article and then 'invoking patent law to control postsale use of that article.'"  *Excelstor Tech., Inc. v. Papst Licensing GmbH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008).  The exhaustion doctrine rests upon the theory that an unconditional sale of a product covered by a patent exhausts the patent holder's right to control use of that item thereafter because the patentee has bargained for and received the full value for the good.  *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc); *see also United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942) ("The test has been whether or not . . . it may fairly be said that the patentee has received his reward for the use of the article.").

In accordance with these principles, this Court has recognized that the foreign sale of a product that substantially embodies a United States patent triggers exhaustion where ████████ ████████████████████████████ license covering the United States patent.  For example, in *LG Elecs., Inc. v. Hitachi Ltd.*, 655 F. Supp. 2d 1036, 1047 (N.D. Cal. 2009), the Northern District of California held that *Quanta's* exhaustion analysis "is triggered by the authorized sale of an article that substantially embodies a patent" and "applies to authorized foreign sales as well as authorized

1    sales in the United States." This Court in *Hitachi* held that because Intel's overseas sales to Hitachi

2    were ███████████████████████████████████████ the sales "fall squarely within

3    the ambit of *Quanta*." *Id.* at 1044. This Court further explained that:

> Drawing . . . a distinction between authorized domestic sales and authorized foreign
> sales would negate the Supreme Court's stated intent in *Quanta* to eliminate the
> possibility of a patent holder doing an "end-run" around the exhaustion doctrine by
> authorizing a sale, thereby reaping the benefit of its patent, then suing a downstream
> purchaser for patent infringement.

7    *Id.* at 1046.

8        As set forth in detail above, ████████████████████████████████████

9    ████████████████████████████████████████████████ Those Toshiba

10   Subsidiaries make unrestricted sales of flash memory chips to SanDisk. [Bell Decl. at ¶¶ 3-8.]

11   SanDisk uses these flash memory chips to provide the flash memory in the SanDisk products

12   accused of infringing the patents-in-suit. [*Id.* at ¶¶ 3-13; Mofidi Decl. at ¶ 2.] As discussed below,

13   the flash memory chips ██████████████████████████████ fully or substantially

14   embody the asserted claims of the '334, '791, '345, '586, and '053 patents. Under the principles of

15   patent exhaustion, ██████████████████████████ exhaust all of Round Rock's rights in the

16   asserted claims of the patents at issue.

17       Nonetheless, citing the *Jazz Photo*[6] and *Ninestar* line of cases, Round Rock contends that the

18   exhaustion doctrine does not apply to products purchased by SanDisk overseas that are imported into

19   and/or resold in the United States. Round Rock's reliance on *Jazz Photo* and *Ninestar* is misplaced

20   because neither case ██████████████████████. Both *Jazz Photo* and *Ninestar* concerned the

21   question of whether the repair doctrine applied to defendants who imported into the United States

22   refurbished products that originally had been sold overseas. Importantly, neither case involved a

23   ██████████████████. Moreover, in *Jazz Photo*, the sales of the original articles were

24   accompanied by restrictions limiting the products to a single use. *See Jazz Photo Corp. v. United*

25   *States*, 353 F. Supp. 2d 1327, 1333-34 (Ct. Int'l Trade 2004).

---

27   [6] The *Jazz Photo* line of cases includes *Jazz Photo Corp. v. ITC*, 264 F.3d 1094 (Fed. Cir. 2001);
     *Fuji Photo Film Co., Ltd. v. Benun*, 463 F.3d 1252 (Fed. Cir. 2006); and *Fujifilm Corp. v. Benun*,
28   605 F.3d 1366 (Fed. Cir. 2010).

This Court has recognized that, to the extent *Jazz Photo* and *Fuji Photo Film* were interpreted to limit the exhaustion doctrine to domestic sales, they were inconsistent with the Supreme Court's decision in *Quanta* and concluded that "*Quanta's* holding—that exhaustion is triggered by the authorized sale of an article that substantially embodies a patent—applies to authorized foreign sales as well as authorized sales in the United States." *LG v. Hitachi*, 655 F. Supp. 2d at 1047.  Contrary this Court's reasoning, Round Rock's application of *Jazz Photo* would impermissibly allow a patentee to obtain multiple rewards on the same patent claim for sales of the same product—once at the time of the first sale abroad, and again when the product is imported into the United States. Here, ████████████████████████████████████████████████████████████████

████████████████████████████████████ and thereby unquestionably received its reward on the asserted claims of the relevant patents-in-suit for sales of licensed products.   Under the binding  precedent  set  forth  in  *LG v. Hitachi*, ████████████████████████████

████████████████████████████████████████████████ exhaust Round Rock's rights under the asserted claims of the patents-in-suit.

In *Multimedia Patent Trust v. Apple, Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 6863471 at *5 (S.D. Cal. Nov. 9, 2012) ("*MPT*"), another court likewise distinguished *Fuji* and *Ninestar*, explaining that ████████████████████████████████████████████████████████████████████

████████████████████████████████████ *See Jazz Photo*, 264 F.3d at 1105; *Ninestar Tech. Co., Ltd. V. Int'l Trade Comm'n*, 667 F.3d 1373, 1376-77 (Fed. Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3277 (U.S. Nov. 2, 1012) (No. 120552).  That court therefore held that the case was governed by *Tessera, Inc. v. ITC*, 646 F.3d 1357 (Fed. Cir. 2011), in which patent exhaustion was triggered by the "unconditional grant of a license" even though the authorized sales were made overseas.  *See id.* at 1369-70.  The court further explained its reasoning in a footnote:

> The [c]ourt declines to allow a patentee who has granted unconditional worldwide rights in a license and received royalties from that license to sue downstream customers of the licensee simply because the products traveled to another country. To allow an infringement lawsuit to proceed under those circumstances would be contrary to the rationale behind the exhaustion doctrine. . . . [T]he unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of that item thereafter because the patentee has bargained for and received the full value of the goods. MPT's interpretation of the exhaustion doctrine would also substantially hinder the rights of the licensee. Under MPT's view of exhaustion, an

overseas component manufacturer like Fujitsu would have to possess a distribution network that would allow it to import and sell its component parts in each country where its components might eventually be used and sold by its downstream customers. This would be the only way that the licensee could ensure that its downstream customers would not be later liable for patent infringement. This circumstance is contrary to the licensee's possession [of] an unconditional worldwide license to practice the patent.

*MPT* at *5 n.7.

Finally, in *STMicroelectronics*, the court granted summary judgment on SanDisk's patent exhaustion defense— ███████████████████████████████ ███████████████████—holding that *Jazz Photo* did not stand for the proposition that only sales within the United States can trigger the exhaustion doctrine when there is ██████ ████████████████████████████████ Because the patentee there had given Toshiba a license in "all countries of the world," and "[a]ll countries in the world includes the United States of America," the court concluded that Toshiba and its subsidiaries had the "right to sale (sic) any of the licensed products under the United States Patents. . . in the United States or anywhere in the world." *STMicroelectronics*, 2007 WL 951655 at *3; *see also Kabushiki Kaisha Hattori Seiko v. Refac Tech. Dev. Corp.*, 690 F. Supp. 1339, 1342 (S.D.N.Y. 1988) (holding that patent exhaustion "applies to an authorized first sale abroad by a patentee or licensee who also has the right to sell in the United States"); *Sanofi, S.A. v. Med-Tech Veterinarian Prods., Inc.*, 565 F. Supp. 931, 940 (D.N.J. 1983) (finding exhaustion "where the sale is one which the seller had the authority to make in this country"). Thus, whether the authorized initial sale ███████████████████████ ██████ was made outside the United States is irrelevant because the authorized initial sale was expressly made ███████████████████████, and therefore "under the United States patent[s]." *Cf. Kirtsaeng*, slip op. at 3 ("lawfully made under this title" "applies to copies of a copyrighted work lawfully made abroad").

The *LG v. Hitachi*, *MPT*, and *STMicroelectronics* decisions are not inconsistent with the *Jazz Photo* or *Ninestar* cases. Unlike those cases, neither *Jazz Photo* nor *Ninestar* involved ████████████ ███████████████████████████. *See generally Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368 (Fed. Cir. 2005); *Jazz Photo*, 264 F.3d 1094 (Fed. Cir. 2001). Moreover, as this court noted in *LG v. Hitachi*, the primary issue in the *Jazz Photo* cases and *Ninestar* was the

1    issue of permissible repair, not patent exhaustion per se.  *See LG v. Hitachi*, 655 F. Supp. 2d at 1045.

2    In *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), Jazz Photo

3    had imported refurbished single-use cameras covered by patents owned by Fuji Photo Film.  The

4    question was whether the refurbishment was a permissible repair or an impermissible reconstruction.

5    This dichotomy implicates the doctrine of patent exhaustion because it affects the postsale rights of

6    subsequent purchasers of a licensed product.  If a product is lawfully sold, then the purchaser and all

7    subsequent purchasers possess authority to repair it.  *See Aro Mfg. Co. v. Convertible Top*

8    *Replacement Co.*, 365 U.S. 336, 346 (1961).  Reconstructions, however, constitute a second copy

9    that can exceed the rights that accompany an initial sale and are not allowed under U.S. patent law.

10   *See Aro Mfg.*, 365 U.S. at 342-343.  To resolve the issue of permissible repair, neither of the courts

11   in *Jazz Photo* or *Ninestar* had to directly address the central issue here – what exactly constitutes an

12   *authorized* sale under *Quanta*.  Not only was ████████████████████ in those cases, there

13   were no licenses to consider at all.  Thus, neither *Jazz Photo* nor *Ninestar* addressed the question of

14   whether ████████████████████ for a United States patent is a sale "under the

15   United States patent."  In contrast, in *LG v. Hitachi*, *MPT*, and *STMicroelectronics*, specific license

16   agreements ████████████████.  Because ████████████████████

17   ████████████████ the authorized sales ████████████████

18   ████████████████

19            **D.      Summary Judgment of No Exhaustion Should Be Rejected as to the '334, '791,**

20            **'345, '586, and '053 Patents Because There Is Ample Evidence that the Claimed**
         **Inventions Are Substantially Embodied in the Memory Chips ████████████**

21

22           All of the asserted claims of the '334, '791, '345, '586, and '053 patents are directed to either

23   specific features of a memory chip or specific features of a memory chip in combination with a

24   general purpose processor or controller.  The evidence submitted herein demonstrates that ██

25   ████████████████ that are used in the accused SanDisk products possess, or are alleged

26   by Round Rock to possess, all of the claimed features of these five patents.  Thus, as is explained

27   below, Round Rock's rights to enforce the asserted claims of these patents against SanDisk ██

28

█████████████████████████████████████████████████████████████

███████████████████

The accused SanDisk products contain both flash memory chips and a separate memory controller chip.  The memory chips contain arrays of memory cells used for data storage.  The memory chips also contain interface and control circuitry that implement different modes of operation of the memory and control access to the arrays.  As with any memory, the flash memory chips in the accused products must be coupled to a controller or processor that uses the flash memory.  [*See* Mofidi Decl. at ¶ 12.]  The controller or processor need not reside in the same package or assembly as the flash memory chips, but to use the memory, a system must necessarily have a controller or processor that can send basic commands (e.g., read and write), addresses, and data to the memory, and can receive data from the memory.  [*Id.*]  In the case of the accused products, the flash memory chips are coupled to a controller that, among other things, allows the flash memory to be accessed by a computer system through, for example, a Universal Serial Bus ("USB") interface.  Controller chips may also perform additional functions to manage the memory system, though no such additional functions are recited in the asserted claims from the patents-in-suit.

Round Rock argues that there is no evidence that any of the memory chips █████████ ██████████████████████████████████████████████████████████ [RR-SJ Mot. at 9.]  To the contrary, as discussed below and in the declaration of SanDisk memory-design engineer Mehrdad Mofidi, ample evidence exists that ████████████████████████████ ██████████████████ substantially embody the asserted patent claims of the '334, '791, '345, '586, and '053 patents.  In addition, Round Rock alleges in its infringement contentions that various features found in the memory chips alone, or by combining the memory chips with a general purpose processor/controller, infringe certain claims.

That some of Round Rock's asserted claims recite combining flash memory chips having certain features with a generic processor does not alter the conclusion that ███████████████ ██████████████████ substantially embody the asserted claims.  As discussed above, use of flash memory, or any memory for that matter, requires a basic processor or controller that can perform at least certain basic functions.  Thus, the mere addition of a generic processor or controller in some of

1   the patent claims, absent requirements that the processor or controller perform any special or

2   inventive feature of the patent, renders such a processor or controller incidental to the function of the

3   memories. Under *Quanta*, ███████████████████████, therefore, substantially embody

4   the claims directed to the combination of the memory chips with a generic processor or controller.

5   *Quanta*, 553 U.S. at 618-19 (holding that the sale of an incomplete article exhausts patent rights to

6   both system and method claims where the only object of the sale of the article was to permit its

7   incorporation into a system that practiced the patent); *see also United States v. Univis Lens Co.*, 316

8   U.S. 241 (1942) (exhaustion occurs when the only reasonable and intended use of the products sold

9   is to complete the patented combination).

10      ***1.*** *Sales of Memory Chips* █████████████████████ *Exhaust*
            *the Asserted '334 Patent Claim.*
11

12      Round Rock asserts that various SanDisk products infringe claim 37 of the '334 patent.

13  Claim 37 is a method claim directed to certain operations performed in a memory chip. [*See* Dkt.

14  No. 61-11 ('334 patent).] Round Rock's rights as to the asserted claim of the '334 patent are

15  exhausted because, as Round Rock contends, the method steps of claim 37 are fully embodied ████

16  ██████████████████████████████████████.

17      Round Rock alleges that ████████████████████████████████

18  ████████████ infringe the '334 patent when used to perform the block erase operation described in the

19  ONFI[7] standard. [*See* Ebertin Decl., Ex. 28 (Round Rock's Preliminary '334 Infringement

20  Contentions).] More specifically, Round Rock alleges that █████████████████ in the accused

21  SanDisk products have data latches that temporarily store commands and addresses used to

22  implement the block erase operation. [*Id.*] The block erase operation is performed in the memories

23

24  _____

25  [7] For example, the ONFI specification that Round Rock relies on "defines a standardized NAND
    Flash device interface that provides the means for a system to be designed that supports a range of

26  NAND Flash devices without direct design pre-association." [*See* Ebertin Decl., Ex. 34 (Open
    NAND Flash Interface Specification, Revision 2.2, October 2009 at 1).] In other words, the

27  specification covers the interface to the NAND memory itself. Today, ONFI describes itself as an
    organization that defines component-level interfaces for NAND memory. [*Id.* at Ex. 35 (print out

28  from http://www.onfi.org/ last visited 3-22-13) ("We define standardized component-level interface
    specifications as well as connector and module form factor specifications for NAND Flash").]

1  ██████████████████████████████████████.  [*See* Mofidi Decl. at ¶¶ 2, 7.][8]  Similarly, the

2  latches used to store the commands and addresses used by the memory when performing the block

3  erase operation are found in the memory itself.  [*Id.*]  Because there is no dispute that the accused

4  operation solely takes place in the █████████████████████████████████████████████

5  ████████████, Round Rock's assertion that there is no evidence that █████████████████ fully

6  embody the asserted patent claim is without merit.  Moreover, Round Rock is bound by its

7  infringement contentions that the memory itself substantially embodies the functionality of the

8  asserted '334 patent claims and cannot now argue otherwise.  *See LG v. Hitachi*, 655 F. Supp 2d at

9  1042-44 (holding LGE could not contradict positions taken in its preliminary infringement

10  contentions to argue that Intel chips did not substantially embody the patent claims).  Because the

11  accused functionality resides entirely ██████████████████████████████████████████████

12  ████████████ and Round Rock contends that the memory itself fully embodies the only claim asserted

13  from the '334 patent, the ████████████████████████████████████████████████████

14  ████████ exhaust all of Round Rock's rights under the '334 patent.  Accordingly, Round Rock's

15  motion for summary judgment must be denied.

16           **2.**    *Sales of Memory Chips* ████████████████████████ *Exhaust*

17                     *the Asserted '791 Patent Claims.*

18         Round Rock's motion also fails with respect to the '791 patent because copious evidence

19  shows that ████████████████████████████████████████ fully or substantially

20  embody the asserted patent claims of the '791 patent.  The '791 patent is directed to a *memory* that

21  can send and receive data on both edges of a clock signal.  Indeed, the patent states that, "[t]he flash

22  *memory* provides a DDR interface that processes two data words per clock cycle."  [Dkt. No. 61-8

23  ('791 Patent at 4:1-2) (emphasis supplied).]  Round Rock accuses SanDisk products of infringing

24  _____

25  [8]  *See also* Ebertin Decl., Exs. 1 ██████████████████████████████ at pp. 7, 41), 3 ██████

26  ████████████████████████████████████████████ at pp. 6, 29),  9 ████████ at pp. 6, 25), 7

27  ████████████████████████████████████ at pp. 7, 33), 11 ██████████████ at pp. 5, 49), 12

28  ████████████████████████████████ at pp. 5, 50), 14 ████████ at pp. 4-2, 5-4).

four claims of the '791 patent.  [*See* Ebertin Decl., Ex. 29 (Round Rock's Preliminary '791 Infringement Contentions).]   Three of the claims (claims 1, 3 and 4) are directed to "a flash memory" including features relating to the sending and receiving of data on data connections on rising and falling edges of a clock signal.  [Dkt. No. 61-8 ('791 patent).]   The remaining asserted claim (claim 14) is directed to a "processing system comprising: [1] a processor; and [2] a double data rate flash memory coupled to the processor comprising" certain recited features (which similarly include features relating to the sending and receiving of data on data connections on rising and falling edges of a clock signal).  Claim 14 does not recite any limitations regarding the claimed "processor"—it is merely a general purpose processor.  Thus, the entirety of the purported inventive aspect of the asserted '791 patent claims lies in the flash memory itself.

Contrary to Round Rock's assertions, the implicated features of the invention are present ███ ████████████████████████████████████████████████ and thus the memory chips substantially embody the patent claims.  For example, ████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ [*See* Mofidi Decl. at ¶ 9.][9] ███████████████████████████████████████████████ ██████████████████████████████████████ [*Id.*]  Based on the evidence of these modes of operation ████████████████, a fact finder could certainly conclude that the memory chips themselves fully or substantially embody asserted claims 1, 3 and 4 of the '791 patent.  In addition, a fact finder could certainly conclude that ████████████████ ██████████████████ substantially embody claim 14 of the '791 patent because the recitation of a general purpose processor in claim 14 (something that a memory must be coupled to in order to be

_____

[9]  *See also* Ebertin Decl., Exs. 15 ████████████████████ at p. 20), 1 ███████████████████████████████ at pp. 44-45), 16 ██████████████████████████████████████████████ at pp. 6, 31–32, 52), 17 ██████████████ at p. 30); 18 █████████████████████████████ at p. 25); 19 ████████ at p. 25).

1    used [Mofidi Decl. at ¶ 12][10]) is merely incidental to the use of the claimed memory.  *Quanta*, 553

2    U.S. at 618-19 (holding that the sale of an article exhausts patent rights to system and method claims

3    using that article where the only object of the sale of the article was to permit its use with a system

4    or method that practiced the patent); *see also United States v. Univs Lens Co.*, 315 U.S. 241 (1942)

5    (exhaustion occurs when the only reasonable and intended use of the products sold is with the

6    patented combination).  Accordingly, Round Rock's motion must be denied.

7               **3.**     *Sales of Memory Chips* ███████████████████████ *Exhaust*
                        *the Asserted '345 Patent Claims.*
8

9            Round Rock's motion also fails with respect to the '345 patent because the memory chips

10   ████████████████████████████████ substantially embody the asserted claims of the '345

11   patent.  Claims 1 and 39 of the '345 patent are directed to a non-volatile data storage unit that

12   contains a volatile memory and a non-volatile memory.  Claim 24 is directed to a method of using

13   such a data storage unit.  [Dkt. No. 61-2 ('345 patent).]  None of the claims recites any structure or

14   step that lies outside the claimed non-volatile data storage unit.[11]  Thus, the entirety of each of the

15   asserted claims is directed to the data storage unit itself.

16   ██████████████████████████████ in all of the accused products are data storage units that

17   possess the features of the asserted claims, including the recited volatile and non-volatile memory

18   features.   Round Rock concedes in its infringement contentions that the non-volatile memory

19   features are present in the flash memory chips ███████████████████████████████.

20   [Ebertin Decl., Ex. 30 (Round Rock '345 Infringement Contentions at p. 5).]  The recited volatile

21   _____

22   [10]  *See, e.g.*, Ebertin Decl., Exs. 2 ████████████████████████████████████
     ███████████████████████ at pp. 47, 49), 6 ████████████████████████████████
23   ██████████████ at pp. 38, 40), 7 ████████████████████████████████████████
     ████ at  pp.  35,  37),  18 ████████████████████████████████████████████
24   ██████████████ at  p.  33),  19 ████████████████████████████████████████
     ██████████████████ at pp. 29, 33), 22 ██████████████████████████████████
     ████████████████████████████ at p. 232).

25

26   [11]  Claim 1 recites a program means, transfer means, recall means, and control means.  [Dkt. No. 61-
     2 ('345 patent).]  Though the parties have raised differing views as to (1) which transistors would
27   form the claimed program means and recall means, and as to (2) whether the control circuitry that
     makes up the control means was actually described in the patent, both parties posit claim
28   constructions that indicate that the these elements are connected to the flash memory cells and would
     therefore reside on the memory itself.

1   memory features also are present in the flash memory chips ████████████████████

2   ███████. Every flash memory chip ████████████████████████ includes a volatile

3   memory called a page register. [*See* Mofidi Decl. at ¶ 8.][12] This page register is a volatile memory

4   that is used as a buffer to store data that is read from or written to the flash memory array. [*Id.*] It is

5   undisputed that █████████████████████████████████████ stores data

6   in the on-chip volatile page register before storing it in the non-volatile memory, and that it retrieves

7   data from the non-volatile memory into the on-chip page register. Thus, the █████████████

8   ████ substantially embody the asserted '345 patent claims.

9            In an effort to evade the fact that █████████████████████████████

10   ██████, Round Rock ignores that the volatile memory features are found in every flash memory

11   chip and instead identifies volatile memory found in separate controller chips contained in the

12   accused products. [*See, e.g.*, Ebertin Decl., Ex. 30 (Round Rock '345 Infringement Contentions at

13   p. 12).] Whether a volatile memory also resides in the controllers used in the accused products is

14   irrelevant because the asserted claims do not require that the recited volatile memory features reside

15   outside of a flash memory chip and the undisputed fact remains that the volatile memory features of

16   the asserted claims are present ████████████████████   Because ████████████

17   ████████████ used in the accused products substantially embody the asserted claims, Round Rock's

18   rights to assert those claims against the accused products are exhausted, regardless of whether the

19   accused products include additional components that also embody some elements of those same

20   patent claims. Thus, a finder of fact could easily conclude that sales █████████████████

21   ██████████████████████████ exhaust Round Rock's rights in the asserted claims of the

22   '345 patent. Accordingly, Round Rock's motion for summary judgment must be denied.

23

24   _____
     [12]  *See also* Ebertin Decl., Exs. 1 ████████████████████████████████████

25   ████████████████████████████ at pp. 60, 62), 4 ████████████████████████████████

26   ██████████████████████████████████████████████████████████████████████ at
     pp. 60, 62), 8 ████████████████████████████████ at pp. 35, 38), 10

27   █████████████████████████████████ at pp. 40, 45), 11 █████████████████
     ████████████████ at pp. 36, 41), 13

28   ████████████████████████████████████ at pp. 3, 25, 27, 42), 14 █████████████
     ██████████████████ at pp. 5-1, 5-3).

**4.**    *Sales of Memory Chips* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Exhaust*
        *the Asserted '586 Patent Claim.*

Round Rock's motion fails as to the '586 patent—there is ample evidence that ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ include a mode of operation that substantially embodies asserted claim 30

for the '586 patent.  Claim 30 is directed to a method of controlling the operation of a memory

device/system[13] having an array of memory cells, wherein the memory device/system switches from

one operating mode to another operating mode and uses control parameters stored separate from the

array of memory cells to adjust the length of a communication data stream.  Other than reciting that

the control parameters are stored separate from the array of memory cells, asserted claim 30 does not

specify where the control parameters are stored or operated from.  The claim does not recite a

controller or processor, and does not state that the control parameters are stored off of the memory

chip.  Indeed, the patent specification indicates that the control parameters are *on* the same memory

chip as the array of memory cells.  [Dkt. No. 61-6 ('586 patent at Fig. 2, col. 2:23-25 & 2:33-35) ("A

memory system . . . is disclosed.  The system includes an array of memory cells . . .  The system

further includes a plurality of non-volatile data storage units, with the data storage units storing

control parameter data").]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮[15] [Mofidi Decl. at ¶¶ 10–11.] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[13]   Claim 30 uses the terms "memory device" and "memory system" interchangeably.  [Dkt.
No. 61-6.]

[14] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

[15] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   *See, e.g.*, Ebertin Decl., Exs. 18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ██████████████████████████████████ [Mofidi Decl. at ¶¶ 10–11.][16]  In

2   addition, ██████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ██████████[17]   Though the parties dispute whether the asserted patent claim is *limited* to a system

5   that varies the number of inputs and outputs, there is no dispute that such a system is implicated by

6   the claim language.  Thus, ███████████████████████████████████████████

7   ████████████████████████████████████ exhaust the asserted claim of the

8   '586 patent.

9       As in the case of the '345 patent, Round Rock ignores that all of the claimed features are

10  present ███████████████████████████████, instead asserting that some

11  claimed features are present in a separate controller chip.  As discussed above though, claim 30 does

12  not require that any of its elements reside on or be operated from a separate controller.  Indeed, the

13  '345 patent's specification expressly discloses and asserted claim 30 plainly encompasses having all

14  of the recited elements present in █████████████████.  Because the features of asserted

15  claim 30 are found ████████████████████████████, there is

16

17  _____

18  ████████████████████ at p. 85), 19 ████████████████████████
    ████████████████████ at pp. 18, 85), 20 █████████████████████
19  ████████████████████████████████ at p. 34), 23 ███████████████
    ████████████████████ at p. 28).

20  [16]  *See also* Ebertin Decl., Exs. 15 ███████████████████████████████

21  ████████ at pp. 68, 85, 210–16), 16 ████████████████████████████ 17

22  ████████ at pp. 80, 106, 239–45), 18 ████████████████████████████
    ████████████████████████ at pp. 85, 97, 181–86), 19 █████████████

23  ████████████████████████████ at pp. 85, 97, 174–79), 21 ███████████
    ████████████████████████████████████████████ at pp. 74, 123, 277–

24  82), 23 ████████████████████████████████████████ at pp. 28,
    77–79, 89, 109).

25  [17] █████████████████████████████████████████████████████████

26  ████████████████████████ *See, e.g.*, Ebertin Decl., Exs. 18 ████████

27  ████████████████ at p. 85), 19 ████████████████████████████████
    ████████████████████ at pp. 18, 85), 20 █████████████████████████

28  ████████████████████████████████ at p. 34), 23 ██████████████████
    ████████████████████ at p. 28).

1    sufficient evidence to find that the memory chips substantially embody the patent claim and

2    therefore exhaust Round Rock's rights.

3    **5.    *Sales of Memory Chips* ███████████████████████████ *Exhaust***
         ***the Asserted '053 Patent Claim.***
4

5    Finally, Round Rock's motion fails as to the '053 patent for the same reason as to the '586

6    patent—█████████████████████████████████.  Asserted claim 24 is directed

7    to "an electronic system" with two limitations:  "a processor that performs operational tasks of the

8    electronic system," and "a flash memory device" that comprises all of the purportedly inventive

9    features of the claim.  [Dkt. No. 90-12 ('053 patent).]  The claim requires that the flash memory have

10   two modes—a high data throughput mode, and a low power mode.  The claim also requires that the

11   flash memory device include a non-volatile memory array and a non-volatile memory location that

12   stores a mode control bit used to select the operating mode of the memory, and write circuitry that

13   varies the amount of data programmed into the array in a predetermined time.  Importantly, all of the

14   limitations of the claim, other than the recitation of a generic processor that performs operational

15   tasks, are required by the claim to be in the memory.

16   Although the claim expressly requires storing the mode control bit in the non-volatile

17   memory, Round Rock's infringement contention alleges that SanDisk products infringe because a

18   volatile memory recited in an industry standard stores a mode control bit.  [Ebertin Decl., Ex. 32

19   (Round Rock's '053 Infringement Contentions at p. 6).]  Round Rock's ill-conceived contentions

20   notwithstanding, the evidence shows that ████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████[18]  As for power consumption,

23   the evidence also shows that, ██████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████

25   ███████   [Mofidi Decl. at ¶ 10.]  Thus, the evidence shows that ████████████████████

26   substantially embody asserted claim 24 of the '053 patent, and that Round Rock's motion for

27   summary judgment must be denied.

---

28   [18]  *See* n.17 and n.15, supra.

E.     **Under Federal Circuit and Northern District of California Precedent, the License ███████████████████ Is an Instance of an "Authorized Initial Sale" for Purposes of Patent Exhaustion.**

██████████████████████████████ constitutes a sale in the United States ██████ ███████████ for patent exhaustion purposes. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1370 (Fed. Cir. 2006) (LGE's license to Intel constituted a sale for exhaustion purposes), *rev'd on other grounds*, *Quanta*, 533 U.S. 617 (2008); *see also LG v. Hitachi*, 655 F. Supp. 2d 1036 (N.D. Cal. 2009).  The rationale that a license itself operates as a "sale" to exhaust patent rights flows from the long-standing principle that a patentee that has licensed use of an article under a patent may not later impose other conditions or restrictions on the use of that article under the same patent.  *Id.*; *see also United States v. Masonite Corp.*, 316 U.S. at 278.  Patent exhaustion should also attach to the license itself because courts have applied the principles of patent exhaustion to limit patent holders from obtaining multiple rewards on the same patent claim for sales of the same article.  *See United States v. Univis Lens Co.*, 316 U.S. 241 (1942) ("Our decisions have uniformly recognized that the purpose of the patent law is fulfilled with respect to any particular article when the patentee has received his reward for the use of his invention by the sale of the article, and that once that purpose is realized the patent law affords no basis for restraining the use and enjoyment of the thing sold").  Thus, in addition to the arguments above, the Court should find that ██████████████████ ████ is an instance of "an authorized initial sale" with respect to the asserted claims of the relevant patents-in-suit.  *See LG v. Hitachi*, 655 F. Supp. 2d 1036 (N.D. Cal. 2009); *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364 (Fed. Cir. 2006).

IV.    **SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S ACTUAL OR IMPLIED LICENSE DEFENSE**

Round Rock incorrectly asks the Court to find there is no evidence that existing licenses bar any of its claims to induced or contributory infringement.  In this lawsuit, Round Rock has accused SanDisk of indirect infringement.  [*See* Dkt. No. 90 (Round Rock's Answers and Counterclaims to SanDisk's Second Amended Complaint at ¶¶ 142-46, 153-57, 165-70, 177-81, 188-92, 199-203, 210-14, 221-25, 232-36, 244-49, 256-60, 267-71).]  These allegations require Round Rock to prove that SanDisk's customers or other third parties infringe the patents.  *Akamai Techs., Inc. v. Limelight*

1    *Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012)(en banc) (the "principle, that there can be no

2    indirect infringement without direct infringement, is well settled"). The evidence shows that Round

3    Rock has granted licenses to the patents-in-suit to SanDisk customers, including companies such as

4    Nokia, Apple, Samsung, Sony, and HTC.[19] SanDisk sells accused products to these licensees

5    ████████████████. [*See, e.g.*, Ebertin Decl., Ex. 33 (2012 SanDisk 10-K at p. 4) ("In fiscal

6    year 2012, Apple Inc., or Apple, accounted for 13% of our total revenues"; "In fiscal year 2011,

7    Samsung Electronics Co., Ltd., or Samsung, accounted for 10% of our total revenues"); *see also* Bell

8    Decl. at ¶¶ 9-12.] For instance, ████████████████████████

9    ██████ [*See* Bell Decl. at ¶¶ 9-12.] ████████████████████

10    ████████████████████████████████████████

11    ██████ [*See* Ebertin Decl., Ex. 37.] SanDisk cannot be accused of indirect infringement with respect

12    to these types of transactions ████████████████

13    ████████████████████████████. *See Akamai Techs.*, 692 F.3d

14    at 1308. As Samsung and the other parties listed above are licensed by Round Rock ████████

15    ███████████ Round Rock cannot simultaneously claim that SanDisk somehow contributes to

16    infringement or induces these parties to infringe the patents-in-suit by ████████████

17    ██████ The Court should therefore deny Round Rock's motion as to SanDisk's license defense

18    (affirmative defense 14) because substantial evidence supports SanDisk's defense as to SanDisk

19    customers possessing a license to the patents-in-suit from Round Rock.

20        Although Round Rock alleges that there is no evidence to support SanDisk's implied license

21    defense, ████████████████████████████████████

22    ████████████████ "Have made" rights refer to a licensee's right to have a licensed product

23    made for it by an unlicensed third party. *See, e.g., Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1387–

24    88 (Fed. Cir. 1996) (finding a proper exercise of "have made" rights where a third-party

25    manufactured computer chips which were then sold to the accused infringer); *Thorn EMI N. Am. Inc.*

26    *v. Hyundai Elec. Indus. Co., Ltd.*, No. 94-332-RRM, 1996 U.S. Dist. LEXIS 21170 (D. Del. July 12,

27

28    [19] *See* Ebertin Decl., Exs. 36-40 (license agreements between Round Rock and Apple, Samsung, Sony, HTC, and Nokia).

1996) ("A license that grants 'have made' rights to a licensee protects a third party manufacturer to

the extent that it produces for the use or sale of the original licensee."]. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████. SanDisk has

an implied license to manufacture components ████████████ *See Intel Corp. v.*

*Broadcom Corp.*, 173 F. Supp. 2d 201 (D. Del. 2001) (finding that an unlicensed third party can be

afforded implied license protections conveyed under a licensed party's "have made" rights).

   For example, SanDisk sells products accused of infringement ████████ [Bell Decl. at ¶¶ 9,

13.]  Round Rock ████████████████████████████████████████

████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

[*See* Ebertin Decl., Ex. 40 ████████████████████████.]  Under this

agreement, ████████████████████████████████████████

████████████████████████████████████████

████████████████████ Other license agreements ████████████

████████████████████████████████████[20]

████████████████████ substantial evidence exists to deny summary

judgment of no implied license (affirmative defense 14).

## V.   SUBSTANTIAL EVIDENCE SUPPORTS SANDISK'S EQUITABLE ESTOPPEL DEFENSE AS TO THE '344 AND '760 PATENTS.

   Finally, substantial evidence exists that Round Rock and Micron unreasonably and

prejudicially delayed for over nine years in bringing suit against SanDisk for alleged infringement of

---

[20]  *See* Ebertin Decl., Exs. 36, 39, 41-42.

the '344 and '760 patents after Micron dismissed a previous suit against SanDisk for alleged infringement regarding the same patents in December 2002. [*See* Ebertin Decl., Ex. 25 (Complaint for Declaratory Relief, *SanDisk Corporation v. Micron Technology, Inc.*); Dkt. No. 39-3 (SanDisk/Micron Settlement Agreement).]   To prove equitable estoppel, an accused infringer must establish: (1) misleading conduct (2) reliance on that conduct; and (3) material prejudice if the patentee is allowed to proceed with its patent infringement claim.  *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029 (Fed. Cir. 1992) (en banc).  There is substantial evidence for the Court to draw a reasonable inference in SanDisk's favor that all three of these elements are met.

A patentee's "misleading conduct" may arise from a patentee's inaction "giv[ing] rise to the necessary inference that the claim against the defendant is abandoned." *Id*.  Here, the nine year delay in bringing suit reinforced SanDisk's necessary inference that any threats of litigation as to the '344 and '760 patents had been abandoned.  *Id.* at 1044 (holding that the length of delay favors drawing an inference of abandonment).

"To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead." *See id.* at 1043.  Here, SanDisk had negotiated a settlement agreement with Micron [Dkt. No. 39-3 (SanDisk/Micron Settlement Agreement)] and then proceeded to heavily invest in the expansion of its operations for nine years after the suit was originally dismissed. [Ebertin Decl., Ex. 33 (SanDisk 2012 10K at pp. 5 (expanded joint development with Toshiba through investments in Flash Partners, Flash Alliance and Flash Forward from starting in 2004), 42 (describing investments in the three flash ventures of approximately $850 million), 44 (noting non-cancelable lease obligations relating to the flash ventures of approximately $926 million), F-46 (showing investment in flash manufacturing expansion during the period of Micron's/Round Rock's excessive delay in bringing suit)).]  With each expansion in capacity and technology by SanDisk in 2004, 2006 and 2010, Micron and Round Rock did nothing to indicate that they intended to enforce the '344 and '760 patents again.  After nearly ten years of silence from Micron, Round Rock filed its counterclaims against SanDisk in March 2012 – only three months before both patents expired.

1    SanDisk has been and will be materially and economically prejudiced if Round Rock is now

2    permitted to continue alleging patent infringement of the '344 and '760 patents despite Micron's

3    abandonment of those patents after it negotiated a settlement with SanDisk in 2002.  *See A.C.*

4    *Aukerman*, 960 F.2d at 1033 and 1043.  Economic prejudice may arise where a defendant will suffer

5    the loss of monetary investments or incur damages which likely would have been prevented by earlier

6    suit.  *See id.* at 1033.  Here, Micron/Round Rock already had one bite at the apple to show

7    infringement of the '344 and '760 patents, but instead chose to abandon those claims.  In the interim,

8    any delay in bringing suit has prevented SanDisk from having the opportunity, for example, to switch

9    to alternative processes if infringement had been or were to have been found earlier.  In view of the

10   reasonable inferences that must be drawn in SanDisk's favor (as the non-moving party) regarding its

11   equitable estoppel defense for the '344 and '760 patents, summary judgment must be denied.

12   **VI.    CONCLUSION**

13   Round Rock's motion for summary judgment as to SanDisk's causes of action for non-

14   infringement should be denied, as Round Rock bears the burden of proof on the issue of infringement,

15   yet provided no evidence in support of its motion.  Moreover, there is considerable evidence to support

16   SanDisk's affirmative defenses of patent exhaustion, first sale, license, implied license, and equitable

17   estoppel.  Round Rock's motion, filed without Round Rock taking any substantive depositions in the

18   case, is unfounded, and ill-timed.  After Round Rock has had its opportunity to complete fact

19   discovery, SanDisk anticipates presenting its own summary judgment motions on exhaustion.

20

21   Dated:  March 22, 2013                              VINSON & ELKINS LLP

22
                                                        By:    */s/ Chuck P. Ebertin*
23                                                             Chuck P. Ebertin

24                                                      Attorneys for Plaintiff and Counterclaim
                                                        Defendant SanDisk Corporation
25

26

27

28