BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: 415-813-6211
Facsimile:  415-813-6222

DESMARAIS LLP
Jon T. Hohenthaner (admitted *pro hac vice*)
jhohenthaner@desmaraisllp.com
John C. Spaccarotella (admitted *pro hac vice*)
jspaccarotella@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com
Richard M. Cowell (admitted *pro hac vice*)
rcowell@desmaraisllp.com
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile:  212-351-3401

*Attorneys for Defendant and Counterclaim Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SANDISK CORPORATION,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>ROUND ROCK RESEARCH LLC,<br><br>Defendant and Counterclaim Plaintiff. | Case No. 3:11-cv-05243-RS<br><br>**ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S PATENT EXHAUSTION / FIRST SALE, EQUITABLE ESTOPPEL, AND ACTUAL OR IMPLIED LICENSE CLAIMS AND AFFIRMATIVE DEFENSES**<br><br>Date: April 18, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 3<br>Judge: Hon. Richard Seeborg |

- REDACTED -

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–
7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

Case No. 3:11-cv-05243-RS

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.    SanDisk's Patent Exhaustion / First Sale Doctrine Claims And Affirmative Defenses Fail As A Matter Of Law. ......................................................................2

        1.    SanDisk's Assertion That ▮▮▮▮ Foreign Sales Exhaust Round Rock's United States Patent Rights Is Wrong As A Matter Of Law. ...........2

            a.    The Supreme Court *Kirtsaeng* Copyright Case Is Not Applicable To Patent Exhaustion. ..........................................................4

            b.    The District Court Cases Relied Upon By SanDisk Are Contrary To Binding Federal Circuit Precedent. .............................5

            c.    SanDisk's Assertion That The Federal Circuit Has Not Addressed Patent Exhaustion With Respect To Foreign Sales Made Pursuant To A Worldwide License Is Wrong. .......................7

        2.    SanDisk Fails To Show That The Components It Purchases ▮▮▮ Substantially Embody The Asserted Patents. ................................8

    B.    SanDisk's Equitable Estoppel Affirmative Defense Fails As A Matter Of Law ...11

        1.    SanDisk Fails To Show Misleading Conduct That Could Lead To A Reasonable Inference That Micron Or Round Rock Would Not Enforce The '344 And '760 Patents. ........................................................12

        2.    SanDisk Fails To Show Reliance On Any Micron Or Round Rock Allegedly Misleading Conduct. ..............................................................13

        3.    SanDisk Fails To Show Material Prejudice. ............................................13

    C.    SanDisk's Actual And Implied License Affirmative Defense Fails As A Matter Of Law. ..........................................................................................14

CONCLUSION ....................................................................................................................15

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–
7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

i

Case No. 3:11-cv-05243-RS

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
　960 F.2d 1020 (Fed. Cir. 1992) (*en banc*) .................................................................. 12, 13

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*,
　No. C 04-03526 SI, 2008 WL 3915322 (N.D. Cal. Aug. 21, 2008) ........................................ 9

*Boesch v. Graff*,
　133 U.S. 697 (1890) .................................................................................................... 3

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
　890 F. Supp. 2d 602 (W.D. Pa. 2012) ........................................................................ 14

*Ecolab, Inc. v. Envirochem, Inc.*,
　264 F.3d 1358 (Fed. Cir. 2001) .................................................................................. 13

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
　249 F. Supp. 2d 434 (D.N.J. 2003), *aff'd,* 394 F.3d 1368 (Fed. Cir. 2005) ................ 3, 7, 8

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
　394 F.3d 1368 (Fed. Cir. 2005) ............................................................................ passim

*Fujifilm Corp. v. Benun*,
　605 F.3d 1366 (Fed. Cir. 2010) .................................................................................... 6

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*,
　60 F.3d 770 (Fed. Cir. 1995) ...................................................................................... 13

*Humanscale Corp. v. CompX Int'l, Inc.*,
　No. 3:09-CV-86, 2010 WL 3222411 (E.D. Va. Aug. 16, 2010) ..................................... 13

*In re Certain Semiconductor Chips With Minimized Chip Package Size & Prods.*
　*Containing Same*,
　Inv. No. 337-TA-630, 2010 WL 686377 (Feb. 24, 2010), *aff'd in part, vacated*
　*in part*, 646 F.3d 1357 (Fed. Cir. 2011), *cert. denied*, 132 S.Ct. 2707 (2012) ................ 7

*In re Katz Interactive Call Processing Patent Litig.*,
　No. 07-ML-1816-B-RGK (FFMx), 07-CV-2196-RGK (FFMx), 2009 WL
　1351043 (C.D. Cal. May 1, 2009) ....................................................................... 9, 12, 13

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
　361 F.3d 1355 (Fed. Cir. 2004) .................................................................................... 4

*Integrated Cards, L.L.C. v. McKillip Indus, Inc.*,
　No. 06 C 2071, 2009 WL 4043425 (N.D. Ill. 2009) ....................................................... 12

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–
7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

ii

Case No. 3:11-cv-05243-RS

*Intel Corp. v. Broadcom Corp.*,
    173 F. Supp. 2d 201 (D. Del. 2001) .................................................................................. 14

*Intel Corp. v. ULSI Sys Tech., Inc.*,
    995 F.2d 1566 (Fed. Cir. 1993) ........................................................................................ 11

*Jazz Photo Corp. v. Int'l Trade Comm'n*,
    264 F.3d 1094 (Fed. Cir. 2001) ................................................................................. 2, 3, 6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    --- U.S. ----, No. 11-697, 2013 WL 1104736 (Mar. 19, 2013) ......................................... 4, 5

*LG Elecs., Inc. v. Asustek Computer, Inc.*,
    248 F. Supp. 2d 912 (N.D. Cal. 2003) ............................................................................. 11

*LG Elecs., Inc. v. Asustek Computer, Inc.*,
    No. C 01-00326 CW, -01375 CW, -01594 CW, -02187 CW, -01552 CW,
    2002 WL 31996860 (N.D. Cal. Aug. 20, 2002) ............................................................... 11

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
    453 F.3d 1364 (Fed. Cir. 2006), *rev'd sub nom.*, *Quanta*, 533 U.S. 617 (2008) .................... 11

*LG Elecs., Inc. v. Hitachi Ltd.*,
    655 F. Supp. 2d 1036 (N.D. Cal. 2009) ........................................................................ 5, 6

*LifeScan, Inc. v. Shasta Techs., LLC*,
    No. 5:11-CV-04494-EJD, 2013 WL 1149827 (N.D. Cal. March 19, 2013) ......................... 11

*MedImmune, LLC v. PDL BioPharma, Inc.*,
    No. C 08–5590 JF (HRL), 2011 WL 61191 (N.D. Cal. Jan. 7, 2011) ...................................... 6

*Minebrea Co. v. Papst*,
    444 F. Supp. 2d 68 (D.D.C. 2006) ............................................................................... 9, 11

*Monsanto Co. v. Bowman*,
    657 F.3d 1341 (Fed. Cir. 2011), *cert. granted*, 133 S.Ct. 420 (2012) ..................................... 9

*Multimedia Patent Trust v. Apple, Inc.*,
    No. 10-CV-2618-H (KSC), 2012 WL 6863471 (S.D. Cal. Nov. 9, 2012) ...................... 5, 6, 7

*Ninestar Tech. Co. v. Int'l Trade Comm'n*,
    568 U.S. ----, No. 12-552, 2013 WL 1187588 (Mar. 25, 2013) .............................................. 5

*Ninestar Tech. Co. v. Int'l Trade Comm'n*,
    667 F.3d 1373 (Fed. Cir. 2012), *cert. denied*, 568 U.S. ----, 2013 WL 1187588
    (Mar. 25, 2013) .......................................................................................................... 3, 5, 6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    --- F.3d ----, 2013 WL 1200270 (Fed. Cir. Mar. 26, 2013) ..................................................... 3

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008) .......................................................................................................... 6, 9, 11

*ST Microelectronics, Inc. v. SanDisk Corp.*,
  No. 4:05CV45, 2007 WL 951655 (E.D. Tex. Mar. 27, 2005) ..................................................... 6

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir.), *cert. denied*, 132 S.Ct. 2442 (2012) ................................................ 1

*Tessera, Inc. v. Int'l Trade Comm'n*,
  646 F.3d 1357 (Fed. Cir. 2011) .................................................................................................. 7

*Thorn EMI N. Am. v. Hyundai Elec. Indus. Co.*,
  No. 94-332-RRM, 1996 WL 33415780 (D. Del. July 12, 1996) ............................................. 15

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
  No. C 11–0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011) ............................................ 1

**Statutes**

17 U.S.C. § 109(a) (2008) ................................................................................................................ 4, 5

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

iv

Case No. 3:11-cv-05243-RS

## INTRODUCTION

SanDisk's opposition brief demonstrates its lack of a factual basis for its patent exhaustion, equitable estoppel, and actual or implied license claims and affirmative defenses. For example, SanDisk bases its patent exhaustion claims and defenses entirely on *foreign* sales, which the Federal Circuit has repeatedly held cannot, as a matter of law, exhaust rights in a United States patent. SanDisk's patent exhaustion claims and defenses fail for this reason alone. And even if those foreign sales could support an exhaustion defense, SanDisk fails to show that the allegedly purchased components substantially embody the asserted patent claims—a necessary element of SanDisk's exhaustion defense. Similarly, SanDisk fails to come forth with sufficient evidence to support any of the necessary elements of its equitable estoppel defense, including evidence of misleading conduct, reliance on such misleading conduct, or material prejudice due to such reliance. Finally, SanDisk fails to come forth with evidence sufficient to show that it possesses an actual or implied license to any of the patents-in-suit. Accordingly, for the reasons set forth below and in Round Rock's opening brief, Round Rock respectfully requests that this Court enter summary judgment against SanDisk on its patent exhaustion, equitable estoppel, and actual or implied license claims and defenses (SanDisk's causes of action nos. 4–7 and 9–12 and affirmative defense nos. 12 and 14–16).[1]

---

[1] SanDisk's complaint that Round Rock did not come forth with evidence of infringement in its motion (Dkt. No. 132 ("SanDisk Br.") at § II) is misplaced, as this motion does not seek summary judgment of infringement. Indeed, Round Rock counterclaimed for infringement of the patents-in-suit (Dkt. No. 90) and SanDisk denied infringement (Dkt. No. 92), and those counterclaims and defenses are not at issue here (other than to the extent SanDisk's defenses are based upon exhaustion / first sale, equitable estoppel, or an actual or implied license). SanDisk causes of action nos. 4–7 and 9–12, to the contrary, seek a declaration of non-infringement based upon patent exhaustion (Dkt. No. 76 ¶¶ 57, 64, 71, 78, 92, 100, 108, 114), and thus Round Rock properly seeks judgment in its favor on those causes of action for the reasons set forth herein. SanDisk's barebones recitation of the phrase "among other reasons" does not expand the scope of these causes of action. *Cf. Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11–0671 SI, 2011 WL 3206686, at *6–7 (N.D. Cal. July 27, 2011) (dismissing non-infringement declaratory judgment claim for failure to plead sufficient facts). Indeed, a declaratory judgment plaintiff must show that "the facts alleged" show a substantial controversy at the time the claim for declaratory relief was filed, *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281-82 (Fed. Cir.), *cert. denied*, 132 S.Ct. 2442 (2012), and SanDisk pleaded no facts other than patent exhaustion to support these causes of action.

# ARGUMENT

### A. SanDisk's Patent Exhaustion / First Sale Doctrine Claims And Affirmative Defenses Fail As A Matter Of Law.

The material facts surrounding SanDisk's patent exhaustion / first sale claims and affirmative defenses[2] are not disputed: (i) SanDisk purchases flash memory chips outside the United States from a licensee of the patents-in-suit ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (ii) SanDisk manufactures the accused products by combining those flash memory chips with other components such as flash memory controllers; and (iii) SanDisk imports and sells the accused products in the United States. As discussed below, these undisputed material facts preclude SanDisk's patent exhaustion claims and affirmative defenses as a matter of law.

#### 1. SanDisk's Assertion That ▮▮▮ Foreign Sales Exhaust Round Rock's United States Patent Rights Is Wrong As A Matter Of Law.

SanDisk's assertion that ▮▮▮ *foreign* sales of flash memory products to SanDisk exhausts Round Rock's United States patent rights relating to those products—so that SanDisk is free to import and sell those products in the United States without a license from Round Rock—is wrong as a matter of law. The Federal Circuit has repeatedly held that exhaustion of a United States patent applies **only** to authorized sales occurring **within the United States**. *See, e.g., Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001) ("United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent."); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1376 (Fed. Cir. 2005) ("[F]oreign sales can **never** occur under a United States patent because the United States patent system does not provide for extraterritorial effect…. In *Jazz*, therefore, this court expressly limited first sales under the exhaustion doctrine to those occurring within the United States." (emphasis added)); *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1378 (Fed. Cir. 2012), *cert. denied*, 568 U.S. ----, 2013 WL 1187588 (Mar.

---

[2] SanDisk does not dispute that "patent exhaustion" and "first sale" are the same doctrine, as set forth in Round Rock's opening brief.

25, 2013). For that reason, "a lawful foreign purchase does not obviate the need for license from the United States patentee before importation into and sale in the United States." *Jazz Photo*, 264 F.3d at 1105 (citing *Boesch v. Graff*, 133 U.S. 697, 701–03 (1890)).

The rule that foreign sales do not exhaust United States patent rights stems from the territorial nature of patents—"[i]t is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad.... They do not thereby provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, --- F.3d ----, 2013 WL 1200270, at *18 (Fed. Cir. Mar. 26, 2013). For that reason, while purchasers of products in one country may generally use and resell those products in that country, there is no expectation that those purchasers may import, use, or sell those products in *other* countries:

> Nor is the proposition that foreign sales should not eviscerate United States patent rights without substantial justification. Indeed, it follows directly from the territorial nature of the patent laws themselves. *Cf. Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) (patent laws "do not, and were not intended to, operate beyond the limits of the United States"). As one leading commentator has noted, "[s]ince a patent only extends to the borders of the country using it, it makes sense to limit the right to make, use or sell the product to the same borders." Martin J. Adelman, Patent Law Perspectives § 3.6[1]. ***Thus, "anyone purchasing a product in the territory of one sovereign country ought to be on notice that the use or sale of that product in another sovereign country may be impermissible."*** *Id.* This was precisely the balance struck by the Federal Circuit in *Jazz v. ITC*.

*Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 450 n.20 (D.N.J. 2003), *aff'd,* 394 F.3d 1368 (Fed. Cir. 2005) (emphasis added). Accordingly, while ▉▉▉▉ authorized sales of products in Japan may exhaust Round Rock's Japanese patent rights over those products, those sales cannot, as a matter of law, exhaust Round Rock's United States patent rights over those products. Neither the Supreme Court nor the Federal Circuit have ever held otherwise.

SanDisk nonetheless asks this Court to disregard controlling Federal Circuit precedent— clearly holding that foreign sales do *not* exhaust a United States patent holder's rights—for three reasons: (i) the Supreme Court recently held that the statutory copyright "first sale" doctrine applies to copies of a copyrighted work sold abroad; (ii) a minority of district court cases have concluded, by

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

3

Case No. 3:11-cv-05243-RS

misapplying Federal Circuit law, that foreign sales could exhaust a United States patent; and (iii) the Federal Circuit has allegedly not addressed patent exhaustion with respect to foreign sales made pursuant to a worldwide license. None of these arguments support SanDisk's position.

### a. The Supreme Court *Kirtsaeng* Copyright Case Is Not Applicable To Patent Exhaustion.

SanDisk cites a recent Supreme Court case involving the statutory "first sale" copyright provision in support of its patent exhaustion defense. (Dkt. No. 132 ("SanDisk Br.") at 7 (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, --- U.S. ----, No. 11-697, 2013 WL 1104736 (Mar. 19, 2013)).) *Kirtsaeng* held that copyrighted works sold overseas were subject to the statutory copyright first sale provision. *Kirtsaeng*, 2013 WL 1104736, at *4 (quoting 17 U.S.C. § 109(a) (2008)). But *Kirtsaeng* has no bearing on ***patent*** exhaustion, and thus does not support SanDisk.

First, the *Kirtsaeng* decision relies upon statutory interpretation, in particular: (i) the Copyright Act's explicit statement that the importation ban is subject to the statutory first sale provision; and (ii) the first sale provision's applicability to any copy "lawfully made under this title." *See id.* at *4–5. No such provisions exist in the United States Patent Act. *See* 35 U.S.C. §§ 1 *et seq*.

Second, the patent exhaustion doctrine is fundamentally different than the statutory copyright "first sale" provision addressed in *Kirtsaeng*. For example, the United States patent laws and United States patents have no extraterritorial effect. *See, e.g., Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004) ("Further, it is well known that United States patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'" (citation omitted)). Indeed, each country may have its own patent office and issue its own patents under its own patent laws. For this reason, exhaustion of a United States patent, as based on Supreme Court and Federal Circuit precedent, applies ***only*** to sales within the United States. *Fuji Photo Film*, 394 F.3d at 1376 ("[F]oreign sales can ***never*** occur under a United States patent because the United States patent system does not provide for extraterritorial effect…. In *Jazz*, therefore, this court expressly limited first sales under the exhaustion doctrine to those occurring within the United States." (emphasis added)). The Copyright Act, to the contrary, ***does*** have extraterritorial effect. *See Kirtsaeng*, 2013

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

4

Case No. 3:11-cv-05243-RS

WL 1104736, at *9 (noting that "*§104 of the Act itself says that works 'subject to protection under this title 'include unpublished works' 'without regard to the nationality or domicile of the author,' and works 'first published' in any one of the nearly 180 nations that have signed a copyright treaty with the United States*." (emphasis added)). Consistent with this extraterritorial effect, the statutory copyright "first sale" provision provides no territorial limitation, stating simply that "the owner of a particular copy or phonorecord lawfully made under this title … is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. § 109(a).

Finally, if the Supreme Court had intended to modify current law on patent exhaustion, it had the opportunity to vacate and remand the most recent Federal Circuit case on patent exhaustion, *Ninestar*, only days after *Kirtsaeng* was decided. The Court declined to do so, however, and denied Ninestar's petition for certiorari. *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 568 U.S. ----, No. 12-552, 2013 WL 1187588 (Mar. 25, 2013). Accordingly, because the Supreme Court has not applied *Kirtsaeng*'s reasoning to the doctrine of patent exhaustion, the Federal Circuit precedent that foreign sales *never* exhaust a United States patent remains binding precedent.

### b.   The District Court Cases Relied Upon By SanDisk Are Contrary To Binding Federal Circuit Precedent.

SanDisk also relies heavily on two district court cases, including one from this Court, that have held that patent exhaustion can be triggered by foreign sales of a licensee: (i) *LG Elecs., Inc. v. Hitachi Ltd.*, 655 F. Supp. 2d 1036 (N.D. Cal. 2009); and (ii) *Multimedia Patent Trust v. Apple, Inc. ("MPT")*, No. 10-CV-2618-H (KSC), 2012 WL 6863471 (S.D. Cal. Nov. 9, 2012). (SanDisk Br. at 7–9.) But these district court cases are premised upon on a misreading of the Federal Circuit's decisions and cannot override binding Federal Circuit precedent.

In *Hitachi*, accused infringer LG bought components overseas from Hitachi's licensee. *Hitachi*, 655 F. Supp. 2d at 1044–45. The district court acknowledged that, under Federal Circuit precedent, these sales could not be exhausting, but interpreted the Supreme Court's intervening

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–
7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

5

Case No. 3:11-cv-05243-RS

decision in *Quanta*[3] as silently overruling these cases. *Id.* at 1046 ("Although *Fuji Photo*'s holding would foreclose granting summary judgment against LGE with respect to accused products containing Intel products that were first sold abroad, such a result would be inconsistent with *Quanta*."). But the *Hitachi* court did not have the benefit of the Federal Circuit's later decisions reaffirming the *Fuji Photo* line of cases. For example, in *Ninestar*, the appellant argued that *Quanta* changed the territoriality requirement for patent exhaustion, such that products purchased outside the United States from the patentee exhausted the patentee's United States patent rights. (Cowell Decl.,[4] Ex. D, Ninestar Appeal Brief, at 3-4, 9-13.) The Federal Circuit expressly rejected that position. *Ninestar*, 667 F.3d at 1378 ("*Quanta Computer, Inc. v. LG Electronics, Inc.* did not eliminate the first sale rule's territoriality requirement.") (quoting *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1371 (Fed. Cir. 2010)). The *Hitachi* decision, which was based on a misreading of *Quanta*, is thus not—as SanDisk characterizes it—"binding precedent."[5] Indeed, contrary to *Hitachi*, a later decision of this Court applied the reaffirmed Federal Circuit standard that foreign sales do ***not*** exhaust United States patents. *See, e.g., MedImmune, LLC v. PDL BioPharma, Inc.*, No. C 08–5590 JF (HRL), 2011 WL 61191, at *17 n.13 (N.D. Cal. Jan. 7, 2011) ("If Abbott were to buy Synagis overseas and import it into the United States, the foreign sale would not act as a license but instead would afford no protection at all from charges of infringement.").

In *MPT*, the district court attempted to distinguish *Ninestar* and the *Jazz Photo* cases by drawing a distinction between overseas sales by the patentee and overseas sales by a licensee. *MPT*, 2012 WL 6863471, at *5 ("[T]he cases relied on by MPT are distinguishable from the present case

---

[3] *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).

[4] Citations to "Cowell Decl." refer to the Declaration of Richard M. Cowell filed herewith.

[5] SanDisk also relies on several pre-*Benun* district court cases for the proposition that overseas sales can trigger patent exhaustion. (*See* SanDisk Br. at 10.) These cases, including *ST Microelectronics, Inc. v. SanDisk Corp.*, No. 4:05CV45, 2007 WL 951655 (E.D. Tex. Mar. 27, 2005) (which was not a final decision, but rather, a Report and Recommendation that was never adopted because the case was dismissed before written objections were filed), were decided before the Federal Circuit had fully clarified the law in *Benun* and, in any case, cannot overrule the Federal Circuit's decisions.

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–
7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

6

Case No. 3:11-cv-05243-RS

because those cases only involved foreign sales made directly by the patentee and did not involve sales made pursuant to a unconditional worldwide license."). The *MPT* court supported its reasoning by citing *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357 (Fed. Cir. 2011), where, it stated, "the Federal Circuit found that the doctrine of patent exhaustion applied where the patentee gave the licensee 'an unconditional grant of a license to sell ... and/or offer for sale the accused products' even though the authorized sales were made in a foreign jurisdiction." *MPT*, 2012 WL 6863471, at *5 (quoting *Tessera*, 646 F.3d at 1369–70 (omission in original; internal quotations omitted)). But the *MPT* court mischaracterized *Tessera*, as the patentee in that case had waived the extraterritoriality argument in proceedings before the ITC. *See In re Certain Semiconductor Chips With Minimized Chip Package Size & Prods. Containing Same*, Inv. No. 337-TA-630, 2010 WL 686377, at *14 n.6 (Feb. 24, 2010), *aff'd in part, vacated in part*, 646 F.3d 1357 (Fed. Cir. 2011), *cert. denied*, 132 S.Ct. 2707 (2012) (finding that Tessera "waived the argument" that "only a 'patent exhausting first sale' taking place in the United States can trigger patent exhaustion."). The territoriality issue was thus not even before the Court in *Tessera*. Moreover, the *MPT* court failed to consider Federal Circuit precedent expressly holding that sales by overseas licensees cannot act as exhausting sales for a United States patent. For example, in *Fuji Photo Film*, 394 F.3d at 1376, the Federal Circuit specifically noted that overseas sales by a licensee did not trigger patent exhaustion. *Id.* ("Jazz therefore does not escape application of the exhaustion principle because Fuji or ***its licensees*** authorized the international first sales of these LFFPs. The patentee's authorization of an international first sale does not affect exhaustion of that patentee's rights in the United States." (emphasis added)). SanDisk's reliance on these district court cases thus does not support its position.

        **c.    SanDisk's Assertion That The Federal Circuit Has Not Addressed Patent Exhaustion With Respect To Foreign Sales Made Pursuant To A Worldwide License Is Wrong.**

Finally, SanDisk's assertion that the Federal Circuit has not addressed patent exhaustion with respect to foreign sales made pursuant to a "worldwide license" is wrong. For example, *Fuji Photo Film* expressly addressed foreign sales by a worldwide licensee. *Fuji Photo Film*, 249 F. Supp. 2d at 451 n.21 ("Specifically, Question 3 asked the jury to determine the number of cameras sold by Jazz

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

7

Case No. 3:11-cv-05243-RS

in or to the United States made from refurbished shells of *cameras first sold outside the United States by Fuji or a licensee with the right to sell in both countries*." (emphasis added)); *id.* at 438 ("Fuji and its licensees manufacture these disposable cameras for sale both in the United States and abroad.").[6] Despite the license to sell both outside and within the United States, the Federal Circuit held that the exhaustion doctrine does not apply "when either the patentee or its licensee sells the patented article abroad." *Fuji Photo Film*, 394 F.3d at 1376. Indeed, the district court's decision in *Fuji Photo Film*, affirmed by the Federal Circuit, explained that "a foreign sale by the holder of both United States and foreign patents (or its licensee with a license to sell in both countries)" cannot exhaust a patentee's rights under a United States patent:

> The Supreme Court's decision in *Boesch* left open the question whether a foreign sale by the holder of both United States and foreign patents (or its licensee with a license to sell in both countries) "exhausts" the patentee's rights "under the United States patent." … Prior to its decision in *Jazz v. ITC*, the Federal Circuit was never called upon to address this distinction. The record on appeal in *Jazz v. ITC*, however, placed the issue before the Circuit, which held that in order for a sale to be "under the United States Patent" such that the patentee's rights are exhausted, the sale must be "in the United States." 264 F.3d at 1105.

*Fuji Photo Film*, 249 F. Supp. 2d at 450 (footnote and citations omitted). SanDisk's patent exhaustion claims and affirmative defenses directly contradict these decisions.

SanDisk's attempt to distinguish binding Federal Circuit authority on the grounds that ▇ has a "worldwide license" is thus incorrect. Accordingly, because there is no dispute that SanDisk's exhaustion claims and affirmative defenses are based entirely upon *foreign* sales, these claims and affirmative defenses fail as a matter of law.

### 2. SanDisk Fails To Show That The Components It Purchases ▇ Substantially Embody The Asserted Patents.

Even if ▇ foreign sales could exhaust Round Rock's United States patent rights—which they cannot—SanDisk's exhaustion claims and defenses nonetheless fail because SanDisk

---

[6] Jazz Photo's appeal brief further confirmed that at least one of the licenses at issue was "worldwide in scope." (Cowell Decl., Ex. E at 19.)

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

8

Case No. 3:11-cv-05243-RS

failed to show that the components it purchases ▮▮▮ substantially embody the asserted patents. *See, e.g., Quanta*, 553 U.S. at 632–33. A product substantially embodies a patent when it: (i) has "no reasonable noninfringing use" other than to practice the patent; and (ii) "include[s] all the inventive aspects of the patented [article or] methods." *Id.* at 638; *see also ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C 04-03526 SI, 2008 WL 3915322, at *2 (N.D. Cal. Aug. 21, 2008) ("Substantial embodiment will be found where the item has no reasonable non-infringing use and includes all essential, or inventive, aspects of the patent claims."); *In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-1816-B-RGK (FFMx), 07-CV-2196-RGK (FFMx), 2009 WL 1351043, at *3 (C.D. Cal. May 1, 2009) ("For exhaustion to apply, the Supreme Court has required that the patent holder or its licensee sell an article or device that embodies the essential features of the patented invention and has no reasonable non-infringing uses.").

SanDisk came forth with no evidence whatsoever that the ▮▮▮ chips it purchases have no reasonable noninfringing use. (*See generally* SanDisk Br. at 13–20). But a product capable of other, non-infringing uses does not exhaust patent rights. *See, e.g., Quanta*, 553 U.S. at 628; *Monsanto Co. v. Bowman*, 657 F.3d 1341, 1348 (Fed. Cir. 2011), *cert. granted*, 133 S.Ct. 420 (2012); *Minebrea Co. v. Papst*, 444 F. Supp. 2d 68, 170 (D.D.C. 2006) (holding failure to show reasonable non-infringing use was fatal to exhaustion claim). Summary judgment in favor of Round Rock on SanDisk's exhaustion claims and affirmative defenses is thus warranted for this additional reason.

Moreover, SanDisk fails to provide evidence that the ▮▮▮ chips include *all* the inventive aspects of the patents-in-suit. Indeed, SanDisk admits that the ▮▮▮ chips themselves are not the accused products, but rather, merely "used in the accused products." (SanDisk Br. at 6.)[7] But

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SanDisk fails to provide evidence that many substantive limitations are found in the ▮▮▮ chip portion of the accused products, such as the following:

- For the '344, '282, and '760 patents, SanDisk provides no evidence that the accused controller chips are provided by a licensee. (SanDisk Br. at 4 n.2.)

- For the '334 patent, SanDisk provides no evidence that the memory chips perform the "interleaving the latching of addresses" step of asserted claim 37. (SanDisk Br. at 13–14.)

- For the '791 patent, SanDisk fails to even discuss the "sense amplifier circuitry, wherein the sense amplifier circuitry detects a differential voltage from the array of non-volatile memory cells" limitation found in claims 1, 3, and 4. (SanDisk Br. at 14–16.) SanDisk also fails to establish that the memory chips include the "clock signal connection to receive a clock signal" limitation of claims 4 and 14. (*Id.*)

- For the '345 patent, SanDisk fails to show that the ▮▮▮ chips include the "control means" or "controller" of claims 1 and 39, respectively.[8] SanDisk does not even argue that the steps of method claim 24 are performed within the ▮▮▮ chips. (SanDisk. Br. at 16–17.)[9] Moreover, SanDisk admits that Round Rock has accused volatile memory not included in the ▮▮▮ chips. (SanDisk Br. at 17.)

- For the '586 patent, SanDisk admits that Round Rock has accused functionality found in "a separate controller chip." (SanDisk Br. at 18–19.)

- For the '053 patent, SanDisk admits that Round Rock has accused functionality that is not found in the ▮▮▮ chips. (SanDisk Br. at 20.)

Nor does SanDisk argue that these limitations are not inventive aspects of the claims. Accordingly, because SanDisk failed to prove that the ▮▮▮ chips substantially embody all inventive aspects of

---

[8] Contrary to SanDisk's assertion (SanDisk Br. at 16 n.11), neither party's claim construction positions require a control means or controller embodied in the memory chips.

[9] SanDisk also cites no support for its contention that Round Rock's rights are exhausted "regardless of whether the accused products include additional components that also embody some elements of those patent claims." (SanDisk Br. at 17.)

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

10

Case No. 3:11-cv-05243-RS

the claims, Round Rock's motion should be granted for this additional reason.[10] *See, e.g., Minebrea*, 444 F. Supp. 2d at 170; *LifeScan, Inc. v. Shasta Techs., LLC*, No. 5:11-CV-04494-EJD, 2013 WL 1149827, at *9 (N.D. Cal. March 19, 2013) ("Because the strips are significant to the novelty of the '105 invention, the meters alone simply cannot 'all but completely practice' or embody the 'essential' or 'inventive' feature of the '105 patent as required by *Quanta*") (citation omitted).

### B. SanDisk's Equitable Estoppel Affirmative Defense Fails As A Matter Of Law.

As discussed in Round Rock's opening brief, SanDisk bears the burden of proving three elements to support its equitable estoppel defense:[11]

a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

b. The alleged infringer relies on that conduct.

c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

---

[10] SanDisk's argument that the license ▬▬▬▬▬▬▬▬▬ itself constitutes an exhausting sale is illogical. (SanDisk Br. at 21.) Patent exhaustion occurs when a ***product*** is sold, not when a patent is licensed. *See, e.g., Quanta*, 553 U.S. at 631 ("[T]he authorized sale of an ***article*** which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold.") (citation omitted and emphasis added); *Intel Corp. v. ULSI Sys Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent. The patent owner's rights with respect to the product end with its sale and a purchaser of such a product may use or resell the product free of the patent." (citations omitted)). While the Federal Circuit's language in *Bizcom* cited by SanDisk, if read literally and in isolation, could suggest that a license agreement itself could be an exhausting sale, the underlying district court opinions make clear that the patent exhaustion at issue was the result of the licensee's sales of patented products to the accused infringers. *See LG Elecs., Inc. v. Asustek Computer, Inc.*, No. C 01-00326 CW, -01375 CW, -01594 CW, -02187 CW, -01552 CW, 2002 WL 31996860, at *4 (N.D. Cal. Aug. 20, 2002); *LG Elecs., Inc. v. Asustek Computer, Inc.*, 248 F. Supp. 2d 912, 915 (N.D. Cal. 2003). Moreover, even if a license itself could constitute an exhausting sale, that would be inapplicable here because SanDisk did not purchase the license or obtain a sublicense, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[11] SanDisk raises its equitable estoppel defense only for the '344 and '760 patents.

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4–7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

11

Case No. 3:11-cv-05243-RS

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*). SanDisk failed to come forth with sufficient evidence to support any of these elements.

### 1. SanDisk Fails To Show Misleading Conduct That Could Lead To A Reasonable Inference That Micron Or Round Rock Would Not Enforce The '344 And '760 Patents.

SanDisk's attempt to show "misleading conduct" based upon ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a nine year "delay" in asserting the '344 and '760 patents against SanDisk, is misplaced. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Second, SanDisk's assertion of an alleged nine-year "delay" in bringing suit is without any evidentiary support. For example, SanDisk has not shown, or even alleged, any connection between the alleged infringement in the 2001/2002 actions and the infringement at issue in this case. Without such connection, SanDisk has shown *no* actual delay in bringing the asserted claims here.

Finally, Micron's supposed inaction, even if it existed, is not sufficient by itself to support an equitable estoppel defense. *A.C. Aukerman*, 960 F.2d at 1042 ("However, plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned."). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SanDisk has shown no relationship or contact between the parties. SanDisk's equitable estoppel defense thus fails as a matter of law. *Integrated Cards, L.L.C. v. McKillip Indus, Inc.*, No. 06 C 2071, 2009 WL 4043425, at *7 (N.D. Ill. 2009) (holding that equitable estoppel "requires that the plaintiff take some misleading action beyond mere silence"); *Katz*, 2009 WL 135104, at *13 (granting summary judgment of no equitable estoppel).

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4– 7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

12

Case No. 3:11-cv-05243-RS

### 2. SanDisk Fails To Show Reliance On Any Micron Or Round Rock Allegedly Misleading Conduct.

SanDisk also fails to show that it relied upon Micron's and Round Rock's supposed misleading conduct. To show reliance, the accused infringer must show that it actually believed that the patentee would not pursue litigation. *See, e.g., Katz*, 2009 WL 135104, at *13. Here, SanDisk pointed to no testimony, declaration, or other evidence that shows that SanDisk had an actual belief that Micron or Round Rock would not assert the '344 and '760 patents. This lack of evidence is fatal to its equitable estoppel claim. *See, e.g., Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (reversing finding of equitable estoppel because infringer did not establish it would have acted differently under other circumstances); *Katz*, 2009 WL 135104, at *13 ("American fails to submit any declarations, cite to any deposition testimony or identify any other evidence that shows that American actually believed that Katz would not pursue American."). Instead, SanDisk points to various expansions in its business. (SanDisk Br. at 24.) To the extent this activity shows anything, "[t]his shows harm, not reliance." *Katz*, 2009 WL 135104, at *13.

### 3. SanDisk Fails To Show Material Prejudice.

Finally, SanDisk argues that it might have switched to alternative processes for manufacturing its products "if infringement had been or were to have been found earlier." (SanDisk Br. at 25.) But economic prejudice requires more than just showing that damages have increased in the time before suit. *A.C. Aukerman*, 960 F.2d at 1033 ("Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit. The courts must look for a ***change*** in the economic position of the alleged infringer during the period of delay." (internal citations omitted)). Critically, SanDisk fails to show that it will lose monetary investments or suffer increased damages as the result of its expansions of manufacturing, and that those expansions were because of its reliance and not because of other business or legal judgments. *See Humanscale Corp. v. CompX Int'l, Inc.*, No. 3:09-CV-86, 2010 WL 3222411, at *13 (E.D. Va. Aug. 16, 2010) (finding no prejudice when infringer continued selling accused products based on legal and business judgments rather than supposed misleading conduct); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371–72 (Fed. Cir. 2001) ("[T]he hiring of new

employees, modification of equipment, and engagement in sales and marketing activities related to the new cast are damages normally associated with a finding of infringement and do not constitute the type of damages necessary for a finding of economic prejudice."). Round Rock's motion should therefore be granted as to equitable estoppel for this additional reason.

### C. SanDisk's Actual And Implied License Affirmative Defense Fails As A Matter Of Law.

SanDisk raises two bases for its license defense in its opposition brief:[12] (i) that its overseas sales to licensed parties provide it with a license; and (ii) that it is licensed under other companies' have-made rights. (SanDisk Br. at 21–22). SanDisk is wrong as a matter of law on both counts.

First, Round Rock does not allege that SanDisk contributes to the infringement of, or induces infringement by, Nokia, Apple, Samsung, Sony, or HTC. The first basis for SanDisk's license defense (SanDisk Br. at 21:23–22:19) is thus moot. Accordingly, because SanDisk came forth with no evidence of any applicable license with any party other than Nokia, Apple, Samsung, Sony, or HTC, the Court should grant summary judgment in favor of Round Rock on this defense.

Second, SanDisk cannot take advantage of any "have-made rights" conferred on other companies unless SanDisk proves that it was specifically commissioned to design and make the product at issue. *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 890 F. Supp. 2d 602, 608–09 (W.D. Pa. 2012) ("Where a licensee commissions the work, a third party's acts do not infringe. When there is no agreement between the licensee and the third party, the third party's acts do infringe." (internal citations omitted)). But SanDisk came forward with no such evidence, which is fatal to SanDisk's license theory based upon the have-made rights of others. *See, e.g., Carnegie Mellon*, 890 F. Supp. 2d at 609; *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 233–34 (D. Del. 2001) ("The legal effect of licensees exercising their 'have made' rights by commissioning a

---

[12] SanDisk did not oppose Round Rock's summary judgment motion on its license defense to the extent the defense is based upon alleged "statements made by participants to the standard setting organization that adopted the ONFi standard." (Dkt. No. 123, Round Rock Br. at 10:24–11:6.) The Court should thus grant summary judgment in favor of Round Rock on this defense.

ROUND ROCK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SANDISK'S CAUSE OF ACTION NOS. 4– 7 AND 9–12 AND AFFIRMATIVE DEFENSE NOS. 12 AND 14–16

14

Case No. 3:11-cv-05243-RS

third party to make licensed products is very different from the legal effect of licensees purchasing allegedly infringing products from a third party…. Broadcom cannot unilaterally rely on the rights of the licensees who purchase its products, when none of those licensees' rights have been conferred onto Broadcom."); *Thorn EMI N. Am. v. Hyundai Elec. Indus. Co.*, No. 94-332-RRM, 1996 WL 33415780, at *5 (D. Del. July 12, 1996) (noting that a license's have made rights "appl[y] only to the use of foundries, those manufacturers specifically commissioned to manufacture products of [the licensee's] design" and that they "do[] not apply to the manufacturers of 'off the shelf' parts"). Round Rock's motion for summary judgment should thus be granted.

## CONCLUSION

For the foregoing reasons Round Rock respectfully requests that this Court enter summary judgment in favor of Round Rock on SanDisk's patent exhaustion / first sale, equitable estoppel, and actual or implied license declaratory judgment claims and affirmative defenses (SanDisk's causes of action nos. 4–7 and 9–12 and affirmative defense nos. 12 and 14–16).

Dated: April 4, 2013                                     Respectfully submitted,

BLACK CHANG & HAMILL LLP
Bradford J. Black (SBN 252031)
bblack@bchllp.com
Andrew G. Hamill (SBN 251156)
ahamill@bchllp.com

DESMARAIS LLP
Jon T. Hohenthaner (admitted *pro hac vice*)
jhohenthaner@desmaraisllp.com
John C. Spaccarotella (admitted *pro hac vice*)
jspaccarotella@desmaraisllp.com
Ameet A. Modi (admitted *pro hac vice*)
amodi@desmaraisllp.com
Richard M. Cowell (admitted *pro hac vice*)
rcowell@desmaraisllp.com

By: /s/ Bradford J. Black

*Attorneys for Defendant*
*Round Rock Research LLC*