IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN DISK CORPORATION,<br><br>        Plaintiff,<br>    v.<br><br>ROUND ROCK RESEARCH LLC<br><br>        Defendant.<br>_____/ | No. C 11-5243 RS<br><br>**SUPPLEMENTAL CLAIM CONSTRUCTION ORDER** |

As requested, the parties have provided supplemental briefing regarding construction of the term "program means" as used in claim 1 of U.S. Patent No. 5,682,345 ("the '345 patent). The parties are in agreement that this claim is written in means-plus-function format under 35 U.S.C. § 112 (f), and that the claimed function is "programming the non-volatile memory device with data from the volatile memory device." The sole question to be decided at this juncture is what structure described in the specification is the "corresponding structure" that performs the claimed function. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed.Cir. 1998); *B. Braun Med., Inc. v. Abbott Labs*., 124 F.3d 1419, 1424 (Fed.Cir. 1997) ( "[S]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.").

Round Rock previously argued that only transistors 24 and 26 constitute the structure that performs the "program means" function. SanDisk previously contended that transistors 16 and 20 represent the corresponding structure and that transistors 24 and 26 merely provide a pathway for

1 the data to flow through. In response to the Courts query whether the corresponding structure could 2 be seen as all four of the resistors and possibly additional linking circuitry, Round Rock has 3 maintained its position that only transistors 24 and 26 perform the function. San Disk now contends 4 that all four transistors, together with the "shared control signal wire" that connects them is structure 5 corresponding to "program means."

6 As discussed in the claims construction order, "program means" is one of three means terms 7 grouped under the broader term "control means." San Disk originally argued no structure was 8 disclosed that separately performs a "control" function. Now that "control means" has been 9 construed to be effectively nothing more than a collective label for the three subsidiary means, San 10 Disk argues it is appropriate to include elements that perform "control" function in those means. 11 Accordingly, San Disk has embraced the notion that all four resistors perform the recited function of 12 programming the non-volatile memory device, and has explained how the shared control signal wire 13 is a necessary part of that structure as well.

14 Round Rock repeats and amplifies on its prior argument that the only corresponding 15 structure is transistors 24 and 26. It relies particularly on the fact that the specification describes the 16 latch circuitry, including transistors 16 and 20, in connection with performing the *load* function, and 17 on language suggesting that the loading must *precede* programming. Some of the same language to 18 which Round Rock points, however, equally supports the conclusion that the loading is *part* of how 19 the non-volatile memory is programmed. *See* '345 patent at 3:53-54 (the flash cell C and C[bar] *are* 20 *programmed* by first loading the programming data into the Latch section 12." (emphasis added)). 21 As previously noted, the specification also clearly links the latch transistors to the programming 22 function by stating that "transistor 20 . . . . will *provide the programming current* to cell C. If cell 23 C[bar] is being programmed, the programming current is provided by transistor 16 . . . ." '345 24 patent 5:1-4).

25 Round Rock dismisses the role of transistors 16 and 20 in the programming function by 26 asserting they merely "enable" the programming to occur, rather than *performing* any part of the 27 programming. Round Rock relies on *Asyst Technologies, Inc. v. Empak, Inc.*, 268 F.3d 1364 28

2

(Fed.Cir. 2001) where a " communication line 51" was found *not* to be part of the structure associated with a "second microcomputer means," even though that line undisputedly "enable[d] the second microcomputer means to perform its recited functions." *Id.* at 1370-71. The *Asyst* court analogized to a toaster and an electrical outlet, observing, "[a]n electrical outlet enables a toaster to work, but the outlet is not for that reason considered part of the toaster." *Id.* at 1371.[1]

While the general principle Round Rock advances undoubtedly is sound, it has not shown that transistors 16 and 20 can reasonably be characterized as only "enabling" the programming function, as opposed to *performing* a significant part of that function. The specification clearly links the entire structure as described by San Disk to the program function. Accordingly, its construction will be adopted, and the corresponding structure for "program means" is declared to be transistors 16, 20, 24, and 26 and the shared control wire.

IT IS SO ORDERED.

Dated: 6/4/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[1] The court did not explain why line 51 was more analogous to a wall outlet than to the toaster's power cord, which reasonably could be considered part of the toaster, although still debatable as to whether it performed a toasting function.