UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br>Plaintiff,<br>v.<br>ROUND ROCK RESEARCH LLC,<br>Defendant. | Case No. 11-cv-05243-RS   (JSC)<br>**ORDER GRANING IN PART AND DENYING IN PART SANDISK'S MOTIONS TO COMPEL**<br>Re: Dkt. No. 247 |
| SANDISK CORPORATION,<br>Plaintiff,<br>v.<br>IPVALUE MANAGEMENT INC.,<br>Defendant. | Case No. 13-mc-80271-RS   (JSC)<br>Re: Dkt. No. 1 |

SanDisk Corporation asks the Court to decide whether a patent assertion entity can withhold from production internal documents and communications with its licensing agent on the grounds of attorney-client and work-product privilege when the documents are prepared primarily for the patent assertion entity's licensing business. After reviewing the disputed documents *in camera*, and having had the benefit of oral argument, the Court concludes that most of the documents SanDisk seeks are not relevant to damages at this very late stage in the litigation. The documents that are relevant, however, are not protected by the attorney-client or attorney work-product privilege and must be produced.

## BACKGROUND

SanDisk Corporation ("SanDisk") initiated this action to seek a declaration that it does not infringe certain patents owned by Round Rock Research LLC ("Round Rock"). Round Rock

1   responded by filing counterclaims accusing SanDisk of patent infringement.  SanDisk does not
2   accuse Round Rock of patent infringement because Round Rock does not make any products;
3   instead, Round Rock is what is known as a patent assertion entity.
4         Fact discovery closed on November 21, 2013.  (Dkt. No. 241.)  Just before the deadline to
5   file motions to compel, the parties each filed motions to compel.  Now before the Court is
6   SanDisk's motion for an order compelling Round Rock to produce certain documents that Round
7   Rock and its licensing agent, IPValue Management Inc. ("IPValue") have identified on their
8   respective privilege logs.  At the Court's direction following the hearing on January 23, 1014,
9   SanDisk narrowed the list of documents it seeks to compel and provided that list to Round Rock.
10  Round Rock subsequently provided the documents to the Court for its *in camera* review.

## DISCUSSION

12  SanDisk seeks documents withheld by IPValue, along with documents created by Round
13  Rock.  Round Rock opposes production for two reasons.  First, it asserts that SanDisk has not
14  established the relevance of the documents sought.  Second, it contends the documents are
15  protected by the attorney work-product and/or attorney-client privilege.

16  **A.    Relevance**

17  SanDisk first asserts that because Round Rock and IPValue identified the documents
18  SanDisk seeks to compel on their respective privilege logs, relevance is not at issue.  The Court
19  disagrees.  SanDisk does not cite any case holding that a court must order a document to be
20  produced—regardless of its relevance—simply because the objecting party identified the
21  document on a privilege log and the court finds it not privileged.  To the contrary, the Ninth
22  Circuit has declared that "[e]nforcing a discovery request for *irrelevant* information is a per se
23  abuse of discretion."  *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622 (9th Cir.
24  1999); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 4426512, at *1 (N.D. Cal.
25  Aug. 14, 2013) (stating that the party moving to compel bears the burden of establishing
26  relevance); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D Cal. 2006) (applying relevance
27  burden to motion to compel response to Rule 45 subpoena).
28        Next, SanDisk contends that the documents sought are relevant to the reasonable royalty

2

1  analysis. The sought-after evidence "need not be admissible at trial if the discovery appears
2  reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).
3  While the definition is broad, however, it is not without limits. *Gonzales,* 234 F.R.D. at 680.
4  Here, there is no dispute that a reasonable royalty is at issue.

> A reasonable royalty can be calculated from an established royalty, the infringer's profit   projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," and "necessarily involves an element of approximation and uncertainty."

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.,* 609 F.3d 1308, 1319 (Fed. Cir. 2010).

### 1. IPValue Documents

The Court has reviewed the documents withheld by IPValue and finds that Privilege Log entry numbers 34, 42, and 43 are relevant. These documents involve IPValue's assessment of SanDisk's business and potential royalty value and are therefore relevant to the reasonable royalty issue.

The remaining documents are not relevant to the reasonable royalty inquiry, especially at this very late stage in the litigation. Most involve spreadsheets of Round Rock's patents with innocuous information such as name of inventor, number of claims, and so on. None include any analysis or estimate of the value of the patents or Round Rock's portfolio.

### 2. Round Rock Documents

The Court has also reviewed the identified documents withheld by Round Rock. Privilege Log entry numbers 360 and 375 are not relevant to the reasonable royalty inquiry at this late stage in the litigation as they are merely a list of patents and their subject areas.

SanDisk seeks unredacted versions of two additional documents. First, a third party previously produced Round Rock's 2009 Business Plan (Round Rock Privilege Log numbers 26, 27) in related litigation, but with certain paragraphs redacted based on Round Rock's assertion of attorney-client and attorney work-product privilege. Second, Round Rock produced a spreadsheet dated October 1, 2012, which included historical revenue per licensing target, but redacted

1   projections from 2012 through 2014. Round Rock's objections to SanDisk's requests for

2   unredacted versions of these documents are based only on privilege, not relevance.

### B. Privilege

Round Rock and IPValue, as the parties asserting attorney-client and work-product privilege, have the burden of establishing the privilege. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *2 (N.D. Cal. Oct. 10, 2013).

As this Court recently explained with regard to the attorney-client privilege:

> The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice, as well as an attorney's advice in response to such disclosures. The privilege exists "to encourage the full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."
>
> The privilege, however, is limited to those disclosures "necessary to obtain informed legal advice which might not have been made absent the privilege." For the privilege to apply, the asserting party must show that the communications adhere to the essential elements of the attorney-client privilege: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." Each of these elements must be satisfied document by document by the privilege log and supporting declarations.

*Id.* at *1-2. For the privilege to apply to communications between IPValue and Round Rock, the communications must be related to Round Rock's receipt of legal advice. *Id.* at *2. "This factor gives rise to the corollary rule that the attorney-client privilege does not protect business communications and advice." *Id.* For "so-called 'dual purpose' communications," which serve both legal and business purposes, "there is general agreement that the privilege applies where the *primary or predominant purpose* of the attorney-client consultation is to seek legal advice or assistance." *Id.*

The work product doctrine "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena (Mark Torg/Torf Environmental Management)* ("*Torf*"), 357 F.3d 900, 906 (9th Cir. 2003) (internal quotation marks omitted). Thus, for documents to qualify for the work product privilege,

4

1    they "must have two characteristics: (1) they must be prepared in anticipation of litigation or for
2    trial, and (2) they must be prepared by or for another party or by or for that other party's
3    representative." *Id.* (internal quotation marks and citation omitted). The work product doctrine
4    asks whether "in light of the nature of the document and the factual situation in the particular case,
5    the document can be fairly said to have been prepared or obtained because of the prospect of
6    litigation." *Id.* at 907. With respect to dual-purpose documents—that is, documents that were
7    arguably created in anticipation of litigation but also for a non-litigation purpose—the further
8    question is whether "taking into account the facts surrounding their creation, their litigation
9    purpose so permeates any non-litigation purpose that the two purposes cannot be discretely
10   separated from the factual nexus as a whole." *Id.* at 910.

### 1. IP Value Documents

Round Rock contends that the IPValue documents the Court has found relevant (Privilege Log entry number 34, 42, 43) are protected from disclosure by work-product privilege and attorney-client privilege. (Dkt. No. 17 at 8.) In particular, it contends that the documents prepared by IPValue include "draft patent assertion presentations, claim charts, file history analyses, prior art analyses, and analyses of potential defendants' lawsuit exposure." (*Id.* at 8-9.) Privilege Log entry numbers 34, 42 and 43, however, reflect none of these things. Although IPValue's amended privilege log identifies entry number 34 as legal advice, there is no legal advice evident in the document; instead, it merely provides an overview of Round Rock's patent portfolio and its business. The final two "slides" provide information gleaned from SanDisk Financial Analyst Day, February 24, 2011. IPValue's similar description of entry number 43 is likewise inaccurate. It is an analysis and overview of SanDisk's business; it does not contain any legal advice, whether internal legal advice to IPValue or advice to Round Rock. Neither document evidences any litigation purpose, much less one that "so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *Torf*, at 909-10. Instead, the purpose of the documents is to analyze SanDisk as a potential licensing target. To hold otherwise merely because Round Rock's business involves, at times, filing lawsuits against targets that refuse to license Round Rock's patents would mean that nearly every document

United States District Court
Northern District of California

created by Round Rock or its licensing agent is work product.  Not even Round Rock takes that position, as demonstrated by its representation that it has produced thousands of pages of documents to SanDisk.

The redacted portions of Privilege Log entry number 42 are IPValue's estimates of SanDisk's revenue in particular areas (although most are for years for which there is now historical data available).  Again, there is no obvious litigation purpose to such document. Although Round Rock may have at some point used the document to decide whether to sue SanDisk, it in no way can be characterized as an analysis of SanDisk's potential lawsuit exposure. And there certainly is no legal advice in the document.

Accordingly, IPValue must produce IPValue Privilege Log entry numbers 34, 42 and 43.

### 2. Round Rock Documents

#### i. Round Rock's 2009 Business Plan

Round Rock insists that the redacted portions of the business plan (Privilege Log entry numbers 499 and 500) "contain litigation strategy and identification of claim charts prepared by Round Rock's attorney, Ropes & Gray, against specific targets." (Dk. No. 258 at 16.)  The business plan was developed before Round Rock purchased the Micron patents and was provided to potential investors.  Putting aside whether in light of the timing of the plan, and to whom it was provided, it could even qualify for attorney work-product protection, the redacted paragraphs do not contain litigation strategy or claim charts.  For example, a paragraph reciting that a claim chart has been prepared is not protected work product; it is historical fact.  Accordingly, Round Rock must produce Privilege Log entry numbers 499 and 500 in unredacted form.  The ruling in *Round Rock Research LLC v. SanDisk Corp.*, No. 1:12-cv-569-SLR (D. Del.), is irrelevant because there the court merely concluded that the business plan is not relevant to liability.  Having reviewed the plan, this Court agrees.  This issue here, however, is whether the plan is relevant to damages, which Round Rock does not even dispute.

#### ii. Revenue Projections

Round Rock contends that its revenue projections per licensing target are protected work product because they were prepared by its CEO, Gerald deBlasi, who is also an attorney.  In

6

1   particular, it contends the projections reflect "the 'mental impressions, conclusion, [and] opinions'
2   of Mr. deBlasi regarding the value of Round Rock's legal claims for patent infringement." (Dkt.
3   No. 258 at 12.)  Mr. deBlasi has submitted a declaration in which he states, in a conclusory
4   fashion, that the estimates would have been different if Round Rock were not in litigation or
5   anticipating litigation.

6   Round Rock's work product assertion, if accepted, would mean that any company's
7   revenue projections would be protected work product so long as the projection included some
8   valuation of actual or potential litigation.  It is unsurprising then that Round Rock cites no case
9   that supports its assertion.  They are ordinary revenue projections that do not disclose any attorney
10  impressions or opinion.  Accordingly, the documents must be produced in unredacted form.

## CONCLUSION

12  For the reasons explained above, Round Rock/IPValue must produce to SanDisk the above
13  identified documents by Tuesday, February 25, 2014.

**IT IS SO ORDERED.**

Dated:  February 21, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

7