IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SAN DISK CORPORATION,

        Plaintiff,

  v.

ROUND ROCK RESEARCH LLC

        Defendant.
_____/

No. C 11-5243 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT RE PATENT EXHAUSTION**

## I. INTRODUCTION

Plaintiff SanDisk Corporation brought this action seeking declaratory relief that its products do not infringe certain patents held by defendant Round Rock Research LLC, and/or that the patents are invalid. The parties have now each brought motions seeking partial summary judgment regarding particular issues. As to three of the four patents remaining in suit, a threshold issue is whether the doctrine of patent exhaustion applies to bar Round Rock from pursing its infringement claims against SanDisk.

There is no material factual dispute that the infringement claims arise at least in part from SanDisk's use of semiconductor memory devices it purchased from Toshiba entities that were licensed by Round Rock's predecessor to make, use, and sell the inventions of the patents on a world-wide basis. The primary legal question is whether, under the circumstances here, the fact that

the sales from Toshiba to SanDisk occurred overseas precludes application of the patent exhaustion doctrine. Although the law is not fully settled, for the reasons explained below, SanDisk's motion seeking a determination that patent exhaustion bars the infringement claims arising from the Toshiba memory will be granted, with respect to U.S. Patent No. 6,845,053 and U.S. Patent No. 6,570,791. The motion will be denied in part with respect to U.S. Patent No. 5,682,345 because SanDisk has not shown that the infringement claims under that patent are limited to the Toshiba memory.

## II. BACKGROUND

Round Rock describes itself as a technology research and licensing company that holds thousands of patents and pending patent applications. Round Rock is what is commonly described as a "non-practicing entity"—that is, it does not manufacture or market products utilizing its patented inventions, but instead seeks licensing agreements from parties who do make and sell such products, or pursues litigation against them when it deems it necessary to do so. Round Rock acquired its patent portfolio from Micron Technology. The claimed inventions relate to a variety of products and technologies, such as televisions, cell phones, computers, cameras, processors, and memory products, among other things. SanDisk, in turn, designs, manufactures, and sells a wide variety of flash memory devices.

During the course of this litigation, the scope of the parties' disputes have narrowed. At this juncture, four patents held by Round Rock remain in issue. The '053 patent relates generally to flash memory devices that allow a "mode" to be selected, for purposes of adjusting the tradeoff between performance speed and power consumption. The '345 patent claims a device—a non-volatile data storage unit—and a method for controlling its operation. The '791 patent relates to flash memory designed to be compatible with so called "double data rate" dynamic random access memory chips ("DDR DRAM"). Finally, U.S. Patent No. 6,383,839 relates to mounting semiconductor devices on circuit boards perpendicularly to the surface of the boards. Of these four patents, only the '839 is not implicated by the patent exhaustion issue.

As to the products accused of infringing the other three patents, SanDisk bought the flash memory chips incorporated in those accused products from entities in the Toshiba corporate family. There is no dispute that before the patents were transferred to Round Rock, Micron entered into a written license agreement with Toshiba, granting Toshiba a "nonexclusive, non-transferable, royalty-free, world-wide license, without the right to sublicense third parties, to make, have made, use, sell, offer for sale, import or otherwise dispose of licensed products and to use any methods covered by Micron patents . . . ." SanDisk contends that, as a result, the '053, '345, and '791 patents are exhausted, and do not support an infringement claim based on the memory chips it obtained from Toshiba. It is undisputed that the sales between Toshiba and SanDisk took place in Japan. Round Rock contends that exhaustion of United States patent rights simply does not arise from sales made outside the territorial jurisdiction of this country.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly

supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Applicability of patent exhaustion to overseas sales

Under 35 U.S.C. § 271, a defendant can only be liable for infringement if the allegedly infringing acts are carried out "without authority." 35 U.S.C. §§ 271(a), (f), (g). "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). The exhaustion doctrine prohibits patent holders from selling a patented article and then "invoking patent law to control postsale use of the article." *Id.* at 638. The underlying rationale is that an

4

unconditional sale of a patented device generally exhausts the patentee's right to control the purchaser's use of that item thereafter because the patentee has bargained for and received the full value of the goods. *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed.Cir. 2010) (en banc); *see also*, *U.S. v. Masonite Corp*., 316 U.S. 265, 278 (1942) ("The test has been whether or not . . . it may fairly be said that the patentee has received his reward for the use of the article."). Exhaustion, however, "is triggered only by a sale authorized by the patent holder." *Quanta*, 553 U.S. at 636.

To argue that patent exhaustion does not apply here, Round Rock relies on the *Jazz Photo* line of cases[1] and *Ninestar Tech. Co. v. ITC*, 667 F.3d 1373 (Fed.Cir. 2012). Each of these cases refused to apply patent exhaustion where the products in issue were first sold outside the United States. *See*, *e.g.*, *Jazz Photo Corp. v. ITC*, 264 F.3d at 1105 ("United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent.").

SanDisk, in turn, points to *Quanta*, in which the Supreme Court expressly cautioned against "the danger of allowing . . . an end-run around exhaustion." 553 U.S. at 630. Although the Court was addressing whether exhaustion applies to method claims, this District has previously observed that exempting overseas sales from the doctrine would constitute a similarly unjustifiable "end run." *LG Electronics., Inc. v. Hitachi Ltd*., 655 F. Supp. 2d 1036, 1044-45. (N.D. Cal. 2009).[2] Where, as here and as in *LG Electronics*, the patentee has negotiated and obtained consideration for granting an express world-wide license to "make, have made, use, sell, offer for sale, import or otherwise dispose of" products embodying the inventions, permitting the patentee to pursue infringement claims against "any downstream purchasers" would, in effect, allow the kind of double recovery the exhaustion doctrine ordinarily forecloses.

---

[1] *Jazz Photo Corp. v. ITC*, 264 F.3d 1094 (Fed.Cir. 2001), *Fuji Photo Film Co., Ltd. v. Benun*, 463 F.3d 1252 (Fed.Cir. 2006), and *Fujifilm Corp. v. Benun*, 605 F.3d 1366 (Fed.Cir. 2010).

[2] The *LG Electronics* decision concluded that the first two *Jazz Photo* cases were simply no longer good law in light of *Quanta.* 655 F. Supp. 2d at 1046. This Court is not free to reach the same conclusion now, because in the interim the Federal Circuit held in *Benun* and *Ninestar* that *Quanta* did not eliminate the territoriality issue. *See Benun*, 605 F.3d at 1371; *Ninestar*, 667 F.3d at 1378. Nevertheless, for reasons discussed below, the *Jazz Photo* line is distinguishable.

As observed in *Multimedia Patent Trust v. Apple, Inc*. 2012 WL 6863471 (S.D. Cal. 2012) ("*MPT*") the fact that the products were sold under the authority of a world-wide license agreement renders the *Jazz Photo* and *Ninestar* decisions distinguishable. *See* 2012 WL 6863471 at *5 ("those cases only involved foreign sales made directly by the patentee and did not involve sales made pursuant to a unconditional worldwide license.") The distinction is significant because the gravamen of the *Jazz Photo* line is that "a lawful foreign purchase does not obviate the need for license from the United States patentee before importation into and sale in the United States." *Jazz Photo*, 264 F.3d at 1105. Thus, while the mere purchase of an item overseas that embodies a U.S. patent may not give the purchaser a right to import it into the United States, here Toshiba had such a right under the parties' negotiated license agreement. Round Rock does not suggest that if Toshiba itself had shipped the products to this country prior to resale, there still would have been a viable infringement claim against Toshiba or any of its customers.

Round Rock (through its predecessor Micron) in effect had thereby already exercised its rights under U.S. Patent law by granting a license to Toshiba, for consideration, to import patented technology into the United States, if it so chose (among the other rights conferred by the world-wide license). In contrast, the patentees in the *Jazz Photo* line of cases and *Ninestar* merely sold products in overseas retail markets, without expressly granting rights to import those items into this country.[3] As such import rights were not part of the sales, it could reasonably be said that the patentee had received no consideration "under" any U.S. Patent, and therefore that no exhaustion arose. Allowing the patentees to pursue infringement claims based on the subsequent importation of the products into this country did not represent a second attempt to collect for the same right.

Here, in contrast, Toshiba already gave consideration for the right to import devices embodying the patented inventions. That title to the chips passed before the shipping to this country took place is too thin a reed on which to permit the patentee an "end run" around the principle that it

---

[3] A district court opinion in *Fuji Photo Film Co. v. Jazz Photo Corp.,* 249 F.Supp.2d 434 (D.N.J. 2003) indicated that at least in that instance some of the products had been sold by licensees with a right to sell in the United States, and that such a fact did not alter its analysis. None of the circuit court opinions, however, expressly discussed the point.

may only recover once.  The *Jazz Photo* line of cases and *Ninestar* do not address these circumstances, and therefore are not governing, as recognized in *MPT*.  *See* 2012 WL 6863471 at *5; *see also*, *Tessera, Inc. v. ITC*, 646 F.3d 1357, 1369-70 (Fed. Cir. 2011) (applying, without discussion, exhaustion doctrine in context of chips sold by foreign licensee and thereafter imported). In urging that exhaustion applies, SanDisk also places heavy emphasis on *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351 (2013), which held that the "first sale" doctrine in copyright law applies without territorial limitation.[4]  Because *Kirtsaeng* analyzed and applied provisions of the Copyright Act, it is not directly controlling in the patent context.  Nevertheless, *Kirtsaeng* provides at least some additional support for the notion that it would be inconsistent with the theoretical underpinnings of the exhaustion doctrine to apply a territorial limitation.  In construing the present statutory language, *Kirtsaeng* observed that the common law first sale doctrine in copyright, "makes no geographical distinctions."  133 S.Ct. at 1363.  The Court concluded that the Copyright Act did not change the common law rule.  *Id.*  As the Patent Act is silent on the point, it also has not altered the common law. Thus, unless there is a basis to conclude that the common law approach should differ between patent and copyright, *Kirtsaeng* implicitly suggests the result reached here is appropriate.[5]

B. <u>Identity of Licensees</u>

Round Rock contends that even assuming exhaustion applies where a product is sold under the auspices of a world-wide license, there is still a question as to whether the particular Toshiba entities that sold the chips in issue were licensees under the Micron-Toshiba agreement.  Round-

---

[4] First sale doctrine in copyright is conceptually analogous to patent exhaustion.  *See Kirtsaeng*, 133 S.Ct. at 1355 ("In copyright jargon, the 'first sale' has 'exhausted' the copyright owner's § 106(3) exclusive distribution right.").

[5] It plainly is SanDisk's belief that the *Jazz Photo* line of cases was at least impliedly superseded by *Quanta* and *Kirtsaeng*, if not wrongly decided from the outset.  Because *Ninestar* expressly held that the rule survived *Quanta*, and because *Kirtsaeng* construed the Copyright Act, not patent law, any such argument must be presented at the appellate level, not here.

Rock's sole argument is that while the language of the agreement undeniably encompasses "subsidiaries," it uses the present tense in the definition; e.g. "a legal entity of which a PARTY hereto owns or controls directly or indirectly more than fifty percent (50%) of the shares . . . ." As the particular subsidiaries that made the sale came into legal existence after the effective date of the agreement, Round Rock argues they are outside its scope. Round Rock, however, has offered no legal authority or factual basis, however, to support such a restrictive and counter-intuitive reading of the contract language. It is undisputed that the sales were made by entities that fell within the language of the definition at the time of the sales. Reading the present tense language as effectively imposing a past tense requirement—i.e. that the entities were owned or controlled by Toshiba by the time the contract first became effective—is unwarranted.

### C. Scope of the exhaustion

Finally, Round Rock argues that even assuming patent exhaustion applies with respect to the memory chips SanDisk acquired from Toshiba, the doctrine cannot insulate SanDisk from liability for infringement claims based on its own *controllers*, rather than the Toshiba memory. Round Rock's argument fails as to both the '053 and the '791 patents.

As to those two patents, Round Rock relies on its assertion that "key" or "core" elements are performed by the controller chips, which are "custom-designed" by SanDisk. Under *Quanta*, a product substantially embodies the patent [where] the only step necessary to practice the patent is the application of common processes or the addition of standard parts." 553 U.S. at 634. While SanDisk may "custom design" these particular controllers, the patent claims merely recite a "processor," with no indication that any of the inventive aspects of the claims depend on the specifics of the processor, and there is no indication SanDisk's "custom design" transforms its controllers into something meaningfully distinguishable from "the application of common processes or the addition of standard parts."

Moreover, Round Rock's own infringement contentions and its expert's opinions reflect that the memory chips fully or substantially embody the patent claims in suit, with respect to the '053

8

and the '791 patents. As such, it cannot now show that the claims depend on the controllers. *See LG Electronics*, *supra*, 655 F.Supp.2d at 1044 ("This establishes that, according to LGE's own theory of infringement, the parts substantially embody the patents, and LGE cannot claim otherwise.") Accordingly, the doctrine of patent exhaustion bars Round Rock's claims for infringement of the '053 and the '791 patents.

The '345 patent presents a different situation. While SanDisk has presented some arguments that the asserted claims are substantially embodied by the Toshiba chips, it has not met its burden to establish that claims related to the functionality of the controllers are barred with respect to this patent. Indeed, its moving papers merely incorporate by reference the arguments it previously made in opposition to Round Rock's motion seeking summary judgment that the exhaustion defense fails as a matter of law. As those arguments were directed to showing that "a trier of fact could easily conclude" the Toshiba chips gave rise to exhaustion, they fall short of establishing a right to summary judgment in SanDisk's favor.[6]

## V. CONCLUSION

SanDisk's motion for summary judgment as to the applicability of patent exhaustion is granted with respect to the '053 and the '791 patents, and denied as to the '345 patent. Round Rock's counter motion on the subject is denied. Further orders will issue on the motions that remain pending.

IT IS SO ORDERED.

Dated: 6/13/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[6] On reply, SanDisk contends Round Rock's present position is inconsistent with that taken in certain other litigation. SanDisk's passing mention of that alleged inconsistency is insufficient to establish an estoppel or that Round Rock has made a binding admission.